FILED

RUSSELL J. FRACKMAN (SBN 49087)
MARC E. MAYER (SBN 190969)
DAVID A. STEINBERG (SBN 130593)
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, California 90064-1683
Telephone:  (310) 312-2000
Facsimile:  (310) 312-3100

Attorneys for Plaintiffs

2009 NOV -3  PM 12: 55

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CAPITOL RECORDS, LLC, a Delaware limited liability company; CAROLINE RECORDS, INC., a New York Corporation; EMI CHRISTIAN MUSIC GROUP INC., a California Corporation; PRIORITY RECORDS, LLC, a Delaware limited liability company; VIRGIN RECORDS AMERICA, INC., a California Corporation; and NARADA PRODUCTIONS, INC., a Wisconsin corporation,

 Plaintiffs,

 v.

BLUEBEAT, INC., a Delaware corporation, doing business as www.bluebeat.com; MEDIA RIGHTS TECHNOLOGIES, INC., a California corporation; BASEBEAT, INC., a Delaware corporation, doing business as www.basebeat.com; and HANK RISAN, an individual; and DOES 1 through 20,

 Defendants.

CASE NO. CV09  08030 JFW (JCx)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION OF PLAINTIFFS FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

[DECLARATIONS OF ALASDAIR MCMULLAN AND JAMES D. BERKLEY FILED CONCURRENTLY HEREWITH]

CONFORMING COPY

Mitchell
Silberberg &
Knupp LLP

2430784.DOC

# **TABLE OF CONTENTS**

**Page(s)**

Introduction ........................................................................................... 1

I.      FACTUAL BACKGROUND .............................................................. 4

II.     THE LEGAL STANDARD ................................................................. 9

III.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE
        MERITS OF THEIR CLAIM FOR COPYRIGHT
        INFRINGEMENT. ......................................................................... 11

        A.    Plaintiffs Are The Owners of the Copyrighted
              Recordings. ........................................................................ 11

        B.    Defendants Are Violating Plaintiffs' Exclusive Rights
              Under Copyright ................................................................. 12

IV.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THE
        MERITS OF THEIR STATE LAW CLAIMS FOR
        MISAPPROPRIATION OF THE PRE-1972 RECORDINGS .................... 14

V.      PLAINTIFFS WILL SUFFER IRREPARABLE HARM
        UNLESS AN INJUNCTION IS IMMEDIATELY ISSUED. ....................... 16

VI.     A TEMPORARY RESTRAINING ORDER AND
        PRELIMINARY INJUNCTION WILL SERVE THE PUBLIC
        INTEREST. ................................................................................ 19

VII.    ALTERNATIVELY, PLAINTIFFS HAVE RAISED SERIOUS
        QUESTIONS CONCERNING THE MERITS AND THE
        BALANCE OF THE HARDSHIPS TIPS IN PLAINTIFFS'
        FAVOR ..................................................................................... 19

VIII.   THE REQUESTED TEMPORARY RESTRAINING ORDER
        AND PRELIMINARY INJUNCTION ARE REASONABLE .................... 20

CONCLUSION ...................................................................................... 22

Mitchell
Silberberg &
Knupp LLP

2430784.DOC

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

20th Century Fox Film Corp. v. Streeter,
    438 F. Supp. 2d 1065 (D. Ariz. 2006)..................................................18

A & M Records, Inc. v. Heilman,
    75 Cal. App. 3d 554 (1977)................................................5, 14, 16

A&M Records, Inc. v. Napster, Inc.,
    239 F.3d 1004 (9th Cir. 2001)................................................*passim*

Apple Computer, Inc. v. Franklin Computer Corp.,
    714 F.2d 1240 (3d Cir. 1983)................................................10, 19

Apple Corps Ltd. v. Adirondack Group,
    476 N.Y.S. 2d 716 (Sup. Ct. 1983)................................................15

Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.,
    672 F.2d 607 (7th Cir. 1982)................................................10, 19

Autoskill Inc. v. Nat'l Educ. Support Sys. Inc.,
    994 F.2d 1476 (10th Cir. 1993)................................................19

Bronco Wine Co. v. U.S. Dep't of Treasury,
    997 F. Supp. 1309 (E.D. Cal. 1996)................................................9

Cadence Design Sys., Inc. v. Avant! Corp.,
    125 F.3d 824 (9th Cir. 1997)................................................10, 20

Canopy Music, Inc. v. Harbor Cities Broad. Inc.,
    950 F. Supp. 913 (E.D. Wis. 1997)................................................20

Capitol Records, Inc. v. Erickson,
    2 Cal. App. 3d 526 (1969)................................................15

Christiana Indus. v. Empire Elecs., Inc.,
    443 F. Supp. 2d 870 (E.D. Mich. 2006)................................................10

Columbia Pictures Indus., Inc. v. Redd Horne, Inc.,
    749 F.2d 154 (3d Cir. 1984)................................................13

Mitchell
Silberberg &
Knupp LLP
2430784.DOC

ii

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc.,
    843 F.2d 600 (1st Cir. 1988) ...................................................... 19

CSC Holdings, Inc. v. Greenleaf Elec., Inc.,
    2000 WL 715601 (N.D. Ill. June 2, 2000) ...................................... 21

Disney Enters., Inc. v. Delane,
    446 F. Supp. 2d 402 (D. Md. 2006) ............................................ 18

Donald Frederick Evans & Assoc., Inc. v. Continental Homes, Inc.,
    785 F.2d 897 (11th Cir. 1986) .................................................... 11

E.F. Johnson Co. v. Uniden Corp. of America,
    623 F. Supp. 1485 (D. Minn. 1985) ............................................ 10

eBay Inc. v. MercExchange, LLC,
    547 U.S. 388 (2006) ................................................................ 10

Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,
    499 U.S. 340 (1991) ................................................................ 11

Goldstein v. California,
    412 U.S. 546 (1973) ................................................................ 11

In re Napster, Inc. Copyright Litigation,
    191 F. Supp. 2d 1087 (N.D. Cal. 2002) ...................................... 15

Johnson Controls, Inc. v. Phoenix Control Sys., Inc.,
    886 F.2d 1173 (9th Cir. 1989) .................................................... 10

LGS Architects, Inc. v. Concordia Homes of Nev.,
    434 F.3d 1150 (9th Cir. 2006) .............................................. 9, 10

Lipton v. Nature Co.,
    71 F.3d 464 (2d Cir. 1995) ........................................................ 13

MAI Sys. v. Peak Computer, Inc.,
    991 F.2d 511 (9th Cir. 1993) .................................................... 12

Mitchell
Silberberg &
Knupp LLP

2430784.DOC

iii

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,
   454 F. Supp. 2d 966 (C.D. Cal. 2006)................................................. 13

Micro Star v. Formgen Inc.,
   154 F.3d 1107 (9th Cir. 1998)....................................................... 10

Microsoft Corp. v. ATS Computers, Inc.,
   1993 WL 13580935 (S.D. Cal. Oct. 29, 1993) ................................... 9

New Motor Vehicle Bd. v. Orrin W. Fox Co.,
   434 U.S. 1345 (1977) ................................................................... 9

New York Times Co. v. Tasini,
   533 U.S. 483 (2001) ..................................................................... 13

Perfect 10, Inc. v. Amazon.com, Inc.,
   508 F.3d 1146 (2007).................................................................. 12

Proven Methods Seminars, LLC v. Am. Grants & Affordable Hous.
   Inst., LLC, 519 F. Supp. 2d 1057 (E.D. Cal. 2007) ........................ 11

Taylor Corp. v. Four Seasons Greetings, LLC,
   315 F.3d 1039 (8th Cir. 2003)........................................................ 10

Taylor Corp. v. Four Seasons Greetings, LLC,
   403 F.3d 958 (8th Cir. 2005)........................................................ 16

Ticketmaster LLC v. RMG Techs., Inc.,
   507 F. Supp. 2d 1096 (C.D. Cal. 2007)....................................... 9, 18, 20

Transgo, Inc. v. Ajac Transmission Parts Corp.,
   768 F.2d 1001 (9th Cir. 1985)........................................................ 11

Triad Sys. Corp. v. Southeastern Exp. Co.,
   64 F.3d 1330 (9th Cir. 1995)........................................................ 20

United States v. Taxe,
   540 F.2d 961 (9th Cir. 1976)........................................................ 14

Mitchell
Silberberg &
Knupp LLP

2430784.DOC

iv

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

Universal City Studios, Inc. v. Reimerdes,
    111 F. Supp. 2d 294 (S.D.N.Y. 2000)......................................................18

Warrior Sports, Inc. v. STX, LLC,
    2008 WL 783768 (E.D. Mich. Mar. 19, 2008) ..................................10

Weintraub/Okun Music v. Atlantic Fish & Chips, Inc.,
    1991 WL 34713 (N.D. Ill. Mar. 13, 1991) ........................................21

Wildlife Express Corp. v. Carol Wright Sales, Inc.,
    18 F.3d 502 (7th Cir. 1994)...............................................................11

Zeon Music v. Stars Inn Lounge, Ltd.,
    1994 WL 163636 (N.D. Ill. Apr. 28, 1994) ......................................21

# REGULATIONS

United States Copyright Act
    17 U.S.C. § 102(a)(7)....................................................................5, 11
    17 U.S.C. § 106..........................................................................11, 12
    17 U.S.C. § 115(c)(3)(G) ....................................................................12
    17 U.S.C. § 301........................................................................14, 15
    17 U.S.C. § 410(c)............................................................................11
    17 U.S.C. § 501................................................................................12
    17 U.S.C. § 502(a)..........................................................................8, 9
    17 U.S.C. § 512(c)(1)(A)(iii) ............................................................20

# STATE STATUTES

California Civil Code
    § 980 ....................................................................................5, 15

Mitchell
Silberberg &
Knupp LLP

2430784.DOC

v

# MEMORANDUM OF POINTS AND AUTHORITIES

## Introduction

Plaintiffs are six record companies that are part of the EMI Music Group of companies. Plaintiffs are the owners of copyright or related exclusive rights under federal and state law in sound recordings, including some of the most famous sound recordings in the world. By this *Ex Parte* Application, Plaintiffs seek to put an immediate stop to the ongoing and irreparable harm now being caused by massive and willful infringement of Plaintiffs' exclusive rights in their sound recordings by Defendants, the owners and operators of the Internet website www.bluebeat.com (the "BlueBeat Website"). Temporary relief is necessary (and, indeed, critical) because every day that Defendants' conduct continues, an increasing number of sound recordings are being infringed by Defendants, including by being distributed and performed via the BlueBeat Website, and the harm to Plaintiffs is exponentially increasing.

Put simply, Defendants are engaged in digital music piracy of the most blatant kind. Without any license or authority from Plaintiffs, Defendants have created, and currently own and operate, a commercial, for-profit Internet website that is engaged in the large-scale distribution and public performance of Plaintiffs' sound recordings. In furtherance of that business venture, and with full knowledge of Plaintiffs' ownership rights in their sound recordings, Defendants have copied thousands of Plaintiffs' popular and successful commercial sound recordings (a large and important portion of Plaintiffs' entire music catalog). Then, in order to undercut and destroy the legitimate digital market for Plaintiffs' sound recordings, Defendants, via the BlueBeat Website, have made (and continue to make) that entire library of unlawfully copied sound recordings available to the public, both *for sale* as permanent downloadable media files (for 25 cents per track) as well as *for free* as on-demand, high-quality digital music "streams" (i.e. performances).

Mitchell
Silberberg &
Knupp LLP

2430784.DOC

1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION OF
PLAINTIFFS FOR TRO AND ORDER TO SHOW CAUSE RE: PRELIM. INJUNCTION

1   Perhaps the most stunning aspect of Defendants' conduct is the willful and
2   overtly defiant manner in which they are acting. The BlueBeat Website is not a
3   small, fly-by-night operation. It is a large, professional-quality website that is
4   offering virtually every major record release, from every major artist. Plaintiffs'
5   most significant and popular recordings are available for immediate download or
6   streaming -- from classic recordings by the Beatles, the Beach Boys and Pink
7   Floyd, to current popular recordings by artists such as Coldplay, Katy Perry, and
8   Lenny Kravitz. And, as if to thumb their noses directly at Plaintiffs, Defendants
9   are publicly touting that they offer for immediate download, at the price of $0.25
10  per track (between $2.50 and $3.50 per album) the *entirety* of the highly
11  anticipated and recently released Beatles "remasters" box set. Not only was this
12  box set just released last month, but it has been highly publicized and it is well-
13  known throughout the music community and by the public generally that the
14  Beatles catalog (including the remasters) has *never* been released for digital
15  download or licensed for on-demand streaming. Accordingly, Defendants have
16  unlawfully secured for themselves the privilege of being the *first* (and only)
17  commercial website on which the Beatles remasters are available for digital
18  download.

19   The BlueBeat Website and the defiant and unlawful conduct of its owners
20  has been noted among the Internet media. One media commentator (reporting for
21  news magazine Fast Company) aptly stated:

22  "[Defendants] seem[] to have looked squarely in the eye
     of litigious record label legal eagles and various judges
23  who've sided with them, and then figuratively dropped
     trou and shot 'em a moon. The entire 2009 Beatles
24  Remasters -- the mono versions, even! -- are on there!
     FOR 25 CENTS A TRACK!... That physical box set,
25  which is actually a stunning thing to hold in your hand,
     currently sells for about $300.... The Beatles and its
26  record label Apple -- plus Led Zeppelin, Pink Floyd, and
     AC/DC-- are notorious holdouts in the digital revolution.
27  The push to get them to sell online and the deals and
     machinations involved with that effort are tougher to get
28  over than "Stairway to Heaven." For someone to just

Mitchell
Silberberg &
Knupp LLP

2430784.DOC

2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION OF
PLAINTIFFS FOR TRO AND ORDER TO SHOW CAUSE RE: PRELIM. INJUNCTION

1   come along and slap these artists' music up for a
    ridiculously low price is nothing short of bananas."

2

3   Declaration of James D. Berkley ("Berkley Decl."), ¶ 3 & Ex. 1.

4       Defendants know and intend exactly what they are doing, including that

5   their conduct constitutes massive copyright infringement.  Defendants are

6   experienced, sophisticated companies and individuals that purport to be in the

7   business of creating digital rights management and anti-piracy technology.  In fact,

8   Defendant Risan (the owner and CEO of the corporate defendants, and the driving

9   force behind the BlueBeat Website) has published articles and given public

10  speeches about music piracy and technology.  Ironically, while Defendants

11  publicly tout their purported commitment to anti-piracy and legal music

12  distribution (including on the BlueBeat Website), Defendants themselves are

13  engaged in Internet piracy on an unprecedented scale.  To (thinly) conceal their

14  own unlawful conduct, Defendants misrepresent to the public their authority to sell

15  digital music, falsely claiming that all of the music offered on the BlueBeat

16  Website is licensed.  Defendants have even gone so far as to state that the BlueBeat

17  Website is the *only* Internet website that adheres to copyright law, and that the

18  BlueBeat Website is "immune to piracy's ever-growing threat."  Berkley Decl., ¶ 3

19  & Ex. 1.

20      The enormous and irreparable harm to Plaintiffs is obvious and manifest.

21  Defendants have stolen, and are offering for free (or for a nominal purchase price),

22  the very sound recordings that Plaintiffs and their licensees sell to the public.

23  Legitimate sales and licenses are the foundation for Plaintiffs' entire business.

24  Defendants' conduct deprives Plaintiffs, their recording artists, and many others of

25  revenue to which they are entitled.  But that is only the tip of the iceberg.  Every

26  day that the BlueBeat Website is permitted to operate, an increasing number of

27  Plaintiffs' sound recordings are being distributed by Defendants.  Once

28

Mitchell
Silberberg &
Knupp LLP

2430784.DOC

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION OF
PLAINTIFFS FOR TRO AND ORDER TO SHOW CAUSE RE: PRELIM. INJUNCTION

1 downloaded, Plaintiffs' Recordings may be further copied and virally distributed

2 without limitation, to anyone with an Internet connection. Additionally, because

3 Defendants are offering recordings (such as the Beatles remasters) not available

4 anywhere else and at prices far below those offered by legitimate retailers or

5 licensees, their conduct is disrupting (and has the potential to destroy) Plaintiffs'

6 relationships with their legitimate licensees and artists and their carefully

7 constructed marketing and digital distribution plans.

8       Just in the last few days, the BlueBeat Website has received (and is

9 continuing to receive) extensive press attention. Every day that Defendants'

10 conduct goes unrestrained, additional users are discovering the BlueBeat Website

11 and Defendants are distributing infringing sound recordings to those users.

12 Representatives of Plaintiffs' trade association, the Recording Industry Association

13 of America ("RIAA"), contacted Defendants to request that they cease their

14 conduct. Defendants refused. Accordingly, Plaintiffs require the intervention of

15 the Court to put Defendant's conduct to an immediate stop.

16

17 **I.    FACTUAL BACKGROUND**

18       **The EMI Record Companies and Their Sound Recordings.** Plaintiffs are

19 record companies, in the business of producing sound recordings and distributing,

20 selling, and/or licensing the reproduction, distribution, sale, and performance of

21 their sound recordings in phonorecords[1], in audiovisual works, and for streaming

22 (i.e., performing) and downloading over the Internet. Declaration of Alasdair

23 McMullan ("McMullan Decl."), ¶ 2. Plaintiffs invest substantial money, time,

24 effort, and creative talent in discovering and developing recording artists, and in

25

26 [1] A "sound recording" is defined in the Copyright Act as a work that results "from
the fixation of a series of musical, spoken or other sounds." "Phonorecords" are
defined as "material objects in which sounds...are fixed...and from which the
27 sounds can be perceived, reproduced, or otherwise communicated, either directly
or with the aid of a machine or device." 17 U.S.C. § 101.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION OF
PLAINTIFFS FOR TRO AND ORDER TO SHOW CAUSE RE: PRELIM. INJUNCTION

1  creating, advertising, promoting, selling, and licensing sound recordings

2  embodying the performances of their exclusive recording artists and their unique

3  and valuable sound recordings.  Id.  Plaintiffs' catalog of sound recordings

4  includes some of the most famous recordings in the world, including recordings by

5  the Beatles, the Beach Boys, Pink Floyd, Duran Duran, ColdPlay, Lenny Kravitz,

6  Radiohead, and Katy Perry.

7      Plaintiffs' catalog of sound recordings includes both those first fixed in a

8  tangible medium of expression (i.e. recorded) prior to February 15, 1972 (the "Pre-

9  1972 Recordings"), as well as those recorded after that date.  Sound recordings

10  fixed after February 15, 1972, are protected by the Copyright Act, 17 U.S.C. §

11  102(a)(7) (the "Copyrighted Recordings").  The Pre-1972 Recordings are protected

12  by state law, including the law of the State of California.  Cal. Civ. Code § 980; A

13  & M Records, Inc. v. Heilman, 75 Cal. App. 3d 554, 564 (1977).  Plaintiffs own

14  and/or control the Copyrighted Recordings (including those identified in Schedule

15  A to the Complaint), as well as the Pre-1972 Recordings (including those identified

16  in Schedule B to the Complaint).  McMullan Decl., ¶¶ 10, 11. (The "Pre-1972

17  Recordings" and the "Copyrighted Recordings" collectively are referred to

18  hereinafter as the "Recordings" or "Plaintiffs' Recordings").

19      The digital space is a critical, growing, but still relatively nascent

20  distribution channel for Plaintiffs' sound recordings.  Because of the nature of

21  digital distribution, including the risk of digital piracy if digital versions of

22  recordings are made available online, great time and care has been taken by

23  Plaintiffs to develop and implement digital marketing and distribution strategies.

24  McMullan Decl., ¶¶ 16, 18.  Although many of Plaintiffs' Recordings are made

25  available for digital download, not all of them are available.  Id., ¶ 20.  Most

26  notably, the Beatles catalog of recordings has never been made available for digital

27  download.  This includes a recently released set of "remastered" Beatles

28

Mitchell
Silberberg &
Knupp LLP

2430784.DOC

5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION OF
PLAINTIFFS FOR TRO AND ORDER TO SHOW CAUSE RE: PRELIM. INJUNCTION

1  recordings, which Plaintiffs spent years developing and have extensively marketed

2  and promoted. Id. The fact that Beatles recordings are not available for digital

3  download has been extensively reported on in the industry and mainstream press.

4  **Defendants and The BlueBeat Website.** Defendants collectively own and

5  operate the Internet website www.bluebeat.com (the "BlueBeat Website"). The

6  BlueBeat Website is a music-based, commercial website that purports to offer a

7  massive catalog of musical recordings (tens of thousands of sound recordings) that

8  may be either purchased for permanent download or immediately performed via an

9  on-demand streaming transmission. Berkley Decl., ¶¶ 16, 18 & Exs. 19-20.

10  One of the major features of the BlueBeat Website is that it offers its

11  registered members (i.e., anyone who sets up a free, anonymous membership

12  account) the ability to purchase and download any album or individual sound

13  recording from a library of sound recordings, at the price of $0.25 per track (one-

14  fourth the typical retail price for digital downloads). Berkley Decl., ¶ 4 & Ex. 2.

15  In order to create that library, Defendants necessarily copied tens of thousands of

16  Plaintiffs' Recordings to a computer server, representing the work of virtually

17  every one of Plaintiffs' major recording artists, from virtually every genre of

18  music, including rock, jazz, classical, world music, folk, rap, and R&B. To

19  purchase any of the sound recordings offered by the BlueBeat Website, a user need

20  only search for the name of the artist or sound recording, click a button marked

21  "Buy," and complete a payment transaction (using third party payment service

22  PayPal.) Id., ¶¶ 5-12 & Exs. 3-14. Once the purchase is complete, the sound

23  recording file is transmitted by the BlueBeat Website to the purchaser. Id., ¶¶ 13

24  Ex. 15. The digital files then are placed into folders on the purchaser's hard drive

25  (categorized by artist name and album title) and may be easily placed into the

26  purchaser's personal music library (such as his or her iTunes or Windows Media

27  library). Id., ¶ 14 & Exs. 16, 17. The digital music files transmitted by the

Mitchell
Silberberg &
Knupp LLP

28

2430784.DOC

1  BlueBeat Website also contain artist biographies and copyrighted album cover

2  artwork, which may be viewed using standard media player software.[2]

3      In addition to the foregoing, the BlueBeat Website offers its members a

4  feature it refers to as "Direct Playback." Berkley Decl., ¶ 20 & Ex. 24. The

5  "Direct Playback" feature permits users to receive from Defendants, at the click of

6  a mouse, a free "streaming" digital performance of any sound recording or album

7  within the BlueBeat library. Id. In BlueBeat's own words: "If you are a registered

8  user (it's free to join!), you can access the Direct Playback service: simply log in

9  and click the play button next to the song title! This will begin a complete album

10 playback from that point (and will loop back around to include the whole

11 album/box set)." Id.. Thus, if a user does not wish to purchase a particular

12 recording, he or she need only use the "Direct Playback" feature to listen at any

13 time to any or all of Plaintiffs' Recordings made available by Defendants on the

14 BlueBeat Website, free of charge.[3]

15     Plaintiffs have never authorized Defendants to use any of their Recordings in

16 any manner. McMullan Decl., ¶ 9.

17     **Plaintiffs' Discovery of the BlueBeat Website.** On Friday, October 30,

18 2009, Plaintiffs first learned that Defendants were selling and streaming certain of

19 its sound recordings (namely, the Beatles remasters) on the BlueBeat Website

20

21

22 [2] BlueBeat apparently claims that the digital music files that it offers for sale and
23 transmits to its users originate from a "partner" website known as "BaseBeat"
   (located at www.basebeat.com). However, BlueBeat and BaseBeat are one and the
24 same, owned and operated by the same individuals and corporate parents. Notably,
   the website operating at www.basebeat.com is not an interactive website at all, but
25 consists entirely of a single "homepage," which states that "BaseBeat has partnered
   with BlueBeat.com to Offer 25¢ mp3s! Check it out now." Clicking anywhere on
26 the BaseBeat website simply redirects the user to the BlueBeat Website.

   [3] The BlueBeat Website also offers a "Direct Playback" feature for particular
27 artists, whereby a user may obtain a "randomized" stream of recordings from any
   recording artist.

Mitchell
Silberberg &
Knupp LLP

2430784.DOC

28

7

1  without license or authorization. McMullan Decl., ¶ 9. Plaintiffs immediately

2  commenced an investigation of the BlueBeat Website.

3      Plaintiffs' preliminary investigation (conducted over a single weekend)

4  revealed that thousands of Plaintiffs' Recordings are being made available for

5  download or streaming on the BlueBeat Website without authorization. Berkley

6  Decl., ¶ 16 & Exs. 19, 20. In addition to the Beatles remasters (as publicized),

7  albums by virtually all of Plaintiffs' major recording artists are available on the

8  BlueBeat website. A representative sample of the Sound Recordings made

9  available for download or streaming is set forth on Schedules A and B to the

10  Complaint. All of these Recordings are readily accessible and have been

11  successfully downloaded and streamed by Plaintiffs. Id. These Schedules only

12  scratch the surface. Plaintiffs believe that Defendants have copied tens of

13  thousands of Plaintiffs' Recordings without any license or authorization. Given

14  the publicity and Internet "buzz" surrounding the BlueBeat Website (see id., Ex.

15  1), Plaintiffs have reason to believe that their Recordings continue to be

16  downloaded or streamed from the BlueBeat Website on an ongoing basis.

17      On Friday, October 30, 2009, a representative of the Recording Industry

18  Association of America ("RIAA") sent an e-mail to Defendant Hank Risan,

19  notifying Risan that Defendants' distribution of sound recordings was unlicensed,

20  and requesting that Defendants cease distributing RIAA members' sound

21  recordings. On Monday, November 2, 2009, Risan notified the RIAA that

22  Defendants would not cease their conduct. On November 2, 2009, Plaintiffs sent a

23  formal notice, pursuant to Section 512 of the Digital Millennium Copyright Act

24  ("DMCA"), to the Internet Service Provider responsible for hosting the BlueBeat

25  Website, requesting that it take down or disable infringing content contained on the

26  BlueBeat website. Berkley Decl., ¶ 22 & Ex. 26. However, as of the time of

27  filing, the BlueBeat Website remains fully operational.

28

Mitchell
Silberberg &
Knupp LLP

2430784.DOC

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION OF
PLAINTIFFS FOR TRO AND ORDER TO SHOW CAUSE RE: PRELIM. INJUNCTION

## II.    THE LEGAL STANDARD

The Copyright Act specifically authorizes temporary injunctive relief to stop ongoing infringement.  17 U.S.C. § 502(a) (authorizing courts to grant injunctive relief "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright"); see Microsoft Corp. v. ATS Computers, Inc., No. CV 93-1273, 1993 WL 13580935 at *1 (S.D. Cal. Oct. 29, 1993) (granting temporary restraining order "pursuant to 17 U.S.C. § 502(a)"); see also Fed. R. Civ. P. 65.  The standard for granting a temporary restraining order is identical to the standard for granting a preliminary injunction.  New Motor Vehicle Bd. v. Orrin W. Fox Co., 434 U.S. 1345, 1347 n.2 (1977); Bronco Wine Co. v. U.S. Dep't of Treasury, 997 F. Supp. 1309, 1313 (E.D. Cal. 1996).

"Preliminary injunctive relief is available to a party who demonstrates either: (1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that serious questions are raised and the balance of hardships tips in its favor.  These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1013 (9th Cir. 2001) (affirming preliminary injunction in online copyright infringement action) (internal quotation marks and citation omitted); see LGS Architects, Inc. v. Concordia Homes of Nev., 434 F.3d 1150, 1155-58 (9th Cir. 2006) (directing district court to enter preliminary injunction prohibiting defendant "from reproducing, distributing, publicly displaying, or creating derivative works based upon" plaintiff's copyrighted work).  In addition, courts "'consider whether the public interest favors issuance of the injunction.'" Ticketmaster LLC v. RMG Techs., Inc., 507 F. Supp. 2d 1096, 1104, 1116 (C.D. Cal. 2007) (finding public interest favored preliminary injunction).

1    At the preliminary injunction stage, irreparable harm is ***presumed*** where the

2    moving party establishes a likelihood of success on the merits of a copyright claim.

3    Micro Star v. Formgen Inc., 154 F.3d 1107, 1109 (9th Cir. 1998) (plaintiff "need

4    only show a likelihood of success on the merits to get the preliminary injunction it

5    seeks"); see also, e.g., LGS Architects, 434 F.3d at 1155-56; Johnson Controls,

6    Inc. v. Phoenix Control Sys., Inc., 886 F.2d 1173, 1174 (9th Cir. 1989); Warrior

7    Sports, Inc. v. STX, LLC, No. 07-14597, 2008 WL 783768 at *11 (E.D. Mich.

8    Mar. 19, 2008); Christiana Indus. v. Empire Elecs., Inc., 443 F. Supp. 2d 870, 884

9    (E.D. Mich. 2006).[4]

10    Further, the balance of hardships "is not usually regarded as significant in a

11    copyright infringement action." E.F. Johnson Co. v. Uniden Corp. of Am., 623 F.

12    Supp. 1485, 1491 (D. Minn. 1985); see Taylor Corp. v. Four Seasons Greetings,

13    LLC, 315 F.3d 1039, 1042 (8th Cir. 2003) (once likelihood of success established,

14    balance of harms consideration is "negligible"). This is because "[i]f that were the

15    correct standard, then a knowing infringer would be permitted to construct its

16    business around its infringement." Apple Computer, Inc. v. Franklin Computer

17    Corp., 714 F.2d 1240, 1255 (3d Cir. 1983), quoting Atari, Inc. v. N. Am. Philips

18    Consumer Elecs. Corp., 672 F.2d 607, 620 (7th Cir. 1982); see Cadence Design

19    Sys., Inc. v. Avant! Corp., 125 F.3d 824, 830 (9th Cir. 1997) (courts do not

20    consider purported harm to infringer where harm is based on infringing activities).

21    Thus, in the copyright infringement context, the critical inquiry on a request

22    for a temporary restraining order is whether the plaintiff demonstrates a likelihood

23

24    [4] eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391-93 (2006), vacated a lower
court's application of the "general rule that courts will issue permanent injunctions

25    against patent infringement absent exceptional circumstances." Although some
courts extended this holding to prohibit a presumption of irreparable harm, other

26    courts (including the last two noted above) hold that the presumption still exists.
In any event, whether or not the presumption of harm is applied in this case is

27    largely irrelevant, since, as described herein, the irreparable injury to Plaintiffs is
manifest if Defendants' unlawful actions continue unabated.

Mitchell
Silberberg &
Knupp LLP

2430784.DOC

28

10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION OF
PLAINTIFFS FOR TRO AND ORDER TO SHOW CAUSE RE: PRELIM. INJUNCTION

1   of success on the merits.  <u>Proven Methods Seminars, LLC v. Am. Grants &</u>

2   <u>Affordable Hous. Inst., LLC</u>, 519 F. Supp. 2d 1057, 1063 (E.D. Cal. 2007)

3   (preliminary injunction inquiry "effectively conflate[s] the two prongs into a single

4   question of whether the plaintiff is able to show a likelihood of success on the

5   merits") (quotations omitted).  Plaintiffs overwhelmingly meet this burden.

6

7   **III.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF**

8   **THEIR CLAIM FOR COPYRIGHT INFRINGEMENT.**

9        Sound recordings have been protected by federal copyright since 1972.  17

10  U.S.C. § 102(a)(7); <u>Goldstein v. California</u>, 412 U.S. 546, 552 (1973).  A *prima*

11  *facie* case of copyright infringement is proven by (1) ownership of the material

12  alleged to have been infringed, and (2) that defendant violated at least one

13  exclusive right granted to the copyright holder under 17 U.S.C. § 106.  <u>See</u>

14  <u>Napster</u>, 239 F.3d at 1013; <u>see also</u> <u>Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.</u>, 499

15  U.S. 340, 360 (1991).  Each of these elements is present here.

16       A.    <u>**Plaintiffs Are The Owners of the Copyrighted Recordings.**</u>

17       Plaintiffs own the copyrights in the Copyrighted Recordings listed in

18  Schedule A to the Complaint.  McMullan Decl. ¶ 10 & Ex. A.  Plaintiffs' copyright

19  registration certificates, which are attached to the McMullan Declaration,

20  constitute evidence of both the validity of the copyrights and the facts stated in the

21  certificates, including ownership.  17 U.S.C. § 410(c); <u>Transgo, Inc. v. Ajac</u>

22  <u>Transmission Parts Corp.</u>, 768 F.2d 1001, 1019 (9th Cir. 1985) ("[R]egistration by

23  the Copyright Office is prima facie evidence of copyrightability."); <u>Wildlife</u>

24  <u>Express Corp. v. Carol Wright Sales, Inc.</u>, 18 F.3d 502, 507 (7th Cir. 1994) ("A

25  certificate of registration from the U.S. Register of Copyrights constitutes prima

26  facie evidence of the validity of a copyright."); <u>Donald Frederick Evans & Assoc.,</u>

27  <u>Inc. v. Continental Homes, Inc.</u>, 785 F.2d 897, 903 (11th Cir. 1986) ("[T]he

Mitchell
Silberberg &
Knupp LLP

2430784.DOC

28

11

1   certificate of registration for the works 'constitute prima facie evidence of the

2   validity of the copyright and of the facts stated in the certificate'"). All of the

3   registration certificates confirm that Plaintiffs are the respective owners of the

4   Copyrighted Recordings.

5        **B.**   **Defendants Are Violating Plaintiffs' Exclusive Rights Under**

6           **Copyright**

7         Among the exclusive rights possessed by a copyright owner are the rights to

8   reproduce copies of the work, 17 U.S.C. § 106(1); to distribute copies of the work,

9   17 U.S.C. § 106(3), and to publicly perform the copyrighted work via a digital

10  transmission. 17 U.S.C. § 106(6). Defendants' conduct directly infringes

11  Plaintiffs copyrights in the Copyrighted Recordings in each of the following ways:

12        *First*, in order to distribute and perform the Copyrighted Recordings in the

13  manner described, Defendants necessarily made permanent copies of the

14  Copyrighted Recordings on their server. An infringing reproduction occurs when a

15  work is fixed in digital form on a hard drive or server (i.e., stored or hosted). See

16  Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1160 (2007) (a work "is

17  fixed in a tangible medium of expression for purposes of the Copyright Act when

18  embodied (i.e., stored) in a computer's server"); MAI Sys. v. Peak Computer, Inc.,

19  991 F.2d 511, 518 (9th Cir. 1993) (loading of copyrighted work into computer

20  Random Access Memory creates a copy in violation of copyright).

21        *Second*, Defendants' sale of the Copyrighted Recordings, resulting in a

22  digital transmission of the recordings to purchasers, is a violation of Plaintiffs'

23  exclusive right to distribute the Copyrighted Recordings. See 17 U.S.C. §

24  115(c)(3)(G) ("A digital phonorecord delivery of a sound recording is actionable as

25  an act of infringement under Section 501, and is fully subject to the remedies

26  provided [under the Copyright Act]."); Napster, 239 F.3d at 1014 ("Napster users

27  who upload file names to the search index for others to copy violate plaintiffs'

Mitchell
Silberberg &
Knupp LLP

2430784.DOC

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION OF
PLAINTIFFS FOR TRO AND ORDER TO SHOW CAUSE RE: PRELIM. INJUNCTION

1    distribution rights."); <u>see also</u> <u>New York Times Co. v. Tasini</u>, 533 U.S. 483, 498

2    (2001) (computer database distributed copies of newspaper articles by selling

3    copies through its database service).

4      ***Third***, Defendants infringe Plaintiffs' exclusive right to digitally publicly

5    perform the Copyright Sound Recordings by transmitting a digital stream of the

6    Copyrighted Recordings through the "Direct Playback" feature offered on the

7    BlueBeat Website.  17 U.S.C. § 101 ("To 'perform' a work means to recite, render,

8    play, dance, or act it, either directly or by means of any device or process . . . .");

9    <u>id.</u> ("To perform a work publicly means . . . to transmit or otherwise communicate

10   a performance . . . to the public, by means of any device or process, whether the

11   members of the public capable of receiving the performance or display receive it in

12   the same place or in separate places and at the same time or at different times.");

13   <u>see also</u> <u>Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.</u>, 454 F. Supp. 2d

14   966, 998 (C.D. Cal. 2006) (streaming constitutes public performance); <u>Columbia</u>

15   <u>Pictures Indus., Inc. v. Redd Horne, Inc.</u>, 749 F.2d 154, 159 (3d Cir. 1984) ("the

16   transmission of a performance to members of the public, even in private settings . .

17   . constitutes a public performance").

18     Defendants have no defense to their infringement.  BlueBeat's conduct –

19   namely, copying, distributing, and publicly performing Plaintiffs' Recordings, ***for***

20   ***a profit*** – is the worst and most obvious type of copyright infringement.

21   Defendants have stolen and are profiting from the very works on which Plaintiffs'

22   entire business is premised.  Moreover, while copyright infringement is a strict

23   liability offense (and thus Plaintiffs need not demonstrate Defendant's intent to

24   infringe), <u>see</u> <u>Lipton v. Nature Co.</u>, 71 F.3d 464, 471 (2d Cir. 1995), Defendants'

25   knowledge and intent (including their intent to harm Plaintiffs) is clear.  As

26   reflected in screenshots from the BlueBeat Website (Berkley Decl., ¶ 7 & Ex. 5),

27   not only have Defendants taken Plaintiffs' most popular Recordings without a

28

Mitchell
Silberberg &
Knupp LLP

2430784.DOC

13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION OF
PLAINTIFFS FOR TRO AND ORDER TO SHOW CAUSE RE: PRELIM. INJUNCTION

1  license, but they *identify Plaintiffs* on their own website as the record labels that
2  released such Recordings, display artwork from these Recordings, publicly tout the
3  availability of Plaintiffs' Recordings on the BlueBeat Website, and then actively
4  mislead the public about the legality of the BlueBeat Website and the existence of
5  licenses from Plaintiffs.[5]

6

7  **IV.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF**
8  **THEIR STATE LAW CLAIMS FOR MISAPPROPRIATION OF THE**
9  **PRE-1972 RECORDINGS.**

10       In addition to copying, selling, distributing, and publicly performing
11  Plaintiffs' Copyrighted Recordings, Defendants have misappropriated dozens of
12  Plaintiffs' Pre-1972 Recordings.

13       It is well-established that a party who, without authorization, duplicates and
14  distributes Pre-1972 Recordings for profit is liable for misappropriation to the
15  owners of those sound recordings.[6] See <u>A & M Records, Inc. v. Heilman</u>, 75 Cal.
16  App. 3d 554, 564 (1977) (duplication and sale of pre-1972 sound recordings
17  "presents a classic example of the unfair business practice of misappropriation");

18  _____

19  [5] Defendants apparently intend to advance a theory that because they used their
own technology and computer system to reproduce the Recordings (or capture the
20  sounds of these Recordings), *Defendants* (and not Plaintiffs) own the copyrights
in, and have the right to distribute, the infringing digital music files. The theory is
21  absurd on its face. The digital music files distributed and streamed by Defendants
are perfect copies of the *exact sounds* contained in Plaintiffs' Recordings. They
22  are identical in all substantive respects to Plaintiffs' commercial Recordings.
Accordingly, Defendants' distribution of these music files is infringing,
23  irrespective of the manner by which such files might have been created. <u>See</u>
<u>United States v. Taxe</u>, 540 F.2d 961, 965 (9th Cir. 1976) (rejecting defense of
24  "independent fixation": "[the owner of copyright in a sound recording] can protect
his right of reproduction from persons who produce an audibly equivalent work by
25  re-recording.")

    [6] State law claims for misappropriation of pre-1972 sound recordings are expressly
26  condoned by the Copyright Act. <u>See</u> 17 U.S.C. 301(c) ("With respect to sound
recordings fixed before February 15, 1972, any rights or remedies under the
27  common law or statutes of any State shall not be annulled or limited by this title
until February 15, 2067.").

28

Mitchell
Silberberg &
Knupp LLP

2430784.DOC

14

1    <u>Capitol Records, Inc. v. Erickson</u>, 2 Cal. App. 3d 526, 537 (1969) (preliminary

2    injunction affirmed against reproduction and sale of plaintiff's pre-1972 sound

3    recordings); <u>accord</u> <u>Apple Corps Ltd. v. Adirondack Group</u>, 476 N.Y.S. 2d 716,

4    719 (Sup. Ct. 1983) ("Record piracy is a well-recognized form of unfair

5    competition" under New York law). Such claims for misappropriation are

6    specifically codified by Cal. Civ. Code § 980(a)(2), which explicitly vests

7    exclusive ownership rights in pre-1972 sound recordings:

8         "The author of an original work of authorship consisting
          of a sound recording initially fixed prior to February 15,
9         1972, has an exclusive ownership therein until February
          15, 2047[7], as against all persons except one who
10        independently makes or duplicates another sound
          recording that does not directly or indirectly recapture the
11        actual sounds fixed in such prior sound recording, but
          consists entirely of an independent fixation of other
12        sounds, even though such sounds imitate or simulate the
          sounds contained in the prior sound recording."
13

14       All of the Pre-1972 Recordings are owned by Plaintiffs. McMullan Decl. ¶¶

15    11, 12 & Ex. B; <i>see</i> Cal. Civ. Code § 980(a)(2).[8] The Pre-1972 Recordings not

16    only represent an investment of enormous time and effort, but also represent some

17    of Plaintiffs' most valuable Sound Recordings (in fact, some of the most valuable

18    sound recordings in the world). Many of the Pre-1972 Recordings, such as those

19    by the Beatles, the Beach Boys, and Pink Floyd, are truly "evergreen" recordings,

20    enjoyed by multiple generations of music listeners and re-discovered by each new

21    generation. As such, Plaintiffs carefully control the use of these recordings, and

22

23    ───────────────

[7] The discrepancy between the term of state law protection between Section 301 of
24    the Copyright Act (referring to the year 2067) and Cal. Civ. Code § 980 (referring
to the year 2047) is the result of a 1998 amendment to the Copyright Act (the
25    Copyright Term Extension Act) that extended the term of copyright by 20 years. It
is likely that the California Civil Code eventually will be amended to conform to
26    the Copyright Act.

[8] An author may assign his or her ownership of a pre-1972 sound recording to a
27    third party. <u>See In re Napster, Inc. Copyright Litigation</u>, 191 F. Supp. 2d 1087,
1102 (N.D. Cal. 2002).

Mitchell
Silberberg &
Knupp LLP    28

2430784.DOC

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION OF
PLAINTIFFS FOR TRO AND ORDER TO SHOW CAUSE RE: PRELIM. INJUNCTION

1  authorizations to exploit these recordings (especially in the digital space) are

2  highly prized. By copying, and then distributing and performing, the Pre-1972

3  Recordings for their own benefit and profit, Defendants not only deprive Plaintiffs

4  of revenue to which they are entitled, but they seize for themselves valuable

5  licensing opportunities possessed by Plaintiffs and irreparably damage the overall

6  value of these recordings. See Heilman, 75 Cal. App. 3d at 564.

7

8  **V.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM UNLESS AN**

9  **INJUNCTION IS IMMEDIATELY ISSUED.**

10        Because Plaintiffs have established a likelihood of success on the merits of

11  their copyright infringement claims, irreparable harm is presumed. See supra at

12  10. Regardless, there is irrefutable evidence that Defendants' infringing activity,

13  which cannot be adequately compensated in money damages, is causing and will

14  continue to cause irreparable, unquantifiable harm to Plaintiffs and their valuable

15  Recordings. As noted above, every day that Plaintiffs' Recordings remain

16  available on the BlueBeat Website, the Recordings are distributed and infringed by

17  Defendants at a rapid and growing rate. As a result, Plaintiffs are being robbed of

18  their valuable and exclusive rights to control how, by whom, and in what manner

19  their Recordings are used. See Taylor Corp. v. Four Seasons Greetings, LLC, 403

20  F.3d 958, 968 (8th Cir. 2005) (plaintiff "certainly has the right to control the use of

21  its copyrighted materials, and irreparable harm inescapably flows from the denial

22  of that right"); Napster, 239 F.3d at 1029 (in the absence of injunctive relief,

23  "plaintiffs would lose the power to control their intellectual property"). More

24  specifically, Plaintiffs are being harmed in the following respects.

25        *First*, Defendants' conduct harms Plaintiffs' core business. Plaintiffs have

26  spent enormous sums and years of effort to develop a legitimate market for digital

27  distribution of their copyrighted music. McMullan Decl. ¶¶ 14-16. Defendants are

Mitchell
Silberberg &
Knupp LLP

28

2430784.DOC

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION OF
PLAINTIFFS FOR TRO AND ORDER TO SHOW CAUSE RE: PRELIM. INJUNCTION

1    providing, for free or for a nominal sum, and without paying for the right to do so,

2    the very same sound recordings that Plaintiffs' sell or license, to the same

3    consumers to whom Plaintiffs are trying to sell these works.  See Napster, 239 F.3d

4    at 1016-17 ("[T]he district court concluded that Napster harms the market in 'at

5    least' two ways: it reduces audio CD sales among college students and it raises

6    barriers to plaintiffs' entry into the market for digital downloading of music.")

7    Defendants' conduct deprives Plaintiffs, recording artists, and others of

8    compensation to which they are entitled.  McMullan Decl. ¶ 17.

9        *Second*, Defendants are offering for sale certain recordings that are

10   unavailable for digital download by any authorized retailer or licensee.  This

11   includes, most notably, the highly anticipated Beatles remasters, which were

12   created at great expense over a four year period, during which time a dedicated

13   team of engineers utilized state of the art recording technology alongside vintage

14   studio equipment and carefully maintained the authenticity and integrity of the

15   original analog recordings in order to produce the highest fidelity version of the

16   Beatles recordings since their original release.  Id. ¶ 20.  By offering these

17   recordings for download without permission, the Defendants are unlawfully and

18   unfairly usurping the exclusive, and extremely valuable, right to digitally distribute

19   sound recordings which, to date, have not been made lawfully available by

20   Plaintiffs in any digital downloadable or streaming format.  Id. ¶ 21.

21       *Third*, any user who downloads the Recordings via the BlueBeat Website

22   may then redistribute the Recordings over the Internet.  Due to the viral nature of

23   the Internet – that is, the exponential speed with which content is distributed – the

24   ultimate distribution of the Recordings is potentially unlimited and immeasurable,

25   without any possibility of being traced, recalled, or compensated.  McMullan

26   Decl., ¶ 18; Universal City Studios, Inc. v. Reimerdes, 111 F. Supp. 2d 294, 332

27   (S.D.N.Y. 2000) ("dissemination itself carries the substantial risk of imminent

Mitchell
Silberberg &
Knupp LLP

2430784.DOC

28

17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION OF
PLAINTIFFS FOR TRO AND ORDER TO SHOW CAUSE RE: PRELIM. INJUNCTION

harm"); <u>20th Century Fox Film Corp. v. Streeter</u>, 438 F. Supp. 2d 1065, 1073 n.2
(D. Ariz. 2006) ("when digital works are distributed via the internet ... every
downloader who receives one of the copyrighted works from defendant is in turn
capable of transmitting perfect copies of the works .... [t]hreatening virtually
unstoppable infringement."); <u>Disney Enters., Inc. v. Delane</u>, 446 F. Supp. 2d 402,
408 (D. Md. 2006) ("[T]here is no way to know how many times this content has
been accessed and downloaded ... further infringements are a continuing threat,
making remedies at law insufficient.").

*Fourth*, BlueBeat's unauthorized (and unfettered) exploitation of Plaintiffs'
Recordings causes irreparable damage to Plaintiffs' digital distribution strategies
and relationships. By offering below-market-value downloads of Sound
Recordings (including new releases and popular sound recordings), as well as free
digital streaming transmissions of the Sound Recordings, Defendants undercut and
jeopardize the legitimate retail market for these sound recordings. McMullan Decl.
¶ 21.

*Finally*, Plaintiffs' conduct fosters a perception that Plaintiffs' Recordings
should be distributed and made available at an unsustainably low price over the
Internet – made possible only because the sales on BlueBeat's website are free of
any revenue participation by or licensing fees paid to copyright owners and artists.
McMullan Decl., ¶ 22. The perceived value of Plaintiffs' music, whether
distributed digitally or otherwise, is irreparably harmed by the notion that it is
available at a significantly lower price than can be found through authorized
sources. <u>See Ticketmaster</u>, 507 F. Supp. 2d at 1114-15 ("In this Circuit, intangible
injuries, such as damage to goodwill, can constitute irreparable harm.").

Mitchell
Silberberg &
Knupp LLP

2430784.DOC

18

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION OF
PLAINTIFFS FOR TRO AND ORDER TO SHOW CAUSE RE: PRELIM. INJUNCTION

## VI.    A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION WILL SERVE THE PUBLIC INTEREST.

In copyright cases, "the issue of public policy rarely is a genuine issue if the copyright owner has established a likelihood of success," <u>Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc.</u>, 843 F.2d 600, 612 (1st Cir. 1988), because "the public interest is the interest in upholding copyright protections." <u>Autoskill Inc. v. Nat'l Educ. Support Sys. Inc.</u>, 994 F.2d 1476, 1499 (10th Cir. 1993). Indeed, "it is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work." <u>Apple Computer, Inc. v. Franklin Computer Corp.</u>, 714 F.2d 1240, 1255 (3d Cir. 1983). Here, injunctive relief is "necessary to preserve the integrity of the copyright laws which seek to encourage individual effort and creativity by granting valuable enforceable rights." <u>Atari Inc.</u>, 672 F.2d at 620.

## VII.    ALTERNATIVELY, PLAINTIFFS HAVE RAISED SERIOUS QUESTIONS CONCERNING THE MERITS AND THE BALANCE OF THE HARDSHIPS TIPS IN PLAINTIFFS' FAVOR

Plaintiffs also satisfy the alternative test for a temporary restraining order and preliminary injunction. As demonstrated above, there certainly exists, at a minimum, "serious questions" concerning Plaintiffs' infringement claims. <u>See</u> <u>Napster</u>, 239 F.3d at 1013. Further, the balance of hardships tips in Plaintiffs' favor. As discussed above, Plaintiffs will be irreparably harmed if Defendants are permitted to continue to infringe.

By contrast, the only conceivable harm Defendants might suffer if the requested injunction is issued is the loss of revenue from the unauthorized sale of Plaintiffs' Recordings. "[I]n the copyright infringement context, once a plaintiff

1  has established a strong likelihood of success on the merits, any harm to the

2  defendant that results from being preliminarily enjoined from continuing to

3  infringe is legally irrelevant." Ticketmaster LLC, 507 F. Supp. 2d at 1115, citing

4  Triad Sys. Corp. v. Southeastern Exp. Co., 64 F.3d 1330, 1338 (9th Cir. 1995); see

5  Cadence Design Sys., Inc. v. Avant! Corp., 125 F.3d 824, 830 (9th Cir. 1997)

6  (same).  Moreover, since Defendants are well aware that they do not possess the

7  required licenses to distribute Plaintiffs' Sound Recordings, they certainly must

8  have expected that they would be required to cease their infringing conduct the

9  moment Plaintiffs discovered it.  Even the media easily foresaw the relief

10  requested by Plaintiffs.  See Berkley Decl., ¶ 3 & Ex. 1 ("[Defendant] Risan didn't

11  immediately return our calls or e-mails. He's probably sifting through phone

12  messages and cease and desist letters…")

13

14  ## VIII.  THE REQUESTED TEMPORARY RESTRAINING ORDER AND

15  PRELIMINARY INJUNCTION ARE REASONABLE

16  The Copyright Act contemplates that Internet-based infringement can be and

17  should be taken down "expeditiously."  See 17 U.S.C. § 512(c)(1)(A)(iii) (upon

18  receiving notice of infringement, recipient is required "expeditiously to remove, or

19  disable access to, the [infringing] material").[9]  Plaintiffs need an injunction

20  prohibiting all Defendants, their affiliates, and those acting in concert with them,

21  from infringing *any* of Plaintiffs' copyrighted works.  Canopy Music, Inc. v.

22  Harbor Cities Broad. Inc., 950 F. Supp. 913, 916 (E.D. Wis. 1997) (enjoining radio

23  station that infringed 10 musical composition copyrights and "prohibit[ing] the

24

25  [9]  As noted above, Plaintiffs have provided formal notice to Defendants' Internet
Service Provider, Cogent Communcations.  However, the BlueBeat Website
26  remains operational.  Moreover, even if Cogent were to temporarily take down
infringing content, only an injunction will ensure that the content *remains*
27  disabled.  See, e.g. 17 U.S.C. § 512(g)(2) (service provider may replace removed
material upon receipt of counter notification by user).

28

Mitchell
Silberberg &
Knupp LLP

2430784.DOC

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION OF
PLAINTIFFS FOR TRO AND ORDER TO SHOW CAUSE RE: PRELIM. INJUNCTION

1   defendant from performing any songs to which ASCAP possesses the right to

2   license."); <u>Zeon Music v. Stars Inn Lounge, Ltd.</u>, 1994 WL 163636, at *5 (N.D. Ill.

3   Apr. 28, 1994) (defendants infringed four songs, court enjoined defendants "from

4   publicly performing or sponsoring the public performances of *any* musical

5   composition included *in ASCAP's repertory* until such time as defendants obtain a

6   license to do so") (emphasis added); <u>Weintraub/Okun Music v. Atlantic Fish &</u>

7   <u>Chips, Inc.</u>, 1991 WL 34713, at *4 (N.D. Ill. Mar. 13, 1991) (seven songs infringed

8   by restaurant; because of threat of future infringement, Court enjoined "further

9   infringement of the copyrights held by ASCAP members").

10      Defendants are fully capable of complying with the requested Injunction,

11  including determining which content they are exploiting in violation of Plaintiffs'

12  copyrights and related rights. In any event, it is Defendants' burden to ensure that

13  its business is being conducted in a wholly lawful manner. <u>CSC Holdings, Inc. v.</u>

14  <u>Greenleaf Elec., Inc.</u>, 2000 WL 715601, at *7 (N.D. Ill. June 2, 2000) ("[a]

15  balancing of the parties' respective hardships reveals that the injunction means only

16  that Defendants will be enjoined from conducting a business that is prohibited by

17  federal law."). Regardless, it appears that Defendants already possesses all of the

18  information required to comply with the requested injunction, including because

19  *each and every listing on the BlueBeat Website expressly identifies the "label"*

20  *that owns the Sound Recording*. Moreover, label information is available via

21  publicly accessible websites such as www.allmusic.com, Amazon.com, iTunes,

22  and others.

23      Additionally, removing the Sound Recordings from the BlueBeat website is

24  a simple matter. All of the Sound Recordings are stored on a server owned and

25  controlled by Defendants. Thus, all that Defendants need do is to delete Plaintiffs'

26  content from their server or, alternatively, block access to content on that server.

27  This can be done immediately.

Mitchell
Silberberg &
Knupp LLP

2430784.DOC

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION OF
PLAINTIFFS FOR TRO AND ORDER TO SHOW CAUSE RE: PRELIM. INJUNCTION

1

## CONCLUSION

2      For the foregoing reasons, Plaintiffs respectfully request that the Court issue

3  a temporary restraining order in the form of the [proposed] Temporary Restraining

4  Order, and an Order to Show Cause re entry of a Preliminary Injunction.

5

6  DATED: November 3, 2009          RUSSELL J. FRACKMAN

7                           MARC E. MAYER
                                DAVID A. STEINBERG

8                           MITCHELL SILBERBERG & KNUPP LLP

9

10                    By: _____
                             Marc E. Mayer

11                           Attorneys for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

2430784.DOC

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION OF
PLAINTIFFS FOR TRO AND ORDER TO SHOW CAUSE RE: PRELIM. INJUNCTION