FILED

2009 NOV -3 PM 12:58

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

1  RUSSELL J. FRACKMAN (SBN 49087)
   MARC E. MAYER (SBN 190969)
2  DAVID A. STEINBERG (SBN 130593)
   MITCHELL SILBERBERG & KNUPP LLP
3  11377 West Olympic Boulevard
   Los Angeles, California 90064-1683
4  Telephone: (310) 312-2000
   Facsimile: (310) 312-3100

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CAPITOL RECORDS, LLC, a Delaware limited liability company; CAROLINE RECORDS, INC., a New York Corporation; EMI CHRISTIAN MUSIC GROUP INC., a California Corporation; PRIORITY RECORDS, LLC, a Delaware limited liability company; VIRGIN RECORDS AMERICA, INC., a California Corporation; and NARADA PRODUCTIONS, INC., a Wisconsin corporation,

    Plaintiffs,

v.

BLUEBEAT, INC., a Delaware corporation, doing business as www.bluebeat.com; MEDIA RIGHTS TECHNOLOGIES, INC., a California corporation; BASEBEAT, INC., a Delaware corporation, doing business as www.basebeat.com; HANK RISAN, an individual; and DOES 1 through 10,

    Defendants.

CASE NO. CV09 08030 JFW (JCx)

DECLARATION OF ALASDAIR MCMULLAN IN SUPPORT OF *EX PARTE* APPLICATION OF PLAINTIFFS FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

Mitchell
Silberberg &
Knupp LLP

2431130.1

# DECLARATION OF ALASDAIR MCMULLAN

I, Alasdair McMullan, the undersigned, hereby declare:

1. I am the Executive Vice-President of Legal Affairs of EMI Music North America ("EMI"). In my capacity as in-house counsel for EMI, among other things, I manage and supervise litigation for EMI and its record label affiliates, including but not limited to Capitol Records, LLC, Caroline Records, Inc., EMI Christian Music Group Inc., Priority Records, LLC, and Virgin Records America, Inc., Narada Productions, Inc. (collectively the "EMI Record Companies" or "Plaintiffs"). I make this declaration upon personal knowledge and in support of Plaintiffs *Ex Parte* application for a Temporary Restraining order against BlueBeat, Inc., Media Rights Technologies, Inc., BaseBeat, Inc., and Hank Risan (collectively "BlueBeat"). If called upon to do so, I could and would competently testify to the matters stated herein.

2. The EMI Record Companies are engaged in the business of producing sound recordings and distributing, selling, and/or licensing the production, distribution, sale, and performance of their sound recordings in phonorecords, in audiovisual works, and for streaming and downloading over the Internet. Plaintiffs invest substantial time, money, effort and creative talent in discovering and developing recording artists, and in creating, advertising, promoting, selling and licensing catalog sound recordings.

3. Capitol Records, LLC is a limited liability company duly organized and existing under the laws of the State of Delaware, with its principal place of business in Los Angeles, California and in New York, New York.

4.   Caroline Records, Inc. is a corporation duly organized and existing under the laws of the State of New York, with its principal place of business in New York, New York.

5.   EMI Christian Music Group, Inc. is a corporation duly organized and existing under the laws of California, with its principal place of business in Nashville, Tennessee.

6.   Priority Records, LLC, is a limited liability company duly organized and existing under the laws of Delaware, with its principal place of business in New York, New York.

7.   Virgin Records America, Inc. is a corporation duly organized and existing under the laws of the State of California, with its principal places of business in Los Angeles, California, and New York, New York.

8.   Narada Productions, Inc. is a corporation duly organized and existing under the laws of Wisconsin, with its principal place of business in New York, New York.

### Discovery of Infringing Websites

9.   On Friday, October 30, 2009, I first became aware that sound recordings owned or exclusively controlled by the EMI Record Companies were being sold and distributed through the Internet website www.bluebeat.com (the "BlueBeat website"). BlueBeat and the BlueBeat website have never been and are not authorized or licensed to sell, distribute or exploit any sound recordings owned or exclusively controlled by the EMI Record Companies.

## Ownership

10.  Plaintiffs own copyrights and/or exclusive exploitation rights in and to their sound recordings (the "Copyrighted Recordings"), including many of the most popular sound recordings in the world. A representative sample of Plaintiffs' Copyrighted Recordings are the recordings identified on Schedule A hereto, incorporated herein by reference. Plaintiffs have obtained certificates of copyright registration in each of the Copyrighted Recordings, including but not limited to those identified on Schedule A, attached hereto as Exhibit A. The SR Copyright Registration certificates of these Copyrighted Recordings (or, in a few limited cases printouts from the Copyright Office website reflecting the existence of these certificates) are attached hereto as Exhibit A. As the owner of copyrights in the Copyrighted Recordings, Plaintiffs possess the exclusive rights, among other things, to reproduce the Copyrighted Recordings in copies or phonorecords, to adapt the Copyrighted Recordings, to distribute copies or phonorecords of the Copyrighted Recordings to the public, to perform the Copyrighted Recordings publicly by means of a digital audio transmission and to license these exclusive rights, including the exercise of these rights over the Internet.

11.  Plaintiffs also possess exclusive ownership rights in sound recordings of musical performances that were initially "fixed" (i.e., recorded) prior to February 15, 1972 ("Pre-1972 Recordings"). Among the Pre-1972 Recordings owned by Plaintiffs are those identified the Schedule attached hereto as Exhibit B. I am personally familiar with the contracts and written documentation pursuant to which the EMI Record Companies obtained copyright ownership or exclusive exploitation rights in and to the sound recordings set forth in Schedule B. If called upon to do so, I can arrange to have this written documentation made available to the Court. (The "Copyrighted Recordings" and the "Pre-1972 Recordings"

collectively are referred to as the "Sound Recordings." or "Plaintiffs' Recordings.")

12. EMI's ownership of the Pre-1972 Recordings can also be confirmed via publicly available information included in such sources as "All Music" and is further confirmed, for example, by the screenshots of Album Artwork taken from the BlueBeat website, which designate such ownership by the EMI Record Companies. See Declaration of James Berkley filed concurrently herewith. Included in the Pre-1972 Recordings are all of the Sound Recordings by The Beatles ("Beatles Albums").

### Irreparable Harm

13. The BlueBeat website is unlawfully exploiting, selling and distributing Plaintiff's recordings in a manner which is causing great and irreparable injury to the EMI Record Companies.

### BlueBeat Threatens The Core Of EMI's Business

14. The irreparable harm that BlueBeat is causing to the EMI Record Companies can be understood by comparing the tremendous investment of resources that the EMI Record Companies have historically expended and continue to expend to create, manufacture, release, market and promote sound recordings to the trivial steps taken by BlueBeat to facilitate, enable and encourage the blatant infringement of those sound recordings. BlueBeat rides on the back of, and directly profits from, the work the EMI Record Companies have done over decades to release their Sound Recordings, all the while diverting sales from the EMI Record Companies and their authorized licensees.

15. The recordings that are owned by the EMI Record Companies reflect the investment of substantial time, money, and the creativity of many people. That investment includes, among other things, production recording and manufacturing costs, advertising, promotion, and marketing costs, and payments to recording artists, record producers, music publishers, musicians and back up singers. The EMI Record Companies also make substantial payments to unions such as the American Federation of Musicians and the American Federation of Television and Radio Artists, which are used to fund pension and health funds for musicians and performers. The EMI Record Companies are able to make such payments from the revenues they derive from sales of the sound recordings that they own. I am informed and believe that BlueBeat makes none of the above payments, including union pension and health fund payments, with the potential result in the case of some union members that they may not qualify for union health insurance.

16. The EMI Record Companies' entrance into the digital distribution market (i.e., the Internet) was, and remains, very time consuming and complex. It involves, among many other considerations, the ongoing development, analysis, and reassessment of numerous business models to determine which one or ones will prove most successful. This continuing and time- and resource-consuming process includes the coordination of the timing of releases of sound recordings in both the compact disc and digital formats; the negotiation and procurement from music publishers, artists, and others of rights to sell and distribute music over the Internet; the ongoing development, analysis, and reassessment, either alone or with partners, of efficient and effective systems to sell music to the consumer online.

17. One of the most difficult challenges, however, is trying to compete with unauthorized and unlawful Internet systems, such as BlueBeat, which are responsible for enabling and facilitating the distribution for uneconomic and unsustainably low prices of the very same sound recordings that the EMI Record Companies are attempting to sell to consumers through digital distribution over the Internet, and by compact disc and other physical formats. If businesses such as BlueBeat, which collects revenue from Plaintiffs' Sound Recordings while diverting revenue from Plaintiffs and distributing no money to the parties who made those Sound Recordings possible, are permitted to operate, the continued viability of Plaintiffs' core business would be in serious jeopardy.

**BlueBeat Deprives Plaintiffs Of Their Rights**

18. Defendants' conduct also deprives Plaintiffs of their exclusive rights to control the unique intellectual property represented by the Sound Recordings. EMI has spent years carefully designing and implementing the distribution channels and authorized third party relationships through which it exploits its sound recordings, including a complex interplay of advertisements, promotions, sponsorships and marketing. Due to the viral nature of the Internet, and Defendant's unauthorized website, and the speed and anonymity with which content is distributed, Defendant's unauthorized exploitation of the Sound Recordings is unlimited and immeasurable in its effects.

19. Defendants' infringement deprives EMI of their fundamental right to control how, by whom, and in what manner it chooses to exploit the Sound Recordings.

20.     For example, with regard to The Beatles sound recordings, the BlueBeat website is unlawfully usurping for itself the exclusive right to digitally distribute sound recordings which, to date, have never been made lawfully available by the EMI Record Companies in any digital downloadable or streaming format. On September 9, 2009, Capitol Records began selling a widely anticipated remastered re-release of The Beatles Albums in the compact disc and vinyl format. The remastered Beatles Albums were not, however, released via digital distribution. The Beatles re-release was created over a four year period, during which a dedicated team of engineers utilized state of the art recording technology alongside vintage studio equipment and carefully maintained the authenticity and integrity of the original analogue recordings in order to produce the highest fidelity version of the Beatles recordings since their original release.

21.     The BlueBeat website is selling and distributing, without authorization or license, several dozen Beatles Albums, including the newly re-released albums, at a fraction of the price at which they are sold through authorized channels, thereby unfairly competing with and causing additional irreparable injury to EMI and to EMI's authorized retailers and licensees.

**BlueBeat Changes Consumer Perceptions**

22.     The BlueBeat website fosters the widespread perception among its users that Plaintiffs' music should be distributed and made available at an uneconomic and unfairly low price over the Internet – made possible only because

7

the sales on BlueBeat's website are free of any revenue participation by or licensing fees paid to copyright owners, artists and all other royalty participants. The perceived value of Plaintiffs' music, whether distributed digitally or otherwise, is irreparably harmed by the notion that it is available at an unfairly lower price than can be found through authorized sources.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 2d day of Nov., 2009, at New York, NY.

_____
Alasdair McMullan