UNITED STATES DISTRICT COURT       **PRIORITY SEND**
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 09-8030-JFW (JCx)**                              Date: November 5, 2009

Title:   Capitol Records, LLC, et al. -v- Bluebeat, Inc., et al.

**PRESENT:**

HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE

| Shannon Reilly | None Present |
|---|---|
| **Courtroom Deputy** | **Court Reporter** |

**ATTORNEYS PRESENT FOR PLAINTIFFS:**         **ATTORNEYS PRESENT FOR DEFENDANTS:**
            None                                                                            None

**PROCEEDINGS (IN CHAMBERS):**   ORDER GRANTING *EX PARTE* APPLICATION OF PLAINTIFFS FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION [filed 11/3/2009; Docket No. 3]

On November 3, 2009, Plaintiffs Capitol Records, LLC, Caroline Records, Inc., EMI Christian Music Group Inc., Priority Records, LLC, Virgin Records America, Inc., and Narada Productions, Inc. ("Plaintiffs") filed an *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction ("Application"). On November 4, 2009, Defendants BlueBeat, Inc., Media Rights Technologies, Inc., BaseBeat, Inc., and Hank Risan ("Defendants") filed their Opposition. On November 4, 2009, Plaintiffs filed their Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. After considering the moving, opposing, and reply papers and the arguments therein, the Court rules as follows:

**I.   Factual and Procedural Background**

Plaintiffs are record companies, in the business of producing sound recordings and distributing, selling, and/or licensing the reproduction, distribution, sale, and performance of their sound recordings in phonorecords, in audiovisual works, and for streaming and downloading over the Internet. Plaintiffs' catalog of sound recordings includes some of the most famous recordings in the world, including recordings by the Beatles, the Beach Boys, Pink Floyd, Duran Duran, ColdPlay, Lenny Kravitz, Radiohead, and Katy Perry.

Plaintiffs own or control copyrights to certain sound recordings recorded after February 15, 1972, including those identified in Schedule A to the Complaint, which are protected by the

Copyright Act, 17 U.S.C. § 102(a)(7) (the "Copyrighted Recordings"). Plaintiffs also own or control certain sound recordings recorded prior to February 15, 1972, including those identified in Schedule B to the Complaint, which are protected by state law (the "Pre-1972 Recordings").

Although many of Plaintiffs' Copyrighted Recordings and Pre-1972 Recordings (collectively "Recordings") are made available for digital download, not all of them are available for digital download. Most notably, the Beatles catalog of recordings, including a recently released box set of "remastered" Beatles recordings, has never been made available for digital download.

Defendants collectively own and operate the Internet website, www.bluebeat.com (the "BlueBeat Website"). The BlueBeat Website is a music-based, commercial website that purports to offer a massive catalog of musical recordings that may be either purchased for permanent download or immediately "performed" via an on-demand streaming transmission. One of the major features of the BlueBeat Website is that it offers its registered members, i.e., anyone who sets up a free, anonymous membership account, the ability to purchase or download any album or individual recording, at the price of $0.25 per track, which is one fourth the typical retail price for digital downloads. The BlueBeat Website also offers its members a feature it refers to as "Direct Playback," which permits users to receive a free "streaming" digital performance of any recording or album within the BlueBeat library.

Plaintiffs allege that thousands of their Recordings are being made available for download or streaming on the BlueBeat Website without their authorization, including the remastered Beatles recordings, and allege the following claims for relief: (1) direct copyright infringement in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501; (2) violation of California Civil Code § 980(a)(2) and common law misappropriation; and (3) statutory and common law unfair competition.

Plaintiffs filed their Complaint along with their Application, just four days after they first learned of Defendants' alleged infringement or misappropriation of their Recordings.

## II.   Legal Standard

The standard for issuing a temporary restraining order ("TRO") is identical to the standard for issuing a preliminary injunction. *See Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). To obtain a preliminary injunction a plaintiff must show (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm if the preliminary injunction is not granted; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. __ , 129 S. Ct. 365, 374 (2008); *American Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).[1]

---

[1] Prior to the Supreme Court's decision in *Winter*, injunctive relief was appropriate under the Ninth Circuit's "sliding scale" test. However, in *Winter*, the Supreme Court expressly disapproved of this sliding scale test because it allowed an injunction to issue based on a "possibility" of irreparable harm. 555 U.S. at __, 129 S. Ct. at 375. Accordingly, in light of *Winter*, the Ninth Circuit overruled its sliding scale test, and adopted the standard set forth in *Winter*. *See American Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) ("To the

Moreover, "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). A plaintiff faces an exceedingly high burden when seeking such relief on an *ex parte* basis. *See Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995) (to justify *ex parte* relief, "the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regularly noticed motion procedures"). Indeed, the Ninth Circuit recently reiterated, that "courts have recognized very few circumstances justifying the issuance of an ex parte TRO." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006).

### III.    Discussion

The Court concludes that Plaintiffs are entitled to injunctive relief. Plaintiffs have carried their burden, and have clearly demonstrated (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm if the injunctive relief is not granted; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest.

#### A.    Likelihood of Success on the Merits

Plaintiffs have made a clear showing that they are likely to succeed on the merits, on both their claim for copyright infringement and their state law claims.

"To establish a successful copyright infringement claim, a plaintiff must show that he or she owns the copyright and that defendant copied protected elements of the work." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) (internal citation omitted) (*citing Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th Cir. 1990)). The requirements for establishing violation of California Civil Code § 980(a)(2), common law misappropriation, and statutory and unfair competition are similar. *Cf.* Cal. Civ. Code § 980(a)(2); *A&M Records, Inc. v. Heilman*, 75 Cal. App. 3d 554, 564 (1977) (noting that the duplication of performances owned by plaintiff in order to resell them for profit "presents a classic example of the unfair business practice of misappropriation of the valuable efforts of another").

The Court finds that Plaintiffs have demonstrated that they own the copyrights for the Copyrighted Recordings in Schedule A of the Complaint, as they have submitted the registration certificates for each of those recordings. *See* 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate; *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1110 (9th Cir. 1998) ("[C]opyright registration creates a presumption of ownership."). They have also demonstrated that they own the Pre-1972 Recordings. *See* McMullan Decl. ¶¶ 11, 12 & Exh. B. Indeed, Defendants do not contest that Plaintiffs own the copyrights for the Copyrighted Recordings or the Pre-1972 Recordings listed in Schedules A and B of the Complaint.

---

extent that our cases have suggested a lesser standard, they are no longer controlling, or even viable").

Plaintiffs have also produced sufficient evidence demonstrating that Defendants copied protected elements of their Recordings. Indeed, screenshots from BlueBeat's Website show track titles, with the same names as Plaintiffs' Copyrighted Works and Pre-1972 Recordings, available for download. *See* Berkley Decl. ¶ 16, Exh. 19, 20. The screenshots even indicate that Plaintiffs are the owners of the relevant tracks on BlueBeat's Website (by identifying the "label" of each track). *Id.*

Despite this evidence, Defendants claim in their Opposition that they sell "entirely different sound recording[s] than that copyrighted by Plaintiffs" and that they "independently developed their own original sounds," citing the Copyright Act, 17 U.S.C. § 114(b). Section 114(b) provides in relevant part: "The exclusive rights of the owner of copyright in a sound recording under clauses (1) and (2) of section 106 do not extend to the making or duplication of another sound recording that consists entirely of an independent fixation of other sounds, even though such sounds imitate or simulate those in the copyrighted sound recording." 17 U.S. § 114(b). Defendants however do not submit any declarations or reliable evidence in support of their claim that they "independently developed their own original sounds."[2] Defendants' conclusory claim in their Opposition, without any reliable evidence, cannot refute the substantial evidence presented by Plaintiffs in support of the Application.

Although lacking in clarity, Defendants also appear to claim that because they do not transmit digital audio performances, but "audio visual performances with related sounds" pursuant to their copyrights, they cannot be liable for copyright infringement of Defendants' digital audio performances. However, as one court obviously pointed out, "[Defendant] cannot invalidate the copyright of an independent and preexisting sound recording, simply by incorporating that sound recording into an audiovisual work." *Traicoff v. Digital Media, Inc.*, 439 F. Supp. 2d 872, 883 (S.D. Ind. 2006).

Accordingly, the Court concludes that Plaintiffs have made a clear showing that they are likely to succeed on the merits.

**B.    Likelihood of Irreparable Harm**

Plaintiffs have also demonstrated that they are likely to suffer irreparable harm in the

---

[2]Although Defendants submit a copyright registration certificate for audiovisual works entitled "www.bluebeat.com," the registration certificate is utterly lacking in detail, and the Court cannot determine what audiovisual works, if any, are covered by the alleged copyright. In addition, although Defendants submit an email dated November 2, 2009 in support of their claim, the statements contained therein are hearsay and self-serving, and will not be considered by the Court. Although the Court has discretion to consider hearsay evidence on an application for a temporary restraining order, only reliable hearsay has any persuasive value. *See Overstreet ex rel. National Labor Relations Board v. Western Professional Hockey League*, 2009 WL 2905554, at *5 (D. Ariz. Sept. 4, 2009) (citation omitted) ("While it is 'within the discretion of the [Court] to accept [ ] hearsay for purposes of deciding whether to issue [a] preliminary injunction,' the Court will only do so if the movant provides some basis for accepting the proffered hearsay as reliable.").

absence of a temporary restraining order.[3]

Harm is considered irreparable when it cannot be remedied except through injunctive relief. *See Designer Skin, LLC v. S&L Vitamins, Inc.*, 2008 WL 4174882, at *4 (D. Ariz. Sept. 5, 2008); *Grokster*, 518 F. Supp. 2d at 1210.  Significantly, copyright infringement via the Internet presents an extraordinary threat of irreparable harm:

> When digital works are distributed via the internet, . . . every downloader who receives one of the copyrighted works . . . is in turn capable of also transmitting perfect copies of the works.  Accordingly, the process is potentially exponential rather than linear, threatening virtually unstoppable infringement of the copyright.

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp.2d 1197, 1218 (C.D. Cal. 2007) (quoting *Elektra Entertainment Group, Inc. v. Bryant*, 2004 WL 783123, at * 7 n.5 (C.D. Cal. Feb. 13, 2004).  Indeed, because of the viral nature of the Internet, the ultimate distribution of the infringing works is potentially unlimited and damages generally do not adequately compensate the copyright holders for the harm caused.  *See Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1073 (D. Ariz. 2006); *Grokster,* 518 F. Supp. 2d at 1219.

Moreover, in this case, the likelihood of irreparable harm caused by Defendants' actions is even greater because Defendants are offering for sale certain recordings that are unavailable for digital download by *any* authorized retailer or licensee, including the highly anticipated remastered Beatles recordings. "As copyright owners, Plaintiffs have the exclusive right to decide when and how their material should be reproduced and/or distributed, regardless of whether their decisions make good business sense."  *Grokster*, 518 F. Supp. 2d at 1219.  The deprivation of this exclusive right can amount to irreparable harm, that cannot be remedied absent injunctive relief.  *See id.* ("Plaintiffs' power to control their rights has been so compromised by the means through which Stream Cast encouraged end-users to infringe . . . that the inducement amounts to irreparable harm.").  Indeed,  given that the Beatles catalog, including the remastered Beatles recordings, has never been released by Plaintiffs for digital download or licensed for on-demand streaming, every day that Defendants offer the Beatles catalog for digital download or on-demand streaming irreparably harms Plaintiffs' exclusive right to control the use of its copyrighted materials.

---

[3]Until recently, a plaintiff alleging copyright infringement was entitled to a presumption of irreparable harm, where the plaintiff was able to show a likelihood of success on the merits.  *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1119 (9th Cir. 1999); *Cadence Design Sys., Inc. v. Avanti! Corp.*, 125 F.3d 824, 826–27 (9th Cir. 1997) (holding that a presumption of irreparable harm arises where the plaintiff is able to show a likelihood of success on the merits of its copyright infringement claim).  This presumption, however, has been called into question in light of the Supreme Court decisions in *eBay Inc. v. MercExchange*, L.L.C., 547 U.S. 388, 394 (2006), and *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. __, 129 S. Ct. 365, 376 (2008).  The Court in this case need not decide whether the presumption still applies, because Plaintiffs have demonstrated that they are likely to suffer irreparable harm in the absence of a temporary restraining order.

Furthermore, by offering below-the-market-value downloads of Plaintiffs' Recordings, as well as free digital streaming transmissions of Plaintiffs' Recordings, Defendants' actions can cause irreparable damage to the perceived value of Plaintiffs' music and to Plaintiffs' digital distribution strategies and relationships. *See Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co.,* Inc., 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of a threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm."); *Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) ("[I]ntangible injuries, such as damage to ongoing recruitment efforts, and goodwill, qualify as irreparable harm.").

Accordingly, based on the combination of the foregoing factors -- the viral nature of the internet, the fact that Defendants are offering for sale certain recordings that are unavailable for download by any authorized retailer or licensee, and the potential for damage to the perceived value of Plaintiffs' music and digital distribution strategies and relations -- the Court finds that Plaintiffs have demonstrated that they are likely to suffer irreparable harm in the absence of a temporary restraining order.

### C.     Balance of Equities

The Court finds that the balance of equities tips in Plaintiffs' favor. Although Defendants claim, without any evidence, that an injunction would significantly harm, if not destroy, their business, the hardship suffered by Plaintiffs will be greater if Defendants are not enjoined from infringing or misappropriating Plaintiffs' Recordings. Indeed, Defendants "cannot complain of the harm that will befall it when properly forced to desist from its infringing activities." *Triad Systems Corp v. Southeastern Exp. Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995). *See also Cadence Design Systems, Inc. v. Avant! Corp.*, 125 F. 3d 824, 830 (9th Cir. 1997) (quotations and citations omitted) ("[w]here the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration . . . .").

### D.     Public Interest

The Court concludes that the public interest is served by issuance of the Temporary Restraining Order, as "it is virtually axiomatic that the public interest can only be served by upholding copyright protections and correspondingly, preventing the misappropriation of skills, creative energies, and resources which are invested in the protected work." *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3rd Cir. 1983).

## IV.     Conclusion

For the foregoing reasons, Plaintiffs' Application is **GRANTED.** The Court signs, as modified, the proposed Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction lodged with the Court on November 3, 2009.

      The Court sets the hearing on the Order to Show Cause for **November 20, 2009 at 11:00 a.m.** Defendants shall file their Opposition to the Order to Show Cause on November 10, 2009, and Plaintiffs shall file their Reply on November 13, 2009.

      IT IS SO ORDERED.