## SOFTWARE EVALUATION LICENSE AGREEMENT

This Software Evaluation License Agreement (this "**Agreement**") is entered into as of this 19th day of February, 2003 (the "**Effective Date**") by and between Music Public Broadcasting, Inc. ("**Licensor**"), and Recording Industry Association of America ("**Licensee**").

### RECITALS

**WHEREAS**, Licensor is willing to provide to Licensee, within the protection of a confidential relationship, certain proprietary software of Licensor solely for the purpose of Licensee's internal testing and evaluation thereof; and

**WHEREAS**, Licensee desires to have access to such proprietary software, and is willing to enter into a confidential relationship with Licensor solely for the purpose of internally testing and evaluating such proprietary software;

**NOW, THEREFORE**, in consideration of the mutual promises and covenants contained herein, the parties agree to the following terms and conditions, which set forth the rights, duties and obligations of the parties:

### AGREEMENT

1. **DEFINITIONS**

For purposes of this Agreement, the following terms shall have the following meanings:

    **1.1** "**Derivative Work**" shall mean a new or modified work that is based on or derived from a preexisting work, including, without limitation, a work that, in the absence of a license, would infringe the copyright in such preexisting work or that uses trade secrets or other proprietary information with respect to such preexisting work.

    **1.2** "**MPB Software**" shall mean the M-Streem DRM Software and the M-Streem $X^1$ Recording Control Software.

2. **RIGHTS IN MPB SOFTWARE**

    **2.1 Grant of Rights.** Subject to the terms and conditions of this Agreement, Licensor hereby grants to Licensee a restricted, non-exclusive, personal, nontransferable, nonsublicensable, royalty-free, revocable right to evaluate and test, in accordance with the documentation provided by Licensor, a single copy of the MPB Software at Licensor's premises on February 19, 2003, solely in a non-production capacity for Licensee's own internal testing and evaluation of the MPB Software. Except as set forth in this Section 2.1, no other right or license of any kind is granted by Licensor to Licensee hereunder with respect to the MPB Software.

    **2.2 Exclusions.** Without limitation of Section 2.1, Licensee shall not, without the prior written consent of Licensor: (a) copy all or any portion of the MPB Software; (b) decompile, disassemble or otherwise reverse engineer the MPB Software or any portion thereof, or determine or attempt to determine any source code, algorithms, methods or techniques embodied in the MPB Software or any portion thereof; (c) modify, translate or create any Derivative Works based upon the MPB Software; (d) distribute, disclose, discuss, market, rent, lease, assign, sublicense, pledge or otherwise transfer the MPB Software, in whole or in part, to any third party or export the MPB Software outside the United States; (e) remove or alter any copyright, trademark, trade name or other proprietary notices, legends, symbols or labels appearing on or in copies of the MPB Software; (f) perform, or release the results of its evaluation and testing of the MPB Software to any third party; (g) transfer the MPB Software to any computer other than the one provided to it by Licensor; or (h) use the MPB Software for any purpose other than in accordance with the terms and conditions of this Agreement.

3. **FEEDBACK**

Licensee agrees that Licensor shall be the sole owner of and shall own all right, title and interest in any and all feedback that it provides to Licensor with respect to the MPB Software, including, without limitation, any and all bug reports, test reports and evaluation notes (collectively, "**Feedback**"). Licensor shall have the right to use and publicize freely the Feedback, and such right shall not require the consent of Licensee in any way. Licensor shall not, under any circumstances, attribute any Feedback to Licensee unless it obtains Licensee's prior written consent to do so. Licensee may use the Feedback for the "Purpose" set forth in that certain Mutual Nondisclosure Agreement entered into as of February 11th, 2003 by and among Licensor, Licensee and the International Federation of the

Phonographic Industry (the "**Mutual Nondisclosure Agreement**") and only in accordance with the provisions set forth therein.

4. **SUPPORT**

Licensor shall provide Licensee with reasonable support on February 19, 2003 with respect to Licensee's testing and evaluation of the MPB Software.

5. **PROPRIETARY RIGHTS**

As between Licensor and Licensee, Licensor retains all right, title and interest, including, without limitation, all patent rights, copyrights, trademarks and trade secrets, in and to the MPB Software and any portion thereof, including, without limitation, any copy or Derivative Work of the MPB Software or any portion thereof and any Update thereto. Licensee agrees to take any action reasonably requested by Licensor to evidence, maintain, enforce or defend the foregoing. Licensee shall not take any action to jeopardize, limit or interfere in any manner with Licensor's ownership of and rights with respect to the MPB Software, or any Derivative Work or Update. Licensee shall have only those rights in or to the MPB Software and any Derivative Work or Update granted to it pursuant to this Agreement.

6. **PROPRIETARY INFORMATION**

   6.1 **Proprietary Information.** Licensee acknowledges that, in the course of using the MPB Software and exercising its rights under this Agreement, it may obtain confidential information relating to the MPB Software and/or to Licensor ("**Proprietary Information**"). Such Proprietary Information shall, as between Licensee and Licensor, belong solely to Licensor and shall include, without limitation, the MPB Software, trade secrets, know-how, inventions (whether or not patentable), techniques, processes, programs, ideas, algorithms, formulas, schematics, testing procedures, software design and architecture, computer code, internal documentation, design and functional specifications, product requirements, problem reports, performance information, software documents and other technical, business, product, marketing and financial information, plans and data. The notes of Licensee (other than those portions that contain Proprietary Information) shall be the proprietary information of Licensee.

   6.2 **Use and Disclosure Restrictions.** Licensee hereby acknowledges and agrees that the MPB Software constitute and contain valuable Proprietary Information and trade secrets of Licensor, and embody substantial creative efforts and confidential information, ideas and expressions. Licensee agrees (a) to protect Licensor's Proprietary Information from unauthorized dissemination and use; (b) to use Licensor's Proprietary Information only for the performance of Licensee's obligations and in connection with the exercise of Licensee's rights hereunder; (c) not to disclose any Proprietary Information, or any part or parts thereof, to any of its employees, agents or contractors except to those full-time employees of Licensee who are aware of the confidentiality obligations imposed by this Section 6 and have entered into written confidentiality agreements with Licensee which require such employees to comply with confidentiality obligations no less restrictive than the requirements of this Section 6; (d) not to disclose or otherwise provide to any third party, without the prior written consent of Licensor, any Proprietary Information or any data or other information produced, obtained or created by Licensee in connection with Licensee's evaluation of the MPB Software; (e) to undertake whatever action is necessary (or authorize Licensor to do so in the name of Licensee) to prevent or remedy any breach of Licensee's confidentiality obligations herein set forth or any other unauthorized disclosure of any Proprietary Information by its current or former employees, agents or contractors; and (f) not to remove or destroy any proprietary or confidential legends or markings placed upon or contained within the MPB Software or any other Proprietary Information provided to Licensee by Licensor.

   6.3 **Exclusions.** The foregoing restrictions on disclosure and use shall not apply with respect to any Proprietary Information that: (a) was or becomes publicly known through no fault of Licensee; (b) was known by Licensee before receipt from Licensor, as evidenced by Licensee's contemporaneous written records; (c) becomes known to Licensee without confidential or proprietary restriction from a source other than Licensor that does not owe a duty of confidentiality to Licensor with respect to such Proprietary Information; or (d) is independently developed by Licensee without the use of the Proprietary Information of Licensor. In addition, Licensee may use or disclose Proprietary Information to the extent (i) approved by Licensor and (ii) Licensee is legally compelled to disclose such Proprietary Information, provided, however, that prior to any such compelled disclosure, Licensee shall cooperate fully with Licensor in protecting against any such disclosure and/or obtaining a protective order narrowing the scope of such disclosure and/or use of the Proprietary Information.

**6.4 Equitable Relief.** Licensee acknowledges and agrees that, due to the unique nature of Licensor's Proprietary Information, there can be no adequate remedy at law to compensate Licensor for the breach of any provision of this Section 6; that any such breach shall allow Licensee or third parties to compete unfairly with Licensor resulting in irreparable harm to Licensor that would be difficult to measure; and, therefore, that upon any such breach or threat thereof, Licensor shall be entitled to injunctive and other appropriate equitable relief (without the necessity of proving actual damages), in addition to whatever remedies it may have at law.

### 7. NO WARRANTY

THE MPB SOFTWARE ARE PROVIDED "AS IS" AND LICENSOR DISCLAIMS ALL WARRANTIES AND REPRESENTATIONS, WHETHER EXPRESS OR IMPLIED, RELATING TO THE MPB SOFTWARE, INCLUDING, WITHOUT LIMITATION, ANY WARRANTIES OF DESIGN, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NONINFRINGEMENT OF THIRD PARTY RIGHTS, OR WARRANTIES ARISING FROM A COURSE OF DEALING, COURSE OF PERFORMANCE, USAGE OR TRADE PRACTICE.

### 8. LIMITATION OF LIABILITY

TO THE EXTENT ALLOWED BY APPLICABLE LAW AND NOTWITHSTANDING ANY FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY OR LIMITATION OF LIABILITY: (a) IN NO EVENT SHALL LICENSOR OR ITS SUPPLIERS BE LIABLE FOR ANY DAMAGES FOR LOSS OF PROFITS, LOSS OF BUSINESS, LOSS OF USE OR DATA, OR INTERRUPTION OF BUSINESS, OR FOR ANY INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY KIND OR OTHER ECONOMIC LOSS ARISING FROM OR RELATING TO THIS AGREEMENT, EVEN IF LICENSOR HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, HOWEVER CAUSED, AND (b) NOTWITHSTANDING ANYTHING IN THIS AGREEMENT TO THE CONTRARY, LICENSOR'S ENTIRE LIABILITY ARISING FROM OR RELATING TO THIS AGREEMENT OR THE SUBJECT HEREOF, UNDER ANY LEGAL THEORY (WHETHER IN CONTRACT, TORT, INDEMNITY OR OTHERWISE), IF ANY, SHALL NOT EXCEED FIVE HUNDRED DOLLARS (US$500).

### 9. TERM AND TERMINATION

**9.1 Term.** This Agreement shall commence at 12:01 a.m. on the Effective Date and, unless sooner terminated, shall continue in full force and effect until 11:59 p.m. on the Effective Date.

**9.2 Termination.** Licensor may terminate this Agreement immediately in the event that Licensee breaches any of the provisions of this Agreement or takes any action in derogation of Licensor's rights in and to the MPB Software. Licensee shall promptly notify Licensor within twenty-four (24) hours of Licensee's becoming aware of any breach (other than by Licensor) of the terms and conditions of this Agreement, including, without limitation, Sections 2 and 6.

**9.3 Effect of Termination.** Upon the expiration or termination of this Agreement, the rights granted to Licensee hereunder shall terminate. Within five (5) days after any termination or expiration of this Agreement, Licensee shall return to Licensor the MPB Software and all Proprietary Information, and shall deliver to Licensor all copies and extracts of the foregoing and any and all documents, notes and other materials relating to Licensee's testing and evaluation of the MPB Software; provided, however, Licensee may retain its notes, which notes Licensee only may use for the "Purpose" set forth in the Mutual Nondisclosure Agreement and only in accordance with the provisions set forth therein. Any costs incurred in returning the MPB Software upon termination shall be borne by Licensee. The provisions of Sections 2.2, 3, 5, 6, 7, 8, 9.3 and 10 shall survive the expiration or any termination of this Agreement. Termination of this Agreement by either party shall not act as a waiver of any breach of this Agreement and shall not act as a release of either party from any liability for breach of such party's obligations under this Agreement. Neither party shall be liable to the other for damages of any kind solely as a result of terminating this Agreement in accordance with its terms, and termination of this Agreement by a party shall be without prejudice to any other right or remedy of such party under this Agreement or applicable law.

### 10. GENERAL PROVISIONS

**10.1 Notices.** Any notice, request, demand or other communication required or permitted hereunder shall be in writing, shall reference this Agreement and shall be deemed to be properly given: (a) when delivered personally; (b) when sent by facsimile, with written confirmation of receipt; (c) seven (7) days after having been sent by

EXHIBIT F PG 3

registered or certified mail, return receipt requested, postage prepaid; or (d) two (2) business days after deposit with a private industry express courier, with written confirmation of receipt. All notices shall be sent to the address set forth below (or to such other address as may be designated by a party by giving written notice to the other party pursuant to this Section 10.1):

**If to Licensee:**

Music Public Broadcasting, Inc.
55 River Street
Suite 200
Santa Cruz, California 95060
Attention: Legal Affairs

**If to Licensor:**

Recording Industry of America
1330 Connecticut Avenue, NW
Suite 300
Washington, D.C. 20036
Attention: Barry Robinson

**10.2 Assignment.** This Agreement may not be assigned, in whole or part, whether voluntarily, by operation of law or otherwise, by Licensee without the prior written consent of Licensor. Subject to the preceding sentence, the rights and liabilities of the parties hereto shall bind, and inure to the benefit of, their respective assignees and successors and is binding on the parties and their successors and assigns. Any attempted assignment other than in accordance with this Section 10.2 shall be null and void.

**10.3 Governing Law, Jurisdiction and Venue.** This Agreement shall be governed by and construed in accordance with the laws of the State of California, U.S.A., without reference to its conflicts of law provisions. Any dispute regarding this Agreement shall be subject to the exclusive jurisdiction of the California state courts in and for Santa Cruz, California, U.S.A. (or, if there is federal jurisdiction, the United States District Court for the Northern District of California), and the parties agree to submit to the personal and exclusive jurisdiction and venue of these courts.

**10.4 Waiver.** The waiver by either party of a breach of or a default under any provision of this Agreement, shall be in writing and shall not be construed as a waiver of any subsequent breach of or default under the same or any other provision of this Agreement, nor shall any delay or omission on the part of either party to exercise or avail itself of any right or remedy that it has or may have hereunder operate as a waiver of any right or remedy.

**10.5 Severability.** If the application of any provision of this Agreement to any particular facts or circumstances shall be held to be invalid or unenforceable by an arbitration panel or a court of competent jurisdiction, then (a) the validity and enforceability of such provision as applied to any other particular facts or circumstances and the validity of other provisions of this Agreement shall not in any way be affected or impaired thereby and (b) such provision shall be enforced to the maximum extent possible so as to effect the intent of the parties and reformed without further action by the parties to the extent necessary to make such provision valid and enforceable.

**10.6 Relationship of the Parties.** Nothing contained in this Agreement shall be deemed or construed as creating a joint venture, partnership, agency, employment or fiduciary relationship between the parties. Neither party nor its agents have any authority of any kind to bind the other party in any respect whatsoever, and the relationship of the parties is, and at all times shall continue to be, that of independent contractors.

**10.7 Restricted Rights.** If Licensee is an agency or instrumentality of the United States Government, the MPB Software are "commercial computer software" and "commercial computer software documentation," and, pursuant to FAR 12.212 or DFARS 227.7202, and their successors, as applicable, use reproduction and disclosure of the MPB Software are governed by the terms of this Agreement.

**10.8 Entire Agreement.** Except for the Mutual Nondisclosure Agreement, this Agreement, including the Exhibit(s) attached hereto and incorporated herein by reference, constitutes the entire agreement between the parties concerning the subject matter hereof and supersedes all prior or contemporaneous representations, discussions, proposals, negotiations, conditions, agreements and communications, whether oral or written, between the parties relating to the subject matter of this Agreement and all past courses of dealing or industry custom. No amendment or modification of any provision of this Agreement shall be effective unless in writing and signed by a duly authorized signatory of Licensor and Licensee.

[*The Next Page Is The Signature Page*]

February 19, 2003 3:11 PM
wla - 10038

4

EXHIBIT F PG 4

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by duly authorized representatives of the parties as of the Effective Date.

**LICENSEE**

By: *Barry K. Robinson*
    Signature

Name: *Barry K. Robinson*
      Print or Type

Title: *Senior Counsel for Corporate Affairs*

**LICENSOR**

By: *[signature]*
    Signature

Name: *HAWK RISAN*
      Print or Type

Title: *CEO*

EXHIBIT E PG 5