Case 2:09-cv-08030-JFW-JC    Document 17-8    Filed 11/10/2009    Page 1 of 16



<u>WEBCASTING LICENCE</u>

THIS LICENCE is made as from the [          ] day of [          ] 2006

BETWEEN:

PHONOGRAPHIC PERFORMANCE LIMITED

of 1 Upper James Street, London, W1F 9DE

("PPL")

AND

BLUEBEAT INC

of 55 River Street, Suite 200, Santa Cruz, CA 95060, USA

www.bluebeat.com

("the Licensee")

**INTRODUCTION:**

(A) PPL provides services to rights owners and users for the collective licensing of rights in sound recordings, and distributes licence fee revenue to record companies and to performers. PPL desires to grant the Licensee a licence for the use of its repertoire in the Licensee's Webcasting service, all subject to the terms below.

(B) The Licensee operates a Webcasting service available in the UK and desires to obtain the right to use the repertoire of PPL in this service, all subject to the terms below.

(C) PPL and the Licensee acknowledge that this Licence is experimental and non-precedental and that the terms of this Licence do not necessarily reflect the concluded view of either party as to what the appropriate terms for the Licensee's Webcasting service or for other Webcasting and similar services should be.

(D) This Licence is for Webcasting services that satisfy one of the following criteria:
(1) Commercial Internet Radio stations financed mainly by commercial revenues (advertising, sponsorship, subscription etc), with annual revenues greater than £5,000.
(2) Any student or community service generating annual commercial revenues (advertising, sponsorship, subscription etc) greater than £5,000.
(3) Services financed and branded by a commercial parent company.
(4) Simulcast services to support an existing and established ILR, DAB or Satellite stations.

EXHIBIT K  PG 1

- 1 -

**IT IS HEREBY AGREED** as follows:

1. **Definitions and Interpretation**

1.1   The following definitions apply in this Licence:

"*the 1988 Act*" means the Copyright, Designs and Patents Act 1988.

"*Archived Programme*" means a predetermined programme of sound recordings that is available repeatedly on the demand of a user and that is performed in the same order from the beginning, except that an Archived Programme shall not include a recorded event or other transmission that makes no more than an incidental use of sound recordings, as long as such recorded event or other transmission does not contain an entire Sound Recording.

"*Commencement Date*" means 1 January 2006.

"*Continuous Programme*" means a predetermined programme that is continuously performed in the same order and that is accessed at a point in the programme that is beyond the control of the transmission recipient.

"*Excluded Track*" means a track notified by PPL to the Licensee in accordance with Clause 5.1.

"*Extended Territory*" means all those territories listed on PPL's website and for which PPL is able to license the Webcasting of Sound Recordings.

"*Identifiable Programme*" means any programme (other than an Archived Programme or a Continuous Programme) in which sound recordings are played in a predetermined order and which is capable of identification as a distinct programme.

"*Interactive Service*" means a service or part of a service that enables a member of the public to receive either:
(i)   a transmission of a programme specially created for the recipient, or
(ii)  on request, a transmission of a particular sound recording, whether or not as part of a programme, which is selected by or on behalf of the recipient;
provided that the ability of individuals to request that particular sound recordings be performed for reception by the users of the Service at large, or in the case of a subscription service, by all subscribers of the service, does not make a service interactive, if the programming on each channel of the service does not substantially consist of sound recordings that are performed within 1 hour of the request or at a time designated by either the transmitting entity or the individual making such request. If an entity offers both interactive and non-interactive services (either concurrently or at different times), the non-interactive component shall not be treated as part of an interactive service.

"*Internet*" means any physical network of interconnecting computers over which multi media content, including, without limitation, text, graphics, software, audio and video identifiable by reference to a unique URI/URL

EXHIBIT K PG 2

(Uniform Resource Locator), is made available to and accessed by users of web browsers (for example, the browsers known as "Microsoft Internet Explorer" and "Netscape") through the use of a common set of software protocols such as TCP/IP protocols.

"*ISRC*" means the International Standard Recording Code (ISO 3901).

"*Licence Period*" means the period of 12 months commencing on the Commencement Date, subject to the termination of this Licence pursuant to Clause 13.

"*the Members*" means the persons, firms, companies or entities who are from time to time members of PPL.

"*PPL*" means Phonographic Performance Limited.

"*Performance*" means each instance in which any portion of a Sound Recording in the Service is delivered to a single Player, excluding (a) a performance of a non-copyrighted sound recording; and (b) a sound recording subject to a direct licence from the owner of the sound recording(s) in question.

"*Player*" means a player or other apparatus or device capable of playing a transmission of a sound recording in the Service.

"*Pre-Announced Transmission*" means a transmission of an Identifiable Programme as part of the Service, where the date and time of that transmission has been publicly announced in advance of that transmission taking place.

"*Programme Return*" means a full and proper return setting out for each channel in the Service and in chronological order a list of Tracks and including the following information:

(1)  the date of the Webcast;

(2)  the time of transmission of the programme in which the Track was used;

(3)  the title of the programme in which the Track was used;

(4)  the duration of such Track used (in seconds);

(5)  the ISRC number if included in the sub codes accompanying the Track and subject to notification by PPL of the acceptability of reporting by means of ISRC;

(6)  the title of the said Track including, where available, the title of the version or mix;

- 3 -


EXHIBIT K PG 3

(7) the record label and catalogue number of the physical product including sound recordings;

(8) (where identifiable) the identity of the performers whose performances are contained in the Track; and

(9) the number of Performances of that Track.

"*Quarter*" means the period of three consecutive months starting on 1 January, 1 April, 1 July and 1 October as the case may be.

"*RPI*" means the official Index of Retail Prices (All Items) published by HM Government.

"*Record*" means any disc, tape, gramophone record, computer disk or other device or mechanism used for the storage of sound recordings.

"*the Repertoire*" means all those sound recordings the ownership, control or right to grant licences of the relevant copyright in which are vested in PPL from time to time by the Webcasting Members subject always to the provisions of Clause 5 and excluding any soundtrack associated with a cinematograph film (or music video) to the extent that such soundtrack is only designed to be played in synchronisation with that film (or music video).

"*the Service*" means the provision of audio channels via the Internet to the Players in the Territory and, where applicable, the Extended Territory, further particulars being set out in Schedule A to this Licence.

"*Sound Recording*" means a sound recording in the Repertoire.

"*Streaming*" means the continuous delivery via the Internet of an audio or audio visual transmission(s) that enables the contemporaneous performance of the transmitted sound recording(s) by a Player.

"*Tariff of Destination*" means the applicable Webcasting tariff for a territory in the Extended Territory in force from time to time.

"*Territory*" means the United Kingdom of Great Britain and Northern Ireland, the Channel Islands, the Isle of Man and all additional territories to which the 1988 Act shall extend.

"*Territory Report*" means a report setting out the territories within the Extended Territory that have received the Service together with information on the relative number of streams to each of those territories.

"*Track*" means a sequence of sounds comprising the whole or part of a sound recording which is identified by a number or other device indicated by or on any descriptive text accompanying the sound recording or by information

EXHIBIT ___ PG ___

embodied in or on the Record on which the sound recording is stored or identified by a separate ISRC number.

"*VAT*" means value added tax.

"*Webcasting*" means any Streaming, the primary purpose of which is not to sell, advertise or promote particular products or services other than sound recordings, live concerts or other music-related events (and the word "*Webcast*" shall be interpreted accordingly).

"*Webcasting Members*" means those Members who have appointed PPL as their non-exclusive agent to license the Webcasting in the Territory of their Sound Recordings.

"*Working Day*" means any day of the week (Monday to Friday inclusive) which is not a public holiday in England and Wales.

1.2. For the purpose of interpretation of this Licence:-

(a) Reference to any statute or statutory provision includes a reference to that statute or statutory provision as from time to time amended extended or re-enacted.

(b) Words importing the singular number include the plural (and vice versa), words importing any gender include every gender and words importing persons include bodies corporate and unincorporated.

(c) References to clauses are references to clauses of this Licence unless stated otherwise.

(d) Where expressions used in this Licence are expressions used in the 1988 Act, they shall have the same meaning in this Licence as in the 1988 Act unless the context otherwise requires.

(e) In this Licence, unless the context requires otherwise, references to the word "including" do not imply any limitation.

1.3 This Licence is executed on the strict understanding and agreement that it is entirely without prejudice to the contentions of either PPL or the Licensee as to the appropriate terms, or the basis for such terms, for the inclusion of Sound Recordings in the Service or any other services.

1.4 This agreement is not precedental and neither PPL nor the Licensee shall:

(a) refer this Licence (and/or any of its terms) to the Copyright Tribunal (and/or any successor of the Copyright Tribunal) or any other authority or body exercising a similar function to the Copyright Tribunal; or

(b) adduce this Licence (and/or any of its terms) as evidence of the concluded view of either party as to the proper terms for the Service (or for any similar service).


EXHIBIT K PG 5

include its successors and assignees.

1.5 This Licence does not form the basis of a future understanding between PPL and the Licensee and is intended merely to facilitate the lawful operation of the Service for the Licence Period so that the parties can in good faith assess in more detail the nature and effect of the Service and the appropriate terms for the licensing of the Service.

1.6 Clauses 1.3 to 1.5 of this Licence apply to any licensing of the Service (or any similar service) by the Members of PPL to the same extent that they apply to the licensing of the Service (or any similar service) by PPL.

## 2. Grant: Webcasting

2.1 Subject to the terms and conditions of this Licence and for the sole purpose of providing the Service PPL hereby grants to the Licensee a non-exclusive licence during the Licence Period and within the Territory and, where applicable, the Extended Territory to Webcast Sound Recordings in the Service.

2.2 For the avoidance of doubt:
(1) no rights in respect of any Interactive Service are granted under this Licence;

(2) no rights in respect of the Dubbing of Sound Recordings, whether by the Licensee or third parties, are granted under this Licence:

(3) no rights in respect of the public performance of Sound Recordings (whether in the Territory or elsewhere) are granted under this Licence;

(4) transmissions (a) within closed proprietary systems, (b) within closed private networks and/or (c) within or to mobile phone networks are excluded from the scope of this Licence; and

(5) the Service shall only be offered to the recipients and/or customers of the Service for private and domestic use and not for resale or other commercial use.

## 3. Restrictions and Warranties

3.1 Without prejudice to Clause 3.3, the Licensee hereby warrants that:

(1) it shall not publish or cause to be published, by means of an advance program schedule or prior announcement, the titles of the specific tracks or the names of albums incorporating such tracks to be transmitted, or, other than for illustrative purposes, the names of the featured recording artists (save that this clause does not disqualify a prior announcement that a particular artist will be featured within an unspecified future time period);

- 6 -


EXHIBIT K PG 4

(2) it shall not Webcast (or authorise the Webcast) in any 3-hour period:
    (i) more than 3 different songs from a particular album, including no more than 2 consecutively, or
    (ii) more than 4 different songs by a particular artist or from any compilation of Tracks, including no more than 3 consecutively;

provided that the transmission on the Service of selections in excess of the numerical limits identified in this Clause 3.1 (2) from multiple sound recordings shall nonetheless not constitute a breach of this Clause 3.1 (2) if the programming of the multiple sound recordings was not wilfully intended to avoid these numerical limits.

(3) no part of the Service shall contain:
    (i) an Archived Programme of less than 5 hours in duration; or
    (ii) an Archived Programme that is made available for a period exceeding 2 weeks; or
    (iii) a Continuous Programme of less than 3 hours duration.

(4) for any Identifiable Programme of less than 1 hour in duration there shall be no more than 3 Pre-Announcement Transmissions of that Identifiable Programme in any 2 week period and that for any Identifiable Programme of 1 hour or more in duration there shall be no more than 4 Pre-Announcement Transmissions of that Identifiable Programme in any 2 week period;

(5) it shall not knowingly transmit a Sound Recording as part of a service that offers transmissions of visual images, in a manner that is likely to cause confusion, to cause mistake, or to deceive as to any affiliation or association of the copyright holder or featured artist with the Licensee or a particular product or service advertised by the Licensee, or as to the sponsorship, or approval by the copyright holder or featured recording artist of the activities of the Licensee other than the performance of the Sound Recording itself;

(6) it shall use effective technologies, insofar as such technologies are commercially available and can be implemented without imposing unreasonable costs, which aim to prevent:
    (i) a transmission recipient from automatically scanning the Licensee's transmissions alone or together with transmissions by other transmitting entities in order to select a particular sound recording to be transmitted to the transmission recipient; and
    (ii) a transmission recipient from making copies, other than transient copies, of the sound recordings.

(7) it shall accommodate and not interfere with technical measures that are used by sound recording copyright holders to identify or protect copyrighted works, and that are technically feasible of being transmitted by the Licensee without imposing substantial costs on him or resulting in perceptible aural or visual degradation of the digital signal.

EXHIBIT K PG 7

subject to Clause 3.1(5)

    (i)    it shall identify in textual data the sound recording during, but not before, the time it is performed, including the title of the sound recording, the title of the album embodying such sound recording, if any, and the featured recording artist, in a manner to permit it to be displayed to the transmission recipient by the device or technology intended for receiving the Service; and

    (ii)    the transmission of the sound recording shall be accompanied, if technically feasible, by the information encoded in that sound recording, if any, by or under the authority of the copyright holder of that sound recording, that identifies the title of the sound recording, and the featured recording artist who performs on the sound recording;

(9)    it shall not (a) knowingly transmit unauthorised recordings (including bootlegs) or (b) without the permission of the rights owner(s), transmit via the Service sound recordings that have not yet been made available for Webcasting purposes in the Territory and Extended Territory;

(10)    it shall not re-mix, edit or otherwise change sound recordings so that what is transmitted would be different from the original sound recording, provided that to segue Sound Recordings to form a Continuous or Archived Programme shall not constitute a breach of this Clause 3.1(10);

(11)    it shall not automatically and intentionally cause any device receiving the transmission to switch from one programme channel to another, provided that this shall not apply to any "shuffle" feature which allows a user to randomly select channels of music on the Service;

(12)    it shall not incorporate skip, pause or back buttons into any part of its Service, or include any functionalities that allow the recipients of the Service to personalise the Service, such as the possibility of rating artists or albums, where the effect of such functionality is to determine which sound recordings are Webcast to an individual user;

(13)    the Service shall not be designed to assist in the making of any copies of Sound Recordings that would be usable after the cessation of the transmission;

(14)    it shall not itself, or authorise or permit any other person to, Dub any Sound Recording included in the Service (except as to the extent permitted by law);

(15)    it shall not authorise or permit any other person to include any Sound Recording in the Service;

(16)    it shall not commit any act which deliberately encourages or induces taping or recording or re-recording of the Service (or any part of the Service) and which is not lawful or properly authorised;

- 8 -


EXHIBIT K PG 8

(17) it shall not use any Sound Recording in such a way as may be taken to imply that any goods, products or services other than the Sound Recording are endorsed advertised or associated with the Sound Recording or any artist whose performance is contained on the Sound Recording or any other party who owns rights in connection with the Sound Recording;

(18) it shall not use any Sound Recording:
  (i) as an introduction to or during advertising; or
  (ii) as a signature tune for promotional spots for events; or
  (iii) as a trade mark or brand;

(19) it shall exercise proper discretion in the choice and use of the Sound Recordings so as not to denigrate the artistic integrity of any copyright works or any performance embodied on any Sound Recording nor to subject any copyright works or performance embodied on any Sound Recording to derogatory treatment and it shall not accompany the Sound Recording with any image that would have any of these effects (or which is illegal or offensive);

(20) it shall not include in the Service or use any Sound Recording otherwise than in accordance with the conditions of this Licence, as permitted by law or expressly licensed by the owner of the relevant rights in that Sound Recording;

(21) subject to Clause 4.1, the details of the Service set out in Schedule A are true, accurate and complete in all respects;

(22) in providing the Service no representations shall be made that any rights in Sound Recordings are transferred in any way to any third party, other than the right to perform the Sound Recordings on a Player as described in this Licence in a manner that does not constitute a public performance of those Sound Recordings; and

(23) it shall inform PPL as soon as reasonably practicable of any breach of PPL's rights or the rights of the Members in the Repertoire or other illegal activities concerning the rights of PPL or the Members in the Repertoire which comes to the notice of the Licensee.

3.2 The licences granted under Clause 2 shall only relate to the copyright in the Sound Recordings and does not include, refer to or cover any other consents or authorisation of whatsoever nature which may be required for the Service.

3.3 All rights in the Repertoire which are owned or controlled by PPL and not expressly licensed to the Licensee under Clause 2 are expressly reserved.

3.4 PPL hereby warrants and represents to the Licensee on behalf of itself that it has the right, power and authority to enter into and to grant this Licence on the terms set out in this Licence.


EXHIBIT K PG 9

3.5   PPL hereby warrants that it shall perform the administration services provided under this Licence in a good and workmanlike and timely manner and to appropriate professional standards.

4.  **Information and Programme Returns**

4.1   The Licensee shall provide advance written notice to PPL of any material changes to the information set out in Schedule A to this Licence. PPL shall review such changes promptly and negotiate in good faith with the Licensee any material variation to this Licence which is necessary to accommodate the notified changes. It is expressly agreed and declared that this obligation shall not be construed as implying any consent on the part of PPL to any change so notified.

4.2   The Licensee shall within 20 (twenty) Working Days of the expiry of each Quarter supply to PPL a Programme Return and a Territory Report in respect of that month. The Programme Return and the Territory Report must comply with PPL's requirements as notified to the Licensee from time to time.

4.3   The Licensee shall provide PPL with such further information as PPL may reasonably require from time to time to clarify the information previously submitted in Programme Returns and Territory Reports supplied pursuant to Clause 4.2.

4.4   In compiling the Territory Reports to be supplied pursuant to Clause 4.2 the nature and detail of the information to be provided as to the relative amounts of streams to each territory shall be agreed between PPL and the Licensee (save that the Licensee shall not be entitled to refuse to consent to any reasonable request made by PPL).

5.  **Notification of Excluded Material**

5.1   PPL may at any time during the Licence Period notify the Licensee in writing that one or more specified Tracks from the Repertoire or the whole of a particular Sound Recording or particular Sound Recordings are excluded from the Licence either for the whole or part of the Licence Period which exclusion shall be effective from the date of receipt of such notification by the Licensee (or, as the case may be, from any future date that is specified in that notification).

5.2   Following a notification from PPL pursuant to Clause 5.1 in respect of any Excluded Track and as soon as reasonably practicable the Licensee shall not Webcast that Excluded Track in the Service (unless such Webcast is expressly and properly licensed by the relevant rightholder). Following a notification from PPL pursuant to Clause 5.1 in respect of any Excluded Track the Licensee shall be responsible for obtaining any licence(s) necessary from the owner of the copyright in the sound recording of the Excluded Track(s).

5.3   The Licensee's obligation(s) under Clause 5.2 shall be at the Licensee's cost.

EXHIBIT E PG 10

6. **Advance**

6.1 The Licensee shall pay to PPL a non-returnable advance of **£500** (five hundred pounds) for all channels in the Service and for each Quarter within the Licence Period in respect of the royalties payable under Clause 7.1(a) and 7.1(b).

6.2 The non-returnable advance shall be payable on the Commencement Date.

6.3 The advance payable under Clause 6.1 shall be recouped against any consideration payable to PPL under Clause 7.1(a) and Clause 7.1(b). No payment shall be due pursuant to Clause 7.1(a) or Clause 7.1(b) to the extent that any part of the advance paid under Clause 6.1 is unrecouped.

7. **Consideration**

7.1 In consideration of the rights granted under Clause 2 the Licensee shall account and pay to PPL:
  (a) in each month of the Licence Period the aggregate of 0.0515 pence (£0.000515 sterling) per Performance in the Territory in that month, this fee being subject to Clause 7.2 and to indexation pursuant to Clause 11;
  (b) in each month of the Licence Period the applicable licence fees according to the Tariff of Destination for any Performances in the Extended Territory (such licence fees being displayed on PPL's website); and
  (c) on commencement of the Licence Period £100 (one hundred pounds sterling) for the administration fee to the Licensee.

7.2 The calculation in Clause 7.1(a) shall exclude 4% of Performances as a notional figure to take account of partial Performances of nominal duration made by a Licensee due to, for example but without limitation, technical interruptions, network failure, the closing down of a media player or channel switching. For the avoidance of doubt, this adjustment shall apply regardless of the Licensee's actual experience of such partial Performances.

8. **Royalty Statement and Payment**

8.1 Subject to Clause 8.2, the Licensee shall within 20 Working Days of the expiry of each Quarter in the Licence Period (and, as the case may be, at the end of the Licence Period) supply to PPL a royalty statement setting out a full and proper account for each channel of all the Performances in the Territory and the Extended Territory in that Quarter and shall pay the licence fees due under Clause 7.1(a) and Clause 7.1(b) (subject to recoupment pursuant to Clause 6.3) to PPL within 20 (twenty) Working Days thereafter.

8.2 The fee due under Clause 7.1(c) shall be paid on the Commencement Date and shall not be recouped against any of the advances payable under this Licence.

8.3 The Licensee shall not set-off any claims for repayments (whether under this Licence or any other licence granted by PPL) against any advances or royalties due to PPL under Clauses 6 and/or 7.


EXHIBIT K PG 11

## 9. VAT

9.1  All payments referred to in this Licence are exclusive of VAT and the Licensee shall pay together with those payments such VAT or any like tax where the same is applicable at the prevailing rate or rates from time to time.

9.2  Where payments are made in accordance with Clause 9.1, PPL shall provide to the Licensee a duly receipted VAT invoice in respect of such payments.

## 10. Interest

10.1  If any payment to PPL under this Licence is not received on the due date interest at the rate of 2% above the HSBC Base Rate in force from time to time shall be payable by the Licensee on the sum due calculated from the due date until the date of actual payment whether before or after judgment.

## 11. Indexation

11.1  This Licence subsists during the Licence Period only and terminates at the expiry of the Licence Period.

11.2  Save as provided in Clause 11.3, the sums referred to in Clause 6.1 and Clause 8.2 and the sums referred to in Clause 7.1(a) shall be adjusted on 1 January of each year so as to reflect any increase in the RPI by multiplying the relative amounts by the RPI published in the November of the previous year and dividing the result by the RPI published in the November of the year before that.

11.3  In the event that the RPI is reset at any time, the calculations in Clause 11.2 shall be adjusted to take account of that change.

## 12. Royalty Audit

12.1  The Licensee shall keep separate and accurate books of account and records concerning the use of Sound Recordings under this Licence, including the number of Performances and the information used to generate Programme Returns and Territory Reports (the "**Licensee's Records**").

12.2  Once in every 12 months and within 20 (twenty) Working Days of a request from PPL to do so, the Licensee shall permit PPL and/or its authorised representatives (who shall be a Chartered or Certified Accountant) to enter the premises of the Licensee and to inspect, take copies and conduct an examination of all the Licensee's Records however stored (whether the same have previously been inspected copied or examined pursuant to this Licence or not) as required.

12.3  If such inspection shows a deficiency in the monies due under Clause 7.1 and Clause 7.3 the Licensee shall forthwith make good this deficiency by paying the equivalent sum to PPL together with interest on that sum in accordance with Clause 10.1. If such inspection shows an over-payment the amount of such over-payment shall be credited to the Licensee against royalties subsequently falling due under Clause 7.1.

12.4  If such inspection shows a deficiency in the monies due under Clause 7.1 and Clause 7.3 in excess of 5% in the amounts paid in respect of any month prior to the inspection the Licensee shall at the same time as making payment of such



deficit in accordance with Clause 12.3 pay to PPL all reasonable costs and expenses incurred by PPL in connection with such inspection or audit together with interest on that sum from such date in accordance with Clause 10.1.

12.5    The rights of inspection, examination and taking copies specified in Clauses 12.1 and 15.2 and the obligations specified in Clauses 12.3 to 12.4 shall continue beyond the cessation of the Service and/or the termination of this Licence for a period of 2 years.

12.6    The Licensee for a period of 2 years after the date of the cessation of the Service or the expiry or termination of this Licence shall retain the Licensee's Records to enable PPL, its authorised representatives and/or its auditors to determine an adequate audit trail by which to verify the royalty due to PPL under this Licence.

12.7    All information disclosed to those conducting the royalty audit pursuant to the provisions of Clauses 12.1 to 12.6 will be kept confidential by PPL and shall not be used or disclosed for any purposes other than verifying the information supplied to PPL, obtaining legal and/or accountancy advice thereon or for any subsequent legal proceedings which may arise directly therefrom.

## 13. Termination

13.1    PPL shall have the right at any time during the continuance of this Licence to terminate this Licence forthwith by written notice to the Licensee in any of the following events:

 (a)    If the Licensee commits or permits to be committed any material breach or breaches of any of the terms (whether or not conditions) of this Licence and such breach is incapable of remedy;

 (b)    If the Licensee commits or permits to be committed any material breach or breaches of any of the terms (whether or not conditions) of this Licence (including non-payment) and such capable is capable of remedy and the Licensee has not remedied such breach within 20 (twenty) Working Days of being notified in writing of the same;

 (c)    If the Licensee (being an individual) suffers a statutory demand to be served upon him and/or becomes bankrupt or enters into an arrangement or composition with or for the benefit of his creditors or suffers an execution to be levied against his goods or property or (being a company) shall be wound up whether compulsorily or voluntarily (save for the purpose of reconstruction or amalgamation) or suffers an execution to be levied against its goods or property or has a receiver or administrator appointed over its assets or any of them or if notice of any liquidation or other proceedings related to insolvency is served upon it.

13.2    Upon early termination of this Licence the last month for the purpose of calculating appropriate royalties payable under Clause 7.1 and Clause 7.3 shall be the period from the date of the commencement of the month in which the termination takes place until the date of termination.

13.3    Termination of this Licence howsoever occasioned shall not affect the accrued rights of PPL pursuant to the provisions of Clauses 3 to 12 inclusive.


EXHIBIT K PG 13

14. **Applicable Law**
14.1 This Licence shall be construed and interpreted in accordance with the laws of England and Wales, the courts of which shall be the sole and exclusive courts of competent jurisdiction in all matters concerning the same.

15. **Costs**
15.1 In the event that either party is in default of any of its obligations under this Licence and the other party incurs legal costs and expenses in order to obtain compliance therewith such costs shall be recoverable by the other party from the defaulting party as a debt to the extent that such costs have been reasonably incurred and have been awarded to the party in question by a court of competent jurisdiction.

16. **Waiver**
16.1 No waiver by PPL or the Licensee of any breach of any provision of this Licence shall be deemed to be a waiver of any other breach of the same or of any other provision hereof, and no waiver shall be effective unless made in writing and then only to the extent specifically set forth nor shall any single or partial exercise of such right or of any other right power or privilege or remedy preclude any other or further exercise of such or any other right power privilege or remedy available to the party in question under this Licence all of which are several and cumulative and are not exclusive of each other or of any other rights or remedies otherwise available to the party in question at law or in equity.

17. **Variation**
17.1 No variation or amendment of this Licence shall bind either party unless agreed to in writing by their respective duly authorised representatives.

18. **Negation of Partnership/Joint Venture**
18.1 The terms and conditions of this Licence shall not constitute any form of partnership or joint venture between the parties.

19. **Severance**
19.1 If any provisions (or part of a provision) of this Licence shall be determined by any court or other tribunal of competent jurisdiction to be illegal void or unenforceable all other provisions of this Licence (and also, where part of a provision is defective, the remainder of that provision) shall nevertheless continue in full force and effect.

20. **Clause Headings**
20.1 The clause headings in this Licence are for information only and do not form part of this Licence.

21. **Contracts (Rights of Third Parties) Act 1999**
21.1 A person who is not a party to this Licence has no rights under the Contracts (Rights of Third Parties) Act 1999 ("the 1999 Act") to enforce any term of this Licence but this does not affect the right or remedy of a third party that exists or is available apart from the 1999 Act.

EXHIBIT K PG 14

### 22. Entire Agreement

22.1 This Licence constitutes the entire agreement between the parties hereto in respect of its subject matter superseding any previous agreement in respect of the same subject matter.

### 23. Negation of Extension of Rights

23.1 Nothing in this Licence shall be construed as permitting the Licensee to do any act save as expressly provided herein in relation to rights in Sound Recordings from the Repertoire. Without prejudice to the generality of the foregoing nothing in this Licence shall be taken or construed as conferring any form of Licence or permission in respect of the copyright in any musical literary or other work embodied in any such Sound Recording.

### 24. Representations

24.1 Each of the parties acknowledges to the other that save as expressly made herein neither has made any representation to the other which has induced them to enter into this Licence and to the extent that any such representations have been made they have not been relied on.

24.2 Nothing in Clause 24.1 shall operate to limit or exclude any liability for fraud.

### 25. No Assignment or Sub Licensing

25.1 The Licensee shall not assign, transfer, charge or sub-license or purport to assign, transfer, charge or sub-license, the benefit of this Licence or any part hereof or any interest hereunder without the prior written consent of PPL to be given or withheld at its absolute discretion.

25.2 The Licensee shall notify PPL in writing (within 10 (ten) Working Days of the relevant event occurring) of the identity of any third party who acquires a total of 50% or more of the shareholding in the Licensee and of any change of name of the Licensee.

### 26. Notices

26.1 Any notices or demands to be given or made pursuant to this Licence shall be given or made in writing and sent by:
(a) pre-paid first class mail; or
(b) facsimile (confirmed by pre-paid first class mail sent within 24 hours of the despatch of such facsimile); or
(c) delivery addressed and sent to the recipient at the address stated above and addressed to the Company Secretary or to such other address as may have been duly notified.

26.2 Any notice or demand given or made by mail shall be deemed to have been received at the expiry of 48 hours from such despatch and any notice or demand given or made by facsimile shall be deemed to have been received at the time of despatch.

26.3 For the avoidance of doubt an e-mail shall not be capable of providing proper notice under the terms of this Licence.

EXHIBIT K PG 15

*[signature]*

Duly authorised for and on behalf of
**PHONOGRAPHIC PERFORMANCE LIMITED ("PPL")**

SIGNED BY

*[signature]*

Duly authorised for and on behalf of
**BLUEBEAT INC ("THE LICENSEE")**

- 16 -

EXHIBIT K PG 16