Attn. Dawn Henry
BlueBeat Inc.
55 River Street, Suite 200
Santa Cruz
CA 95060
USA


25 June 2008

**Re. PPL Customised Webcaster Licence**

Dear Dawn,

Please find enclosed one copy of the PPL Customised Webcaster licence agreement duly signed by PPL together with an Invoice for the monies that are now due.

We will contact you again at the end of this quarter and subsequent quarters to request the provision of usage reporting and any other reporting that may be due.

We wish you the best of luck with this service and look forward to working with you.

If you have any questions regarding this matter please do not hesitate to contact me.


Yours Sincerely,

Iestyn David
Radio Broadcasting Executive
Rights Negotiation PPL / VPL
T. 020 7534 1257
F. 020 7534 1367
iestyn.david@ppluk.com

EXHIBIT ____ PG ___



PHONOGRAPHIC PERFORMANCE LIMITED
LICENSING RECORDED MUSIC ON BEHALF OF RECORD COMPANIES AND PERFORMERS

1 Upper James Street, London W1F 9DE  /  T. 020 7534 1000  /  F. 020 7534 1111  /  www.ppluk.com
Registered Office: 1 Upper James Street, London W1F 9DE. Reg in England No 288046

## CUSTOMISED WEBCASTING LICENCE

| | |
|---|---|
| **LICENSEE:** | **BLUEBEAT INC.** |
| **PPL CONTRACT NUMBER:** | CWL 0001 |

**THIS LICENCE** is made from the 16th day of June 2008

**BETWEEN**        **PHONOGRAPHIC PERFORMANCE LIMITED ("PPL")**
of        1 Upper James Street
London
W1F 9DE

**AND**        **BLUEBEAT INC. ("Licensee")**
of        55 River Street
Suite 200
Santa Cruz
CA 95060
USA

**IN RESPECT OF**        **BlueBeat** www.bluebeat.com  (the "**Service**")

**INTRODUCTION:**

(A)    PPL provides services to rights owners and users for the collective licensing of rights in sound recordings, and distributes licence fee revenue to record companies and to performers.

(B)    The Licensee operates the Service as a customised Webcasting service in the UK and desires to obtain the right to use the repertoire of PPL in this service. PPL is willing to grant the Licensee a licence for the use of sound recordings in the Service, subject to the terms below.

(C)    With such services in their infancy, PPL considers that more information about the operation and development of such services would facilitate its assessment of the appropriate future licensing arrangements. Nevertheless, PPL does not consider that such operation and development should occur in an unlicensed environment.

(D)    PPL and the Licensee acknowledge that this Licence is experimental and non-precedential and that the terms of this Licence do not necessarily reflect the concluded view of either party as to what the appropriate terms for the Licensee's Webcasting service or for other Webcasting and similar services should be.

(E)    This Licence is only for Webcasting services that allow the recipient of the transmission to customise the content of the transmission.

EXHIBIT ___L__ PG 2

1

**IT IS HEREBY AGREED** as follows:

1.    **Definitions and Interpretation**
1.1    The following definitions apply in this Licence:

"*the 1988 Act*" means the Copyright, Designs and Patents Act 1988.

"*Commencement Date*" means 01 ~~May 2008~~ July *( msm)*

"*Customised Communication*" means a communication where Sound Recordings are included within a stream of content transmission(s) that enables only the real-time (or substantially real-time) presentation of the streamed content, and:

(a)    the content of such communication is influenced by a user of the service having provided to the person making the communication (or a third party) information such as:

(1)    the musical genres they purchase, consume or otherwise prefer;
(2)    the artist or artists they purchase, consume or otherwise prefer;
(3)    ratings for particular artists;
(4)    ratings for particular sound recordings; or
(5)    the song or songs they purchase, consume or otherwise prefer,

but without enabling any recipient to access a specific sound recording at a time individually chosen by them;

and/or

(b)    the user may skip through the transmission up to ten (10) times per hour by advancing to the start of the next Sound Recording or pause the transmission but is not permitted to skip back, repeat, rewind or fast forward or otherwise affect the timing and/or performance of the communication.

"*Customised Communication Members*" means those Members who have appointed PPL as their non-exclusive agent to license the Webcasting in the Territory of their Sound Recordings in Customised Communications (for the avoidance of doubt, at the Commencement Date, this includes EMI Records Limited, Sony BMG Music Entertainment (International) Limited, Universal Music (UK) Limited and Warner Music UK Limited).

"*Excluded Recording*" means a sound recording notified by PPL to the Licensee in accordance with Clause 4.1.

"*Gross Service Revenue*" shall mean the sum calculated by the total valuable consideration (before any deduction of agency commissions or any other deductions) whether in money or money's worth of income derived and received by the Licensee (or any person, firm, company or entity which is a holding company of the licensee, a subsidiary company of such holding company, a subsidiary of the licensee or an agent, member or associate of the Licensee) from or otherwise in respect of the provision of that part of the Service on which the Repertoire can be Webcast pursuant to this Licence including without limitation and by way of example only advertising, sponsorship, subscriptions, product placement (including without limitation and by way of example targeted delivery of specific sound recordings to users of the Service), the sale of goods and services (including

2

EXHIBIT ___ L__ PG. 3

without limitation and by way of example only CDs, DVDs, digital downloads).    For the avoidance of doubt, VAT (or any like tax) is excluded.

"*Identifiable Programme*" means any programme in which sound recordings are played in a predetermined order and which is capable of identification as a distinct programme or any predetermined selection of sound recordings which are played in random order.

"*Internet*" means any physical network of interconnecting computers over which multi media content, including, without limitation, text, graphics, software, audio and video identifiable by reference to a unique URI/URL (Universal Resource Indicator/Universal Resource Locator), is made available to and accessed by users of web browsers (for example, the browsers known as "Microsoft Internet Explorer" and "Firefox") through the use of a common set of software protocols such as TCP/IP protocols.

"*ISRC*" means the International Standard Recording Code (ISO 3901).

"*Licence Period*" means the period of 8 months commencing on the Commencement Date, subject to the termination of this Licence pursuant to Clause 11.

"*the Members*" means the persons, firms, companies or entities who are from time to time members of PPL.

"*Mobile Communication*" means any communication via wireless telecommunications technology utilising radio frequency spectrum in any band or protocols, which technology is wholly or primarily intended for the transmission of audio content and/or still or moving visual and/or audio-visual content (whether in analogue or digital form) to or from a mobile, wireless telecommunications device (excluding the 3G ethernet data cards, wi-fi and Bluetooth devices commonly used with laptop computers for accessing broadband internet).

"*On-Demand Service*" means a service or part of a service that enables a member of the public to receive on request, a transmission of a particular sound recording, which is selected by or on behalf of the recipient.

"*Performance*" means each instance in which any portion of a Sound Recording in the Service is delivered to a single Player, excluding (a) a performance of a non-copyrighted sound recording; and (b) a sound recording subject to a direct licence from the owner of the sound recording(s) in question.

"*Player*" means a player or other apparatus or device capable of playing a transmission of a sound recording in the Service.

"*Quarter*" means the period of three consecutive months starting on 1 January, 1 April, 1 July and 1 October as the case may be (subject to Clause 7.2).

"*Record*" means any disc, tape, gramophone record, computer disk or other device or mechanism used for the storage of sound recordings.

"*the Repertoire*" means all those sound recordings the ownership, control or right to grant licences of the relevant copyright in which are vested in PPL from time to time by the Customised Communication Members subject always to the provisions of Clause 4 and excluding any soundtrack associated with a cinematograph film (or

EXHIBIT __L__ PG 4

music video) to the extent that such soundtrack is only designed to be played in synchronisation with that film (or music video).

*"the Service"* means the provision of audio channels by the Licensee via the Internet to the Players in the Territory, further particulars being set out in Schedule A to this Licence.

*"Sound Recording"* means a sound recording in the Repertoire.

*"Streaming"* means the continuous delivery via the Internet of an audio or audio visual transmission(s) that enables the contemporaneous performance of the transmitted sound recording(s) by a Player.

*"Territory"* means the United Kingdom of Great Britain and Northern Ireland, the Channel Islands, the Isle of Man and all additional territories to which the 1988 Act shall extend.

*"VAT"* means value added tax.

*"Webcasting"* means any Streaming, the primary purpose of which is not to sell, advertise or promote particular products or services other than sound recordings, live concerts or other music-related events (and the word *"Webcast"* shall be interpreted accordingly).

*"Webcasting Report"* means a full and proper report setting out for each Sound Recording streamed in the Service:
(1)     the total number of Performances of that Sound Recording;
(2)     the ISRC number if included in the sub codes accompanying the sound recording (subject to the Licensee's reasonable endeavours);
(3)     the title of the said Sound Recording including, where available, the title of the version or mix;
(4)     the record label and catalogue number of the physical product including sound recordings;
(5)     (where identifiable) the identity of the performers whose performances are contained in the Sound Recording.

*"Working Day"* means any day of the week (Monday to Friday inclusive) which is not a public holiday in England and Wales.

1.2.    For the purpose of interpretation of this Licence:-
(a)     Reference to any statute or statutory provision includes a reference to that statute or statutory provision as from time to time amended extended or re-enacted.

(b)     Words importing the singular number include the plural (and vice versa), words importing any gender include every gender and words importing persons include bodies corporate and unincorporated.

(c)     References to clauses are references to clauses of this Licence unless stated otherwise.

(d)     Where expressions used in this Licence are expressions used in the 1988 Act, they shall have the same meaning in this Licence as in the 1988 Act unless the context otherwise requires.

4

EXHIBIT ____L___ PG 5

    (e)    Any phrase introduced by the terms "including", "include", "in particular", "such as" or any similar expression shall be construed as illustrative and shall not limit the sense of the words preceding those terms.

1.3    This Licence is executed on the strict understanding and agreement that it is entirely without prejudice to the contentions of either PPL or the Licensee as to the appropriate terms, or the basis for such terms, for the inclusion of Sound Recordings in the Service or any other services.

1.4    This Licence does not form the basis of a future understanding between PPL and the Licensee and is intended merely to facilitate the lawful operation of the Service for the Licence Period so that the parties can in good faith assess in more detail the nature and effect of the Service and the appropriate terms for the licensing of the Service.

**2.    Grant: Webcasting**
2.1    Subject to the terms and conditions of this Licence, PPL hereby grants to the Licensee a non-exclusive licence during the Licence Period, within the Territory, as part of and for the sole purpose of providing the Service, to Webcast Sound Recordings in the form of a Customised Communication.

2.2    For the avoidance of doubt:
    (1)    no rights in respect of any On-Demand Service are granted under this Licence;

    (2)    no rights in respect of the copying of Sound Recordings (and the retention of those copies), whether by the Licensee or third parties, are granted under this Licence;

    (3)    no rights in respect of the public performance of Sound Recordings (whether in the Territory or elsewhere) are granted under this Licence;

    (4)    transmissions (a) within closed proprietary systems, (b) within closed private networks and/or (c) via mobile telephony networks (including any Mobile Communication) are excluded from the scope of this Licence; and

    (5)    the Service shall only be offered to the recipients and/or customers of the Service for private and domestic use and not for resale or other commercial use and the Licensee shall make this explicit to all recipients of the Service and customers of the Licensee.

**3.    Restrictions and Warranties**
3.1    The Licensee hereby undertakes (and, in the case of Clause 3.1(20), warrants) that:

    (1)    it shall not publish or cause to be published, by means of an advance program schedule or prior announcement, the titles of the specific tracks or the names of albums incorporating such tracks to be transmitted, or, other than for illustrative purposes, the names of the featured recording artists (save that this clause does not disqualify a prior announcement that a particular artist will be featured within an unspecified future time period);

    (2)    it shall not Webcast (or authorise the Webcast) in any 3-hour period:
        (i)    more than 3 different songs from a particular album, including no more than 2 consecutively, or



(ii)    more than 4 different songs by a particular artist or from any compilation of Sound Recordings, including no more than 3 consecutively;

(iii)    the same Sound Recording repeated during any 1-hour period

provided that the transmission on the Service of selections in excess of the numerical limits identified in this Clause 3.1(2) from multiple sound recordings shall nonetheless not constitute a breach of this Clause 3.1(2) if the programming of the multiple sound recordings was not wilfully intended to avoid these numerical limits;

(3)    no part of the Service shall contain an Identifiable Programme;

(4)    it shall not knowingly transmit a Sound Recording as part of a service that offers transmissions of visual images, in a manner that is likely to cause confusion, to cause mistake, or to deceive as to any affiliation or association of the copyright holder or featured artist with the Licensee or a particular product or service advertised by the Licensee, or as to the sponsorship, or approval by the copyright holder or featured recording artist of the activities of the Licensee other than the performance of the Sound Recording itself (for the avoidance of doubt and subject to the terms of this Licence, the Licensee shall not be precluded from showing advertisements that comply with this sub-clause);

(5)    it shall use reasonably effective technologies, insofar as such technologies are commercially available (or are created by the Licensee or a member of its group of companies) and can be implemented without imposing unreasonable costs, which aim to prevent:

(i)    a transmission recipient from automatically scanning the Licensee's transmissions alone or together with transmissions by other transmitting entities in order to select a particular sound recording to be transmitted to the transmission recipient; and

(ii)    a transmission recipient from making copies, other than transient copies, of the sound recordings;

(6)    it shall accommodate and not interfere with technical measures that are used by sound recording copyright holders to identify or protect copyrighted works, and that are technically feasible of being transmitted by the Licensee without imposing substantial costs on him or resulting in perceptible aural or visual degradation of the digital signal;

(7)    subject to Clause 3.1(5),

(i)    it shall identify in textual data the sound recording during, but not before, the time it is performed, including the title of the sound recording, the title of the album embodying such sound recording, if any, and the featured recording artist, in a manner to permit it to be displayed to the transmission recipient by the device or technology intended for receiving the Service; and

(ii)    the transmission of the sound recording shall be accompanied, if technically feasible, by the information encoded in that sound recording, if any, by or under the authority of the copyright holder of that sound recording, that identifies the title of the sound recording, and the featured recording artist who performs on the sound recording;

(8)    it shall not:

6

EXHIBIT ___C___ PG. __7__

(i)     knowingly transmit unauthorised recordings (including bootlegs); or

(ii)     without the permission of the rights owner(s), transmit via the Service sound recordings that the Licensee knows (or has reason to believe) have not yet been made available for Webcasting purposes or inclusion in a Customised Communication in the Territory;

(9)     it shall not re-mix, edit or otherwise change sound recordings so that what is transmitted would be different from the original sound recording, provided that to segue Sound Recordings shall not in itself constitute a breach of this Clause 3.1(9);

(10)     it shall not automatically and intentionally cause any device receiving the transmission to switch from one programme channel to another, provided that this shall not apply to any "shuffle" feature which allows a user to randomly select channels of music on the Service or to any feature which allows a user to receive a station that randomly shifts between all of that user's individual customised stations;

(11)     it shall not permit or enable any recipient of the Service to:

(i)     skip back, repeat, rewind or fast forward or otherwise affect the timing and/or performance of the transmission; or

(ii)     receive on request, a transmission of a particular sound recording, which is selected by or on behalf of the recipient;

(12)     the Service shall not be designed to assist in the making of any copies of any Sound Recording that would be usable after the cessation of the Webcast of that Sound Recording;

(13)     it shall not itself, or authorise or permit any other person to, copy any Sound Recording included in the Service (except where properly licensed to do so by the relevant rightholder or permitted by law);

(14)     it shall not authorise or permit any other person to include any Sound Recording in the Service;

(15)     it shall not commit any act which deliberately encourages or induces taping or recording or re-recording of the Service (or any part of the Service) and which is not lawful or properly authorised;

(16)     it shall not use any Sound Recording in such a way as may be taken to imply that any goods, products or services other than the Sound Recording are endorsed advertised or associated with the Sound Recording or any artist whose performance is contained on the Sound Recording or any other party who owns rights in connection with the Sound Recording;

(17)     it shall not use any Sound Recording:

(i)     as an introduction to or during advertising; or

(ii)     as a signature tune for promotional spots for events; or

(iii)     as a trade mark or brand

(for the avoidance of doubt this does not prevent the use of visual advertisements on a media player whilst the Webcast is taking place on that player);

(18)     it shall exercise proper discretion in the choice and use of the Sound Recordings so as not to denigrate the artistic integrity of any copyright

7

EXHIBIT ___ PG 8

works or any performance embodied on any Sound Recording nor to subject any copyright works or performance embodied on any Sound Recording to derogatory treatment and it shall not accompany the Sound Recording with any image that would have any of these effects (or which is illegal or offensive);

(19)     it shall not include in the Service or use any Sound Recording otherwise than in accordance with the conditions of this Licence, as permitted by law or expressly licensed by the owner of the relevant rights in that Sound Recording;

(20)     subject to Clause 7.1, the details of the Service set out in Schedule A are true and accurate and in all material respects are complete;

(21)     in providing the Service no representations shall be made that any rights in Sound Recordings are transferred in any way to any third party, other than the right to perform the Sound Recordings on a Player as described in this Licence in a manner that does not constitute a public performance of those Sound Recordings; and

(22)     it shall inform PPL as soon as reasonably practicable of any breach of PPL's rights or the rights of the Members in the Repertoire or other illegal activities concerning the rights of PPL or the Members in the Repertoire which comes to the notice of the Licensee.

3.2     The licence granted under Clause 2 shall only relate to the copyright in the Sound Recordings and does not include, refer to or cover any other consents or authorisation of whatsoever nature which may be required for the Service.

3.3     All rights in the Repertoire which are owned or controlled by PPL and not expressly licensed to the Licensee under Clause 2 are expressly reserved.

3.4     PPL hereby warrants and represents to the Licensee on behalf of itself that it has the right, power and authority to enter into and to grant this Licence on the terms set out in this Licence.

3.5     PPL hereby warrants that it shall perform the administration services provided under this Licence in a good and workmanlike and timely manner and to appropriate professional standards.

**4.     Notification of Excluded Material**
4.1     PPL may at any time during the Licence Period notify the Licensee in writing that one or more specified sound recordings from the Repertoire are excluded from the Licence either for the whole or part of the Licence Period which exclusion shall be effective from the date of receipt of such notification by the Licensee (or, as the case may be, from any future date that is specified in that notification) PROVIDED THAT that such notice is served on PPL's other licensees in respect of their Customised Webcasting Licences.

8



4.2     Following a notification from PPL pursuant to Clause 4.1 in respect of any Excluded Recording and as soon as reasonably practicable the Licensee shall not Webcast that Excluded Recording in the Service (unless such Webcast is expressly and properly licensed by the relevant rightholder). Following a notification from PPL pursuant to Clause 5.1 in respect of any Excluded Recording the Licensee shall be responsible for obtaining any licence(s) necessary from the owner of the copyright in the sound recording of the Excluded Recording(s).

4.3     The Licensee's obligation(s) under Clause 4.2 shall be at the Licensee's cost.

**5.      Advance**

5.1     The Licensee shall pay to PPL on the Commencement Date a non-returnable advance of £1000 (one thousand pounds) for the Service in respect of the licence fees payable under Clause 6.1.

5.2     The advance payable under Clause 5.1 shall be recouped against the licence fees payable to PPL under Clause 6.1.   No payment of licence fees shall be due pursuant to Clause 6.1 to the extent that any part of the advance paid under Clause 5.1 is unrecouped.

**6.      Consideration**

6.1     In consideration of the rights granted under Clause 2 the Licensee shall account and pay to PPL the aggregate of 0.0773 pence (£0.000773 sterling) per Performance in the Territory, this licence fee being subject to Clause 6.2.

6.2     The calculation in Clause 6.1 shall exclude 4% of Performances as a notional figure to take account of partial Performances of nominal duration made by a Licensee due to, for example but without limitation, technical interruptions, network failure, the closing down of a media player or channel switching.  For the avoidance of doubt, this adjustment shall apply regardless of the Licensee's actual experience of such partial Performances.

**7.      Information, Webcasting Reports and Payment**

7.1     The Licensee shall provide advance written notice to PPL of any material changes to the information set out in Schedule A to this Licence.  PPL shall review such changes promptly and negotiate in good faith with the Licensee any material variation to this Licence which is necessary to accommodate the notified changes. It is expressly agreed and declared that this obligation shall not be construed as implying any consent on the part of PPL to any change so notified.

7.2     In the event that the Commencement Date falls partway through a Quarter, then, for the purposes of Clause 7.3 below:
   (1)     the first Quarter during the Licence Period shall be construed as being the period from the Commencement Date to the end of the Quarter during which the Commencement Date falls; and
   (2)     the last Quarter during the Licence Period shall be construed as being the period from the start of the Quarter in which the Licence Period ends until the end of the Licence Period.

7.3     The Licensee shall:
   (1)     within 20 (twenty) Working Days after the expiry of each Quarter during the Licence Period, supply to PPL a Webcasting Report in respect of that Quarter; and

9



(2)    within 40 (forty) Working Days after the expiry of each Quarter during the Licence Period, pay to PPL the licence fees due in respect of that Quarter under Clause 6.1 (subject to recoupment pursuant to Clause 5.2).

Each such Webcasting Report must comply with PPL's reasonable requirements as notified to the Licensee from time to time.

7.4    The Licensee shall not set-off any claims for repayments (whether under this Licence or any other licence granted by PPL) or any other claims against PPL against any advances or royalties due to PPL under Clause 5 and/or Clause 6 (whether by way of legal set-off, equitable set-off or otherwise).

7.5    The Licensee shall provide PPL with such further information as PPL may reasonably require from time to time to clarify the information previously submitted in Webcasting Reports supplied pursuant to Clause 7.3.

7.6    Within 20 (twenty) Working Days after:
(1)    the end of the Licence Period; or,
(2)    if earlier, the termination of the Licence,
the Licensee shall provide PPL with full written details of the Gross Service Revenue received or receivable by the Licensee (or its agents or affiliates) for the Service in respect of that period, it being acknowledged by both parties that the Licensee is providing such details to PPL for information purposes only and that the use of the definition of Gross Service Revenue in this Licence should not imply that the definition is acceptable to either party or have any precedential basis whatsoever if revenues were to form a basis for payment for a licence similar to the Licence following the expiry of the Licence Period.

**8.    VAT**

8.1    All payments referred to in this Licence are exclusive of VAT and the Licensee shall pay together with those payments such VAT (or any like tax) that is applicable at the prevailing rate or rates from time to time.

8.2    Where payments are made in accordance with Clause 8.1, PPL shall provide to the Licensee a duly receipted VAT invoice in respect of such payments.

**9.    Interest**

9.1    If any payment to PPL under this Licence is not received on the due date interest at the annual rate of 4% above the Bank of England Base Rate in force from time to time shall be payable by the Licensee on the sum due calculated from the due date until the date of actual payment whether before or after judgment.

**10.    Audit**

10.1    The Licensee shall keep separate and accurate books of account and records concerning the use of Sound Recordings under this Licence, including the number of Performances and the information used to generate Webcasting Reports (the **"Licensee's Records"**).

10.2    Subject to Clause 10.5 and 10.6, within 20 (twenty) Working Days of a request from PPL to do so, the Licensee shall permit PPL and/or its authorised representatives (who shall be a Chartered or Certified Accountant) to enter the premises of the Licensee and to inspect, take copies and conduct an examination of all the Licensee's Records however stored as required.  PPL shall only be entitled to exercise its rights under this Clause 10.2 once in any respect of any particular period.

EXHIBT L PG 11

10.3    If such inspection shows a deficiency in the monies due for the period under inspection under Clause 6.1 the Licensee shall forthwith make good this deficiency by paying the equivalent sum to PPL together with interest on that sum in accordance with Clause 9.1. If such inspection shows an over-payment the amount of such over-payment shall at PPL's reasonable discretion either be re-paid to the Licensee or credited to the Licensee against payments subsequently falling due to PPL under Clause 6.1.

10.4    If such inspection shows a deficiency in the monies due under Clause 6.1 in excess of 5% of the amounts paid for the period under inspection the Licensee shall at the same time as making payment of such deficit in accordance with Clause 10.3 pay to PPL all reasonable costs and expenses incurred by PPL in connection with such inspection or audit together with interest on that sum from such date in accordance with Clause 9.1.

10.5    The rights of inspection, examination and taking copies specified in Clauses 10.1 and 10.2 and the obligations specified in Clauses 10.3 to 10.4 shall continue beyond the cessation of the Service and/or the expiry or termination of this Licence for a period of 2 years.

10.6    The Licensee for a period of 2 years after the date of the cessation of the Service or the expiry or termination of this Licence shall retain the Licensee's Records to enable PPL, its authorised representatives and/or its auditors to determine an adequate audit trail by which to verify the payments due to PPL under this Licence.

10.7    All information disclosed to those conducting the audit pursuant to the provisions of Clauses 10.1 to 10.6 will be kept confidential by PPL and shall not be used or disclosed for any purposes other than verifying the information supplied to PPL, obtaining legal and/or accountancy advice thereon or for any subsequent legal proceedings which may arise directly therefrom.

**11.    Termination**

11.1    PPL shall have the right at any time during the continuance of this Licence to terminate this Licence forthwith by written notice to the Licensee in any of the following events:

    (a)    If the Licensee commits or permits to be committed any material breach or breaches of any of the terms (whether or not conditions) of this Licence and such breach is incapable of remedy;

    (b)    If the Licensee commits or permits to be committed any material breach or breaches of any of the terms (whether or not conditions) of this Licence (including non-payment) and such breach is capable of remedy and the Licensee has not remedied such breach within 20 (twenty) Working Days of being notified in writing of the same;

    (c)    If the Licensee (being an individual) suffers a statutory demand to be served upon him and/or becomes bankrupt or enters into an arrangement or composition with or for the benefit of his creditors or suffers an execution to be levied against his goods or property or (being a company) shall be wound up whether compulsorily or voluntarily (save for the purpose of reconstruction or amalgamation) or suffers an execution to be levied against its goods or property or has a receiver or administrator appointed over its assets or any of them or if notice of any liquidation or other proceedings related to insolvency (including an application for administration order) is served upon it.

11.2    Upon early termination of this Licence the last month for the purpose of calculating appropriate royalties payable under Clause 6.1 shall be the period from the date of

11



**20.    Entire Agreement**

20.1    This Licence constitutes the entire agreement between the parties hereto in respect of its subject matter superseding any previous agreement in respect of the same subject matter.

**21.    Negation of Extension of Rights**

21.1    Nothing in this Licence shall be construed as permitting the Licensee to do any act save as expressly provided herein in relation to rights in Sound Recordings from the Repertoire. Without prejudice to the generality of the foregoing nothing in this Licence shall be taken or construed as conferring any form of Licence or permission in respect of the copyright in any musical literary or other work embodied in any such Sound Recording.

**22.    Representations**

22.1    Each of the parties acknowledges to the other that save as expressly made herein neither has made any representation to the other which has induced them to enter into this Licence and to the extent that any such representations have been made they have not been relied on.

22.2    Nothing in Clause 20.1 or Clause 22.1 shall operate to limit or exclude any liability for fraud or fraudulent misrepresentation.

**23.    No Assignment or Sub Licensing**

23.1    The Licensee shall not assign, transfer, charge or sub-license or purport to assign, transfer, charge or sub-license, the benefit of this Licence or any part hereof or any interest hereunder without the prior written consent of PPL to be given or withheld at its absolute discretion (save that the Licensee, if incorporated outside the United Kingdom, may assign the benefit and obligations under this Licence to a related company incorporated in the EEA with the prior written consent of PPL, such consent not to be unreasonably withheld or delayed).

23.2    The Licensee shall notify PPL in writing (within 10 (ten) Working Days of the relevant event occurring) of the identity of any third party who acquires a total of 50% or more of the shareholding in the Licensee and of any change of name of the Licensee.

**24.    Notices**

24.1    Any notices or demands to be given or made pursuant to this Licence shall be given or made in writing and sent by:
(a)    pre-paid first class mail; or
(b)    facsimile (confirmed by pre-paid first class mail sent within 24 hours of the despatch of such facsimile); or
(c)    delivery addressed and sent to the recipient at the address stated above and addressed to the Company Secretary or to such other address as may have been duly notified.

24.2    Any notice or demand given or made by mail shall be deemed to have been received at the expiry of 48 hours from such despatch and any notice or demand given or made by facsimile shall be deemed to have been transmitted provided that the sender shall have received and can produce a transmission report indicating that all pages of the notice have been transmitted to the correct facsimile number.



## SCHEDULE A

**Name of Service**

BlueBeat Inc.

**Description of Service**

Creation of musical programs by users. Creator can add artists, albums and songs to their DJ "Crate", as well as complete BlueBeat programs.

**Technical Delivery of Service**

Once a Crate is diverse enough for 3 hours of DMCA-compliant playback, Crate can be shared & listened to. Once shared, a Crate is available to all BlueBeat users for streaming playback; randomized, DMCA-compliant and protected from stream-ripping by MRT's SecureX technology.

EXHIBIT L PG 16

**Dawn Henry**

| | |
|---|---|
| **From:** | David, Iestyn [iestyn.david@ppluk.com] |
| **Sent:** | Monday, April 14, 2008 8:14 AM |
| **To:** | Dawn Henry |
| **Subject:** | RE: BlueBeat.com's Be The DJ outside of the United States |

**Attachments:**     BlueBeat (Be The DJ) Licence 14.04.08.doc.pdf



BlueBeat (Be The
DJ) Licence 1...

Hi Dawn,

Hope you're well.

Further to our previous correspondence, please find attached the PPL Customised Webcaster
Licence which would cover BlueBeat's 'Be The DJ' service.
Could you please arrange for two copies of the licence to be signed and returned? If you
would prefer two hard copies of the licence to be sent through for signing please let me
know.

If you have any questions regarding this matter please do not hesitate to contact me.

Kind regards,
iestyn

IESTYN DAVID
Radio Broadcasting Executive

PPL
1 Upper James Street, London W1F 9DE
T +44 (0)20 7534 1257 / F +44 (0)20 7534 1111 iestyn.david@ppluk.com www.ppluk.com /
www.vpluk.com

P Please consider the environment before printing this email

The contents of this email (including any attachments) are confidential, may be legally
privileged, and are for use only by the intended recipient(s). If you are not an intended
recipient, you must not use or disclose the contents to anyone; instead, please notify
the sender immediately by reply email or by calling +44 (0)20 7534 1000 and then delete
this email. Unless indicated otherwise, this email does not represent the views of, and
is not legally binding on, PPL or VPL (neither of which accept any liability for it), to
the extent permitted by law. Phonographic Performance Limited ("PPL") and Video
Performance Limited ("VPL") are registered in England and Wales at 1 Upper James Street,
London W1F 9DE with company nos. 00288046 and 01818862 respectively. Please review the
contents of this email to confirm which of PPL and VPL it is from.


-----Original Message-----
From: Dawn Henry [mailto:dawn@bluebeat.com]
Sent: 02 April 2008 18:22
To: David, Iestyn
Subject: RE: BlueBeat.com's Be The DJ outside of the United States

How about may 1st? that gives some room to get the paperwork in order.

Dawn Henry
Media Director
www.BlueBeat.com
dawn@bluebeat.com

1

-----Original Message-----
From: David, Iestyn [mailto:iestyn.david@ppluk.com]
Sent: Wednesday, April 02, 2008 9:08 AM
To: Dawn Henry
Subject: RE: BlueBeat.com's Be The DJ outside of the United States

Hi Dawn,

Thank you for confirming acceptance of the terms.
Could you please confirm what date BlueBeat proposes to make the 'Be the DJ'
service available within the UK? I will then arrange for the licence to be issued to you
for signing.

Best wishes,
iestyn

IESTYN DAVID
Radio Broadcasting Executive

PPL
1 Upper James Street, London W1F 9DE
T +44 (0)20 7534 1257 / F +44 (0)20 7534 1111 iestyn.david@ppluk.com www.ppluk.com /
www.vpluk.com

P Please consider the environment before printing this email

The contents of this email (including any attachments) are confidential, may be legally
privileged, and are for use only by the intended recipient(s). If you are not an intended
recipient, you must not use or disclose the contents to anyone; instead, please notify
the sender immediately by reply email or by calling +44 (0)20 7534 1000 and then delete
this email. Unless indicated otherwise, this email does not represent the views of, and
is not legally binding on, PPL or VPL (neither of which accept any liability for it), to
the extent permitted by law. Phonographic Performance Limited ("PPL") and Video
Performance Limited ("VPL") are registered in England and Wales at 1 Upper James Street,
London W1F 9DE with company nos. 00288046 and 01818862 respectively. Please review the
contents of this email to confirm which of PPL and VPL it is from.


-----Original Message-----
From: Dawn Henry [mailto:dawn@bluebeat.com]
Sent: 01 April 2008 18:09
To: David, Iestyn
Subject: RE: BlueBeat.com's Be The DJ outside of the United States

Hi Iestyn,

I've confirmed with management that this fee structure is acceptable. Thank you for
working with us on this matter--we're very excited!

Dawn Henry
Media Director
www.BlueBeat.com
dawn@bluebeat.com


-----Original Message-----
From: David, Iestyn [mailto:iestyn.david@ppluk.com]
Sent: Friday, March 28, 2008 9:31 AM
To: Dawn Henry
Subject: RE: BlueBeat.com's Be The DJ outside of the United States

Hi Dawn,

Hope you're well.
We will consider licensing the service, on an experimental non-precedential basis, with
an advance of £1000 (+VAT) payable for the period until the end of 2008.

Could you please advise when you plan to make this element of the BlueBeat service available within the UK? Is it just a matter of finalising the details of this PPL Customised Webcaster licence and then switching on the access?

Unfortunately, although we do expect that this PPL licence will cover streaming into multiple territories in the near future, it would not be possible to immediately make this a multi-territory licence.

I look forward to hearing from you soon regarding this matter.

Best wishes,
iestyn

IESTYN DAVID
Radio Broadcasting Executive

PPL
1 Upper James Street, London W1F 9DE
T +44 (0)20 7534 1257 / F +44 (0)20 7534 1111 iestyn.david@ppluk.com www.ppluk.com / www.vpluk.com

P Please consider the environment before printing this email

The contents of this email (including any attachments) are confidential, may be legally privileged, and are for use only by the intended recipient(s). If you are not an intended recipient, you must not use or disclose the contents to anyone; instead, please notify the sender immediately by reply email or by calling +44 (0)20 7534 1000 and then delete this email. Unless indicated otherwise, this email does not represent the views of, and is not legally binding on, PPL or VPL (neither of which accept any liability for it), to the extent permitted by law. Phonographic Performance Limited ("PPL") and Video Performance Limited ("VPL") are registered in England and Wales at 1 Upper James Street, London W1F 9DE with company nos. 00288046 and 01818862 respectively. Please review the contents of this email to confirm which of PPL and VPL it is from.


-----Original Message-----
From: Dawn Henry [mailto:dawn@bluebeat.com]
Sent: 19 March 2008 19:41
To: David, Iestyn
Subject: RE: BlueBeat.com's Be The DJ outside of the United States

Hi Iestyn,


We are very excited at the prospect of licensing Be The DJ outside of the US!


Last year we had only about 1000 users (in 46000 unique sessions and 37,566 songs) from the UK. That is around £30 worth of track delivery licensing fees.

We served about 4900 total non-us users (281381 unique sessions and 253723 songs) Even with all territories licensed, all non-US territories combined would not reach £200.  As you can imagine, the £2000 per-year minimum is a bit steep for us, then...


The numbers above, however, will (hopefully) grow quickly, as Be The DJ is by far our most popular product, accounting for most of our US song delivery. In the meantime, perhaps we can discuss a possible lower rate, perhaps for an initial time period, so that we can better estimate the flow of delivery once Be The DJ is offered to those outside the US?  Or license to all territories from the get-go?

EXHIBIT L P9 19

Dawn Henry

Media Director

www.BlueBeat.com

dawn@bluebeat.com

---

From: Iestyn David [mailto:iestyn.david@ppluk.com]
Sent: Monday, March 17, 2008 11:32 AM
To: Dawn Henry
Subject: RE: BlueBeat.com's Be The DJ outside of the United States

Hi Dawn,


This licence would be specifically for the Be The DJ section of the BlueBeat service and would be required in addition to the Standard Webcaster Licence.

Could you please provide an estimate as to how many UK users you expect for the Be The DJ service?


Best wishes,

iestyn


IESTYN DAVID
Radio Broadcasting Executive


PPL
1 Upper James Street, London W1F 9DE
T +44 (0)20 7534 1257 / F +44 (0)20 7534 1111 iestyn.david@ppluk.com
<mailto:kiestyn.david@ppluk.com> www.ppluk.com <http://www.ppluk.com/>  / www.vpluk.com
<http://www.vpluk.com/>


P Please consider the environment before printing this email


The contents of this email (including any attachments) are confidential, may be legally privileged, and are for use only by the intended recipient(s). If you are not an intended recipient, you must not use or disclose the contents to anyone; instead, please notify the sender immediately by reply email or by calling +44 (0)20 7534 1000 and then delete this email. Unless indicated otherwise, this email does not represent the views of, and is not legally binding on, PPL or VPL (neither of which accept any liability for it), to the extent permitted by law. Phonographic Performance Limited ("PPL") and Video Performance Limited ("VPL") are registered in England and Wales at 1 Upper James Street, London W1F 9DE with company nos. 00288046 and 01818862 respectively. Please review the

4

contents of this email to confirm which of PPL and VPL it is from.

```
-----Original Message-----
From: Dawn Henry [mailto:dawn@basebeat.com]
Sent: 17 March 2008 18:23
To: 'Iestyn David'
Subject: RE: BlueBeat.com's Be The DJ outside of the United States
```

Hi Iestyn,


Wonderful! I'm passing this on to the team for approval.  One major question, though, would this be a new license for all of BlueBeat, or is this license and yearly minimum in addition to the current license & fee?


Dawn Henry

Media Director

www.baseBEAT.com

dawn@basebeat.com


---

```
      From: Iestyn David [mailto:iestyn.david@ppluk.com]
Sent: Monday, March 17, 2008 5:40 AM
To: Dawn Henry
Subject: RE: BlueBeat.com's Be The DJ outside of the United States
```


WITHOUT PREJUDICE & SUBJECT TO CONTRACT


Hi Dawn,


Apologies for the delay getting back to you on this.

It sounds as though the 'Be The DJ' section of the BlueBeat service could potentially be licensed by PPL under our Customised Webcaster Licence. The level of user-interaction would make it ineligible for the PPL non-interactive Internet Radio licence that currently covers the BlueBeat Internet Radio channels, though it would potentially be eligible for the PPL Customised Webcaster Licence which allows a limited amount of interactive use. I have attached a DRAFT copy of this licence which should clarify a number of queries you may have regarding this PPL licensing scheme.


The terms for the licence would be as follows:


Term: 12 months (experimental, non-precedential)
Territory: UK only (though there is potential for this to cover additional

territories in the near future)

Non-returnable advance of £2,000 to be applied against greater of rate-per-track-per-stream of £0.000773

If you have any questions regarding the licence please do not hesitate to contact me.

Could you please advise your acceptance of the terms and i will arrange for the licence to be sent through to you for signing?


Kind regards,

iestyn


IESTYN DAVID
Radio Broadcasting Executive


PPL
1 Upper James Street, London W1F 9DE
T +44 (0)20 7534 1257 / F +44 (0)20 7534 1111
iestyn.david@ppluk.com <mailto:kiestyn.david@ppluk.com>
www.ppluk.com <http://www.ppluk.com/> / www.vpluk.com <http://www.vpluk.com/>


P Please consider the environment before printing this email


The contents of this email (including any attachments) are confidential, may be legally privileged, and are for use only by the intended recipient(s). If you are not an intended recipient, you must not use or disclose the contents to anyone; instead, please notify the sender immediately by reply email or by calling +44 (0)20 7534 1000 and then delete this email. Unless indicated otherwise, this email does not represent the views of, and is not legally binding on, PPL or VPL (neither of which accept any liability for it), to the extent permitted by law. Phonographic Performance Limited ("PPL") and Video Performance Limited ("VPL") are registered in England and Wales at 1 Upper James Street, London W1F 9DE with company nos. 00288046 and 01818862 respectively. Please review the contents of this email to confirm which of PPL and VPL it is from.


-----Original Message-----
From: Dawn Henry [mailto:dawn@basebeat.com]
Sent: 18 February 2008 21:38
To: 'Iestyn David'
Subject: RE: BlueBeat.com's Be The DJ outside of the United States

Sure,


Firstly, let me make it clear that NO user uploads anything to our site. We have a carefully-maintained database full of correct meta-data and servers full of gorgeous sound recordings that are only served to BlueBeat with our patented SCMS anti-piracy technology enabled. Users listen to our wonderful catalog, and we add to the catalog all day, every day.

EXHIBIT L, PG 22

When a user visits BlueBeat.com, they have hundreds of programs they can select from 3 main channels: The Time Machine, Killer Playlists and Be The DJ.  The first two contain programs made by BlueBeat staff, while Be The DJ lets users (currently US-located users only) create their own programs for the site.

The user (acting as "DJ") will start a new Crate, name it, and create a brief description of the contents. Then, as the user peruses the site, whichever way they prefer (via search, bio links, info buttons, etc.), there will be + & - buttons. The add/subtract buttons are how a user gets a song/album or artist (or even an entire Time Machine or Killer Playlist program) added to their new Crate.

At creation time, the Crate is simply a list of songs chosen from the BlueBeat catalog - a pool of entries, if you will, from which the BlueBeat technology will create a uniquely "shuffled" DMCA-compliant playlist on-the-fly when a user selects the program for listening.

In order to follow these DMCA rules, each Crate will need to be "diverse" enough, meaning that there will need to be enough music from different artists/albums added to the Crate so that DMCA rules can be followed upon playback. Until that point, Crates are not publishable/shareable. Nor are they visible or accessible on the site. Once a DJ Crate is shared (upon the first listen once it is diverse enough), it is added to the Crate listings. A DJ can continue to edit the contents of their Crate, but it must maintain said diversity at all time, and BlueBeat does not allow item deletion from the Crate which would compromise the playback. Not only does this follow DMCA complement rules, it also creates a far more enjoyable and varied experience for the BlueBeat users who listen to the BlueBeat programs.

Nobody, not even the DJ, can listen to the Crate until it has been published/shared. Once shared, the Crate is available to all users the same as any other program on BlueBeat. All playback from all programs adheres strictly to Internet Radio standards and the DMCA complement rules.
We monitor and tally all performances played for the purposes of reporting to Licensing agencies (as you know).

Basically, Be The DJ allows a user to create a program which has just as much accessibility, no more & no less, than a BlueBeat staff-created program. The playback standards are absolutely the same. The only technical difference between "Be The DJ" and our BlueBeat Channels "The Time Machine" and "Killer Playlists" is the creator.

I hope this clarified the situation for you. I do understand that it's sometimes easier when seen with your own eyes. If you'd like, we can easily create an account for you, and can override your geographical location entry for evaluation purposes.

EXHIBIT L - 23

Dawn Henry

Media Director

www.baseBEAT.com

dawn@basebeat.com

---

From: Iestyn David
[mailto:iestyn.david@ppluk.com]
Sent: Monday, February 18, 2008 1:59 AM
To: Dawn Henry
Subject: RE: BlueBeat.com's Be The DJ outside of the United States

Hi Dawn,


Hope you're well.

Could you possibly provide me with some further details as to how someone compiles a DJ crate for the 'Be The DJ' feature of BlueBeat.com?

Is it user-generated content (ie. the user uploads their own music onto the site), or do they pick-and-choose from music that is already available on the BlueBeat website (that BlueBeat has copied themselves)?

When the user compiles the playlist do they have to choose over a certain number of sound recordings?

Does the playlist always commence streaming on the first track in the playlist, is it shuffled, or does it continue broadcasting on a programme loop that is then accessed at whichever point is currently playing by the listener?


If you could please send me more details regarding the service then i should be able to determine whether it is possible for PPL to license it.


Best wishes,

iestyn


IESTYN DAVID
Radio Broadcasting Executive


PPL
1 Upper James Street, London W1F 9DE
T +44 (0)20 7534 1257 / F +44 (0)20 7534 1111
iestyn.david@ppluk.com <mailto:kiestyn.david@ppluk.com>
www.ppluk.com <http://www.ppluk.com/> / www.vpluk.com
<http://www.vpluk.com/>

P Please consider the environment before printing this email

The contents of this email (including any attachments) are confidential, may be legally privileged, and are for use only by the intended recipient(s). If you are not an intended recipient, you must not use or disclose the contents to anyone; instead, please notify the sender immediately by reply email or by calling +44 (0)20 7534 1000 and then delete this email. Unless indicated otherwise, this email does not represent the views of, and is not legally binding on, PPL or VPL (neither of which accept any liability for it), to the extent permitted by law. Phonographic Performance Limited ("PPL") and Video Performance Limited ("VPL") are registered in England and Wales at 1 Upper James Street, London W1F 9DE with company nos. 00288046 and 01818862 respectively. Please review the contents of this email to confirm which of PPL and VPL it is from.

-----Original Message-----
From: Dawn Henry [mailto:dawn@bluebeat.com]
Sent: 14 February 2008 22:42
To: 'Iestyn David'
Subject: BlueBeat.com's Be The DJ outside of the United States

Good morning Iestyn,


Firstly, I'd like to thank you once again for your constant assistance with our BlueBeat music licensing. You've been very open and available and it has not gone unnoticed on our side. It is for this reason that I would like to direct our initial questioning to you, as I know you will guide us to the proper channels in the PPL.


In our licenses with PPL, it has been stipulated that while global transmission/playback of our Be The DJ feature is approved, the creation of a DJ Crate by users outside the United States remains prohibited. We'd like to revisit this stipulation for a few solid reasons:

All playback from BlueBeat.com is 100% protected from stream ripping and digital piracy by our SeCure X1 technology ("X1").
X1 has been proven 100% effective and has never had a single instance of user circumvention. RIAA and IFPI have vetted the technology and deemed it the only 100% effective SCMS in existence.

Playback on BlueBeat.com programs strictly follows the DMCA complement rules for non-interactive webcasting. These rules have always applied to all BlueBeat channels and programs (including DJ Crates), and have always applied to the entire class of BlueBeat users, regardless of geographical location.

Crates may not be listened to until published, or "shared", upon which time the Crate is constantly accessible to any and all BlueBeat users, and thusly cannot be deemed a "personalized" experience to any one user.

Any program transmission from BlueBeat.com is an ephemeral performance, even for the creator of said program.

BlueBeat users outside of the United States have been asking repeatedly for the ability to "Be The DJ" on our site, and we would simply love to extend our offering to them.

9

EXHIBIT L PG 25

In summary, BlueBeat.com follows all rules and guidelines set forth by Internet Radio agencies and music licensing/governing bodies. We pay all proper royalties and report all proper playback statistics. We have proven anti-piracy software in use at all times on BlueBeat.com, and there has never been a single circumvention.
We would love to move toward giving our International users access to the most popular feature of BlueBeat.com. Any assistance would be much appreciated.


Thank you Iestyn,



Dawn Henry

Media Director

www.BlueBeat.com

dawn@bluebeat.com

EXHIBIT __L__ PG. 26