UNITED STATES DISTRICT COURT                     **PRIORITY SEND**
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -- GENERAL**

Case No.   **CV 09-8030-JFW (JCx)**                     Date: November 18, 2009

Title:     Capitol Records, LLC, et al. -*v*- Bluebeat, Inc., et al.

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| **Shannon Reilly** | **None Present** |
| **Courtroom Deputy** | **Court Reporter** |

| | |
|---|---|
| **ATTORNEYS PRESENT FOR PLAINTIFFS:** | **ATTORNEYS PRESENT FOR DEFENDANTS:** |
| None | None |

**PROCEEDINGS (IN CHAMBERS):**    **ORDER GRANTING PRELIMINARY INJUNCTION AGAINST DEFENDANTS BLUEBEAT, INC., MEDIA RIGHTS TECHNOLOGIES, INC., BASEBEAT, INC., AND HANK RISAN**

On November 3, 2009, Plaintiffs Capitol Records, LLC, Caroline Records, Inc., EMI Christian Music Group Inc., Priority Records, LLC, Virgin Records America, Inc., and Narada Productions, Inc. ("Plaintiffs") filed an *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction. On November 4, 2009, Defendants BlueBeat, Inc., Media Rights Technologies, Inc., BaseBeat, Inc., and Hank Risan ("Defendants") filed their Opposition. On November 4, 2009, Plaintiffs filed their Reply. On November 5, 2009, the Court issued a Temporary Restraining Order ("TRO") and Order to Show Cause Re: Preliminary Injunction ("OSC"). On November 10, 2009, as directed by the Court's OSC, Defendants filed their Opposition to the OSC. On November 13, 2009, as directed by the Court's OSC, Plaintiffs filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for November 20, 2009, is hereby vacated and the matter taken off calendar. After reviewing the moving, opposing, and reply papers, the Court rules as follows:

**I.    Legal Standard**

To obtain a preliminary injunction a plaintiff must show (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm if the preliminary injunction is not granted; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. ___ , 129 S. Ct. 365, 374 (2008); *American Trucking*

*Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).[1]

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). However, a preliminary injunction "is not a preliminary adjudication on the ultimate merits." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1423 (9th Cir. 1984). "[T]he findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Sierra On-Line*, 739 F.2d at 1423 (explaining that for preliminary relief, the court need only find a probability that necessary facts will be established, not that such facts actually exist).

## II.    Findings of Fact and Conclusions of Law[2]

### A.    Background

Plaintiffs are record companies, in the business of producing sound recordings and distributing, selling, and/or licensing the reproduction, distribution, sale, and performance of their sound recordings in phonorecords, in audiovisual works, and for streaming and downloading over the Internet. Plaintiffs' catalog of sound recordings includes some of the most famous recordings in the world, including recordings by the Beatles, the Beach Boys, Pink Floyd, Duran Duran, Coldplay, Lenny Kravitz, Radiohead, and Katy Perry.

Plaintiffs own or control copyrights to certain sound recordings recorded after February 15, 1972, including those identified in Schedule A to the Complaint, which are protected by the Copyright Act, 17 U.S.C. § 102(a)(7) (the "Copyrighted Recordings"). Plaintiffs also own or control certain sound recordings recorded prior to February 15, 1972, including those identified in Schedule B to the Complaint, which are protected by state law (the "Pre-1972 Recordings").

Although many of Plaintiffs' Copyrighted Recordings and Pre-1972 Recordings (collectively "Recordings") are made available for digital download, not all of them are available for digital download. Most notably, the Beatles catalog of recordings, including a recently released box set of "remastered" Beatles recordings, has never been made available for digital download.

---

[1]Prior to the Supreme Court's decision in *Winter*, injunctive relief was appropriate under the Ninth Circuit's "sliding scale" test. However, in *Winter*, the Supreme Court expressly disapproved of this sliding scale test because it allowed an injunction to issue based on a "possibility" of irreparable harm. 555 U.S. at __, 129 S. Ct. at 375. Accordingly, in light of *Winter*, the Ninth Circuit overruled its sliding scale test, and adopted the standard set forth in *Winter*. *See American Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) ("To the extent that our cases have suggested a lesser standard, they are no longer controlling, or even viable").

[2]The Court has elected to issue its findings in narrative form. Any finding of fact that constitutes a conclusion of law is also hereby adopted as a conclusion of law, and any conclusion of law that constitutes a finding of fact is also hereby adopted as a finding of fact.

Defendants collectively own and operate the Internet website, www.bluebeat.com (the "BlueBeat Website"). The BlueBeat Website is a music-based, commercial website that purports to offer a massive catalog of musical recordings that may be either purchased for permanent download or immediately "performed" via an on-demand streaming transmission. One of the major features of the BlueBeat Website is that it offers its registered members, i.e., anyone who sets up a free, anonymous membership account, the ability to purchase or download any album or individual recording, at the price of $0.25 per track, which is one fourth the typical retail price for digital downloads. The BlueBeat Website also offers its members a feature it refers to as "Direct Playback," which permits users to select and receive a free "streaming" digital performance of any recording or album within the BlueBeat library.

Plaintiffs allege that thousands of their Recordings are being made available for download or streaming on the BlueBeat Website without their authorization, including the remastered Beatles recordings, and allege the following claims for relief: (1) direct copyright infringement in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501; (2) violation of California Civil Code § 980(a)(2) and common law misappropriation; and (3) statutory and common law unfair competition.

## B.    Discussion

The Court concludes that Plaintiffs are entitled to a preliminary injunction. Plaintiffs have carried their burden, and have clearly demonstrated (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm if a preliminary injunction is not granted; (3) that the balance of equities tips in their favor; and (4) that a preliminary injunction is in the public interest.

### 1.    Likelihood of success on the merits

Plaintiffs have made a clear showing that they are likely to succeed on the merits, on both their claim for copyright infringement and their state law claims.

"To establish a successful copyright infringement claim, a plaintiff must show that he or she owns the copyright and that defendant copied protected elements of the work." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) (internal citation omitted) (*citing Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th Cir. 1990)). The requirements for establishing a violation of California Civil Code § 980(a)(2), common law misappropriation, and statutory and unfair competition are similar. *Cf.* Cal. Civ. Code § 980(a)(2); *A&M Records, Inc. v. Heilman*, 75 Cal. App. 3d 554, 564 (1977) (noting that the duplication of performances owned by plaintiff in order to resell them for profit "presents a classic example of the unfair business practice of misappropriation of the valuable efforts of another").

The Court finds that Plaintiffs have demonstrated that they own the copyrights for the Copyrighted Recordings in Schedule A of the Complaint, as they have submitted the registration certificates for each of those recordings. *See* 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate; *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1110 (9th Cir. 1998) ("[C]opyright registration creates a presumption of ownership."). They have also demonstrated that they own the Pre-1972 Recordings. *See* McMullan TRO Decl. ¶¶ 11, 12 & Exh. B. Indeed, Defendants do

Initials of Deputy Clerk _sr_

not contest that Plaintiffs own the copyrights for the Copyrighted Recordings or the Pre-1972 Recordings listed in Schedules A and B of the Complaint.

The main dispute between the parties is whether Defendants "copied" protected elements of Plaintiffs' Recordings. The word "copied" is shorthand for the infringement of any of the copyright owner's exclusive rights, described at 17 U.S.C. § 106. *See S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 n.3 (9th Cir. 1989). Here, Plaintiffs have clearly demonstrated that Defendants infringed their exclusive rights to reproduce, distribute, and publicly perform their Recordings under 17 U.S.C. § 106 (1), (3) and (6).

Defendants' primary argument in their Opposition is that their sound recordings are "independent, original sounds created by an artistic author," which do not infringe Plaintiffs' exclusive rights pursuant to 17 U.S.C. § 114(b).[3] Section 114(b) provides in relevant part: "The exclusive rights of the owner of copyright in a sound recording under clauses (1) and (2) of section 106 do not extend to the making or duplication of another sound recording that consists entirely of an independent fixation of other sounds, even though such sounds imitate or simulate those in the copyrighted sound recording." 17 U.S.C § 114(b).

In support of their argument that their sound recordings consist entirely of an independent fixation of other sounds, Defendants submit a Declaration by Hank Risan, chief executive officer of BlueBeat, Inc. According to Mr. Risan, the sound recordings available on the BlueBeat Website were the product of "psychoacoustic simulation," a process he vaguely describes as follows:

> Every musical sound in a sound recording has a point of origin, called a source point, as well as a capture point, where the sound is affixed. To create "pure sound" simulations, I purchased CD's of sound recordings over the counter. I made one ephemeral copy of each recording, as authorized by section 112, destroying same shortly after the simulations were created. The original sounds were partitioned into segments for observation. These segments were analyzed by artistic operators who, employing principles of psychoacoustics and advanced harmonic analysis, synthesized an independent parametric model of the sounds. A firewall was utilized to preserve independence between the sounds of the model and those of the original recording. . . .
>
> Positing assumptions as to the location of the microphone and special relationship to the voice and instruments involved in a given recorded performance, the artistic operator then generated and fixed new sounds by selecting new capture points and new source points in a new virtual three dimensional computer-staged

---

[3]Cal. Civil Code § 980(a)(2) contains a similar exemption from liability for copying or distributing pre-1972 sound recordings: "The author of an original work of authorship consisting of a sound recording initially fixed prior to February 15, 1972, has an exclusive ownership therein . . . as against all persons except one who independently makes or duplicates another sound recording that does not directly or indirectly recapture the actual sounds fixed in such prior sound recording, but consists entirely of an independent fixation of other sounds, even though such sounds imitate or simulate the sounds contained in the prior sound recording." Cal. Civ. Code § 980(a)(2).

Initials of Deputy Clerk _sr_

environment.  The simulation, thus created, contained new and original spherical source point waves.

Risan Decl., ¶ 7.

The Court finds that the Mr. Risan's Declaration provides little, if any, evidentiary support for Defendants' position, and, aside from the passage quoted above, is largely irrelevant. Specifically, Mr. Risan fails to provide any details or evidence about  the "technological process" that Defendants contend was used to create the "new" recordings, or adequately explain how the "new" recordings differ in any meaningful way from Plaintiffs' Recordings.

However, Mr. Risan is very clear on one critical fact:  In order to create the recordings on the BlueBeat Website, he admits that he had to create and use a digital copy of Plaintiffs' Recordings.[4]  Given this admission, the Court concludes that it is virtually impossible that the recordings on the BlueBeat Website consist "*entirely* of an *independent* fixation of other sounds" pursuant to 17 U.S.C. § 114(b).  Indeed, although Mr. Risan claims that "artistic operators" made changes to parameters such as pitch, loudness, rhythm, timbre, and space, Defendants' conduct appears to be substantively no different than the defendants in *United States v. Taxe*, 540 F.2d 961 (9th Cir. 1976).  There, the defendants used "specially adapted electronic tape equipment" to re-record sound recordings, and change them by increasing or decreasing the recording speed, introducing reverberation or echo, eliminating or reducing portions of the musical sounds, and producing additional sounds by synthesizers.  *Taxe*, 540 F.2d at 964.  The district court rejected any claim that this re-recording constituted an "independent fixation," and the Ninth Circuit agreed, stating: "The copyright owner's right to reproduce the sound recording is limited to recapture of the original sounds, but that right can be infringed by an unauthorized re-recording which, despite any changes in the sounds duplicated, results in a work of 'substantial similarity.'"  *Id.* at n. 2.

Moreover, Plaintiffs have presented very compelling and largely unrefuted evidence, including the Declarations of Thomas Schlum, Pietro Perona, Ph.D, and James D. Berkley, from which the Court finds that the recordings on the BlueBeat Website were not "independent fixation[s] of other sounds" but were indeed copies that directly or indirectly recaptured the actual sounds fixed in Plaintiffs' Recordings.  Specifically, the evidence includes, but is not limited to, the following:

• Based on a comparison of several of the sound recordings downloaded from the BlueBeat Website with Plaintiffs' copyrighted sound recordings, Plaintiffs' expert, Thomas Schlum, concluded that the recordings from the BlueBeat Website were created by capturing the actual sounds embodied in Plaintiffs' copyrighted sound

---

[4]This initial act of making a digital copy of Plaintiffs' Recordings from an over-the-counter CD may itself infringe Plaintiffs' exclusive right to reproduce their Recordings under 17 U.S.C. § 106(1).  Although Defendants claim that they are permitted to make one "ephemeral" copy pursuant to 17 U.S.C. §§ 112, the Court need not decide whether the initial  copy constitutes a separate act of infringement, given that it has determined that Plaintiffs will likely prevail in establishing that the sound recordings on the BlueBeat Website are themselves copies that directly or indirectly recapture the actual sounds fixed in Plaintiffs' Recordings.

Initials of Deputy Clerk  _sr_

recordings (*see* Schlum Reply Decl., ¶¶ 5-8);[5]

- The recordings sold and streamed by the BlueBeat Website were labeled and promoted as Plaintiffs' Recordings, using Plaintiffs' names, the names of the original recording artists, and cover artwork from Plaintiffs' albums (*see* Berkley TRO Decl., ¶¶ 16-18, Exh. 19-22); and

- BlueBeat's Website compares its recordings to legitimate copies of the same titles offered via online retailers such as Amazon.com and claims that its recordings are of "perfect fidelity." *See* Berkley TRO Decl., Exh. 8; http://www.bluebeat.com/support/main/259.

Accordingly, based on the foregoing, the Court concludes that Plaintiffs have made a clear showing that they are likely to succeed on the merits.[6]

### 2.    Likelihood of irreparable harm

Plaintiffs have also demonstrated that they are likely to suffer irreparable harm in the absence of a preliminary injunction.[7]

---

[5]Indeed, after listening to the CD attached as Exhibit 1 to the Declaration of Thomas Schlum, the Court, albeit to its musically untrained ear, was unable to detect or discern any meaningful difference between Plaintiffs' Recordings and Defendants' recordings.

[6]In addition to arguing that their sound recordings are "independent fixation[s] of other sounds," Defendants summarily argue that they did not violate Plaintiffs' exclusive right to publicly perform under 17 U.S.C. § 106(6), because the BlueBeat Website operates a "non-interactive service" with respect to digital audio transmissions, exempt from liability under 17 U.S.C. § 114(d). However, Defendants ignore the interactive nature of the "Direct Playback" feature of the BlueBeat Website. Moreover, to the extent that Defendants argue that this feature only enables interactive streaming of "audiovisual works," as the Court stated in its Order granting the TRO, "[Defendants] cannot invalidate the copyright of an independent and preexisting sound recording, simply by incorporating that sound recording into an audiovisual work." *Traicoff v. Digital Media, Inc.*, 439 F. Supp. 2d 872, 883 (S.D. Ind. 2006).

[7]Until recently, a plaintiff alleging copyright infringement was entitled to a presumption of irreparable harm, where the plaintiff was able to show a likelihood of success on the merits. *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1119 (9th Cir. 1999); *Cadence Design Sys., Inc. v. Avanti! Corp.*, 125 F.3d 824, 826–27 (9th Cir. 1997) (holding that a presumption of irreparable harm arises where the plaintiff is able to show a likelihood of success on the merits of its copyright infringement claim). This presumption, however, has been called into question in light of the Supreme Court decisions in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006), and *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. __, 129 S. Ct. 365, 376 (2008). The Court in this case need not decide whether the presumption still applies, because Plaintiffs have demonstrated that they are likely to suffer irreparable harm in the absence of a preliminary injunction.

Harm is considered irreparable when it cannot be remedied except through injunctive relief. *See Designer Skin, LLC v. S&L Vitamins, Inc.*, 2008 WL 4174882, at *4 (D. Ariz. Sept. 5, 2008); *Grokster*, 518 F. Supp. 2d at 1210. Significantly, copyright infringement via the Internet presents an extraordinary threat of irreparable harm:

> When digital works are distributed via the internet, . . . every downloader who receives one of the copyrighted works . . . is in turn capable of also transmitting perfect copies of the works. Accordingly, the process is potentially exponential rather than linear, threatening virtually unstoppable infringement of the copyright.

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp.2d 1197, 1218 (C.D. Cal. 2007) (quoting *Elektra Entertainment Group, Inc. v. Bryant*, 2004 WL 783123, at * 7 n.5 (C.D. Cal. Feb. 13, 2004). Indeed, because of the viral nature of the Internet, the ultimate distribution of the infringing works is potentially unlimited and damages generally do not adequately compensate the copyright holders for the harm caused. *See Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1073 (D. Ariz. 2006); *Grokster,* 518 F. Supp. 2d at 1219.

Moreover, in this case, the likelihood of irreparable harm caused by Defendants' actions is even greater because Defendants are offering for sale certain recordings that are unavailable for digital download by *any* authorized retailer or licensee, including the highly anticipated remastered Beatles recordings. "As copyright owners, Plaintiffs have the exclusive right to decide when and how their material should be reproduced and/or distributed, regardless of whether their decisions make good business sense." *Grokster*, 518 F. Supp. 2d at 1219. The deprivation of this exclusive right can amount to irreparable harm, that cannot be remedied absent injunctive relief. *See id.* ("Plaintiffs' power to control their rights has been so compromised by the means through which Stream Cast encouraged end-users to infringe . . . that the inducement amounts to irreparable harm."). Indeed, given that the Beatles catalog, including the remastered Beatles recordings, has never been released by Plaintiffs for digital download or licensed for on-demand streaming, every day that Defendants offer the Beatles catalog for digital download or on-demand streaming irreparably harms Plaintiffs' exclusive right to control the use of its copyrighted materials.

Furthermore, by offering below-the-market-value downloads of Plaintiffs' Recordings, as well as free digital streaming transmissions of Plaintiffs' Recordings, Defendants' actions can cause irreparable damage to the perceived value of Plaintiffs' music and to Plaintiffs' digital distribution strategies and relationships. *See Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co.,* Inc., 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of a threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm."); *Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) ("[I]ntangible injuries, such as damage to ongoing recruitment efforts, and goodwill, qualify as irreparable harm.").

Accordingly, based on the combination of the foregoing factors -- the viral nature of the internet, the fact that Defendants are offering for sale certain recordings that are unavailable for download by any authorized retailer or licensee, and the potential for damage to the perceived value of Plaintiffs' music and digital distribution strategies and relations -- the Court finds that Plaintiffs have demonstrated that they are likely to suffer irreparable harm in the absence of a temporary restraining order.

Initials of Deputy Clerk _sr_

### 3.       Balance of Equities

The Court finds that the balance of equities tips in Plaintiffs' favor.  Although Defendants claim, without any evidence, that an injunction would significantly harm, if not destroy, their business, the hardship suffered by Plaintiffs will be greater if Defendants are not enjoined from infringing or misappropriating Plaintiffs' Recordings.  Indeed, Defendants "cannot complain of the harm that will befall it when properly forced to desist from its infringing activities."  *Triad Systems Corp v. Southeastern Exp. Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995).  *See also Cadence Design Systems, Inc. v. Avant! Corp.*, 125 F. 3d 824, 830 (9th Cir. 1997) (quotations and citations omitted) ("[w]here the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration . . . .").

### 4.       Public Interest

The Court concludes that the public interest is served by issuance of a preliminary injunction, as "it is virtually axiomatic that the public interest can only be served by upholding copyright protections and correspondingly, preventing the misappropriation of skills, creative energies, and resources which are invested in the protected work."  *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3rd Cir. 1983).

## III.    Conclusion

For the foregoing reasons, Plaintiffs' request for a preliminary injunction is **GRANTED.** The Court signs, as modified, the proposed Preliminary Injunction lodged with the Court on November 13, 2009.

IT IS SO ORDERED.

Initials of Deputy Clerk __sr__