UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAPITOL RECORDS, LLC ET AL.<br><br>Plaintiffs,<br><br>vs.<br><br>BLUEBEAT, INC. ET AL.<br><br>Defendants. | CASE NO.  CV 09-8030-JST (JCx)<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## I. INTRODUCTION

Plaintiffs Capitol Records, LLC, Caroline Records, Inc., EMI Christian Music Group, Inc., Priority Records, LLC, Virgin Records America, Inc., and Narada Productions, Inc. (collectively "Record Companies") filed suit against Defendants BlueBeat, Inc., Media Rights Technologies, Inc., Basebeat, Inc., and Hank Risan (collectively "BlueBeat") alleging six claims for (1) copyright infringement, (2) misappropriation, (3) unfair competition, (4) conversion, (5) false designation of origin, and (6) trademark infringement.  Record Companies moved, pursuant to Federal Rule of Civil Procedure 56, for summary adjudication on the first four claims.  BlueBeat then moved for summary adjudication on the same claims.  The parties filed their respective opposition and reply briefs.  Having reviewed the briefs, heard the parties' oral arguments, and taken the matter under submission, the Court GRANTS Record Companies' Motion for Partial Summary Judgment and DENIES BlueBeat's Motion for Partial Summary Judgment.

## II. BACKGROUND

Record Companies are six affiliated record companies that own copyrights to numerous recordings ("Copyrighted Recordings") and the rights to numerous pre-1972 recordings ("pre-1972 Recordings") previously identified in this action.  (Pl.'s Statement Uncontroverted Facts ("Pl.'s Facts"), Doc. 76-1, ¶¶ 1-3; *see* FAC, Schs. A-B.)[1]  Record

---

[1] As a preliminary matter, both parties assert numerous evidentiary objections. "In motions for summary judgment with numerous objections, it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised." *Doe v. Starbucks, Inc.*, No. SACV 08-0582 AG (CWx), 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009).  This is especially true when, as here, "many of the objections are boilerplate recitations of evidentiary principles or blanket objections without analysis applied to specific items of evidence." (*Id.*)  To the extent that the Court relied on objected-to evidence, it relied only on admissible evidence and, therefore, the objections are overruled.

2

Companies also own copyrights in original artwork and images with which their Recordings have been sold and marketed ("Copyrighted Artwork"). (Pl.'s Facts ¶ 4.)

Defendant Hank Risan is the Chief Executive Officer and owns and controls each of the Defendant corporations. (*Id.* ¶ 5.) BlueBeat created, owns, and operates the commercial Internet website www.bluebeat.com ("the website"), which is engaged in the dissemination of a library of musical recordings ("BlueBeat Music Library"), including "simulations" of the Copyrighted Recordings and pre-1972 Recordings. (*Id.* ¶ 7-8.)

In or about October 2009, BlueBeat offered its registered users, i.e. anyone who set up a free, anonymous membership account, the ability to purchase and download any track in the BlueBeat Music Library. (*Id.* ¶ 24.) BlueBeat also provided free "streaming," i.e. on-demand digital performance, of any sound recording in the BlueBeat Music Library through the "Direct Playback" or "Direct Play" feature. (*Id.* ¶ 25.) All recordings made available on the website for streaming or downloading were displayed with the same album titles, track titles, and release dates as the Copyrighted Recordings and pre-1972 Recordings. (*Id.* ¶¶ 27, 30.) The website represented that "all appropriate royalties are paid to the rights holders and artists responsible for your favorite tunes." (*Id.* ¶ 27.) BlueBeat also currently allows its users to create customized playlists with any song or album in the BlueBeat Music Library through its "Be the DJ" function. (*Id.* ¶ 34.)

In November 2009, Record Companies filed suit against BlueBeat alleging claims for (1) copyright infringement, (2) misappropriation, (3) unfair competition, (4) conversion, (5) false designation of origin, and (6) trademark infringement. (*See generally* FAC, Doc. 45.) After obtaining a preliminary injunction against BlueBeat, (Order PI, Doc. 24,) Record Companies moved for partial summary judgment on their copyright infringement, misappropriation, unfair competition, and conversion claims. (Pl.'s Mot., Doc. 75)  The next day, BlueBeat moved for partial summary judgment on the same four claims. (Def.'s Not. of Mot., Doc. 92.) The parties filed their respective opposition and reply briefs. In its defense and as one of the bases for its own summary judgment motion,

1  BlueBeat generally claims that the recordings it offered on the website were original,
2  independent sounds. (Def.'s Opp., Doc. 130, at 5-15; Def.'s Mot., Doc. 120, at 3.)
3
4  **III.**     **LEGAL STANDARD**
5      In deciding a summary judgment motion, the court must view the evidence in the
6  light most favorable to the non-moving party and draw all justifiable inferences in its
7  favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is
8  proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits
9  show that there is no genuine issue as to any material fact and that the movant is entitled to
10 judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual issue is "genuine" when
11 there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the
12 non-movant's favor, and an issue is "material" when its resolution might affect the
13 outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248. The moving
14 party bears the initial burden of demonstrating the absence of a genuine issue of fact.
15 *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-
16 moving party to "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P.
17 56(e)(2).
18
19 **IV.**     **DISCUSSION**
20     A.     <u>Copyright Infringement</u>
21     Record Companies allege that BlueBeat has committed copyright infringement in
22 violation of 17 U.S.C. §§ 106 and 501 by reproducing, distributing, and publicly
23 performing the Copyrighted Recordings without authorization. (FAC ¶ 40.) "To perform
24 or display a work 'publicly' means (1) to perform or display it at a place open to the public
25 or at any place where a substantial number of persons outside of a normal circle of a
26 family and its social acquaintances is gathered; or (2) to transmit or otherwise
27 communicate a performance or display of the work to a place specified by clause (1) or to
28 the public, by means of any device or process, whether the members of the public capable

of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times." 17 U.S.C. § 101. Under 17 U.S.C. § 106, a copyright owner "has the exclusive rights":

> (1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; (4) . . . to perform the copyrighted work publicly; (5) . . . to display the copyrighted work publicly; and (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17 U.S.C. § 106. Pursuant to 17 U.S.C. § 501, "the legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501.

To succeed on a copyright infringement claim, "[a] copyright plaintiff must prove (1) ownership of the copyright and (2) infringement - that the defendant copied protected elements of the plaintiff's work." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000).

First, it is undisputed that Record Companies own the Copyrighted Recordings. Although BlueBeat objects on evidentiary grounds to Record Companies' copyright ownership, (Def.'s Evid. Objections, Doc. 133, ¶ 46,) Records Companies have provided the registrations for the Copyrighted Recordings, (*see generally* McMullan Decl.), and the objection is overruled. *Micro Star v. Formgen, Inc.*, 154 F.3d 1107, 1109-1110 ("[C]opyright registration creates a presumption of ownership . . . ."); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1019 (9th Cir. 1985) ("[R]egistration by the Copyright Office is prima facie evidence of copyrightability."). Hence, the Court's analysis focuses on infringement.

1  BlueBeat does not dispute that it reproduced Record Companies' Copyrighted
2  Recordings without authorization. In a November 10, 2009 Declaration, Risan stated that
3  in order for BlueBeat to create "pure simulations," he "purchased CD's of sound
4  recordings over the counter . . . [and] made one ephermal [sic] copy of each recording . . .
5  destroying same shortly after the simulations were created." (Risan 11/10/09 Decl., Doc.
6  16, ¶ 7.) Risan confirmed that BlueBeat's simulations can only be made using the original
7  songs from the CDs. (Mayer Decl., Doc. 137-1, Exh. 1, Risan Depo., 183:17-184:2.)

8  BlueBeat asserts that it "operated a website under a statutory license issued in April
9  2004," and "[p]ursuant to that license, Defendants made ephemeral copies, as permitted by
10 17 U.S.C. § 112, of [the Copyrighted Recordings] . . . ." (Def.'s Opp. at 2.) Under 17
11 U.S.C. § 112(a)(1):

> [I]t is not an infringement of copyright for a transmitting organization entitled to transmit to the public a performance or display of a work, under a license, including a statutory license under section 114(f) . . . to make no more than one copy or phonorecord of a particular transmission program embodying the performance or display, if (A) the copy or phonorecord is retained and used solely by the transmitting organization that made it, and no further copies or phonorecords are reproduced from it; and (B) the copy or phonorecord is used solely for the transmitting organization's own transmissions within its local service area, or for purposes of archival preservation or security; and (C) unless preserved exclusively for archival purposes, the copy or phonorecord is destroyed within six months from the date the transmission program was first transmitted to the public.

17 U.S.C. § 112(a)(1). BlueBeat provides no evidence, however, that BlueBeat obtained a valid § 114 license in April 2004, and was therefore a licensed transmitting organization under § 112(a)(1). BlueBeat merely provides a copy of an application for a 17 U.S.C. § 14(f) statutory license that BlueBeat submitted to the Copyright Office in October 2003.

(Robinson Decl., Doc. 128-2, Exh. G.)  Moreover, BlueBeat does not provide any evidence that the copies of the Copyrighted Recordings were "used solely" by BlueBeat and for BlueBeat's own transmissions within its local service area, or that the copies were destroyed within six months from the date of public transmission.  *See* 17 U.S.C. § 112(a)(1).  Thus, the evidence of BlueBeat's unauthorized reproduction of the Copyrighted Recordings is sufficient to establish copyright infringement.

Moreover, the undisputed evidence shows that BlueBeat also distributed and publicly performed the Copyrighted Recordings.  Risan stated that "BlueBeat transmitted its audio visual works either as downloads or streams, from 2004 to present."  (Risan 11/10/09 Decl. ¶ 16.)  This fact was confirmed in BlueBeat's July 15, 2010 response to Record Companies' interrogatories, which stated that "BlueBeat did offer audio visual displays from January 1, 2009, to present," and included as an attachment "a list of responsive audio visual displays including the total number of on-demand streaming transmissions . . . ." (Mayer Decl., Def.'s Resp. Inter., Doc. 78-1, Resp. 9); *see A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001) ("Napster users who upload file names to the search index for others to copy violate plaintiffs' distribution rights.").  The list attached to BlueBeat's response included hundreds of the Copyrighted Recordings, and listed the number of times these songs were downloaded or "Direct Play[ed]": "Total BlueBeat A/V Downloads - 67,876; Total BlueBeat A/V Downloads pre-1972 – 67,637; Total BlueBeat A/V Direct Play - 362; Total BlueBeat Direct Play pre-1972 – 350."  (Risan 11/10/09 Decl., Exh. B.)

Beyond this undisputed evidence, Risan also submitted an "amended" September 3, 2010 Declaration that confirmed BlueBeat distributed Record Companies' works for its simulations.  Risan amended the Declaration by retracting and altering certain statements because he allegedly mistakenly analyzed the Schedules attached to Record Companies' original Complaint rather than those attached to the First Amended Complaint.   (Risan Not. Errata, Doc. 127, ¶ 1.)  Thus, Risan amended the Declaration that stated BlueBeat disseminated "239 of the recordings listed on Schedule A," (Risan 9/3/10 Decl., Doc. 95, ¶

2.,) to state that "10,617 audio-visual displays and simulations of sound recordings listed on Schedule A . . . were downloaded between October 26, 2009, and November 6, 2009" from the BlueBeat website. (Risan Not. Errata ¶ 3.) Schedule A consists of a thirty-nine page list of Record Companies' copyrighted songs. (FAC, Sch. A.)

Either in original or amended form, Risan's September 3, 2010 Declaration effects the same result: it confirms both that BlueBeat's website offered for download, without authorization, the Copyrighted Recordings, albeit through "audio-visual displays and simulations," and that users downloaded the Copyrighted Recordings. Record Companies confirmed this fact by providing first-hand accounts of BlueBeat users downloading and streaming the Copyrighted Recordings. (*See generally* Berkeley Decl., Doc. 77; Evitt Decl., Doc. 87.)

With ample, undisputed facts evidencing BlueBeat's reproduction, distribution, and public performance of the Copyrighted Recordings, BlueBeat provides no evidence to the contrary. The gravamen of BlueBeat's argument is that its website offered "psychoacoustic simulations" that were independent, original works that did not "capture" or "sample" any of the sounds fixed in the Copyrighted Recordings. (Def.'s Opp. at 5-15.) BlueBeat fails to provide any evidence, however, showing how or why its purported "simulations" are anything but illicit copies of the Copyrighted Recordings.

For example, with the help of its expert Peter Rothman, BlueBeat describes several hypothetical methods of creating independent works, i.e. "mapping," "MIDI files," or "parametric models," (*id.*; *see generally* Rothman Decl., Doc. 132,) but provides no evidence that BlueBeat actually utilized one of these methods to create its so-called simulations. In fact, Rothman admits that he "had no access to the specific processes, algorithms, or source codes used in producing Mr. Risan's simulated musical performances," but instead based his opinion of how BlueBeat's simulations "might work" on mere "clues" provided by Risan's November 10, 2009 Declaration and BlueBeat's patent applications. (Rothman Decl. ¶ 27; *see* ¶ 85.)

In his November 10, 2009 Declaration, Risan describes BlueBeat's purported creative process as follows:

> To create "pure sound" simulations, I purchased CD's of sound recordings over the counter. I made one ephermal [sic] copy of each recording, as authorized by section 112, destroying same [sic] shortly after the simulations were created. The original sounds were partitioned into segments for observation. These segments were analyzed by artistic operators who, employing principles of pyschoacoustics and advanced harmonic analysis, synthesized an independent parametric model of sounds. A firewall was utilized to preserve independence between the sounds of the model and those of the original recording. I destroyed the ephemeral recording. Positing assumptions as to the location of the microphone and spacial relationship to the voice and instruments involved in a given recorded performance, the artistic operator then generated and fixed new sounds by selecting new capture points and new source points in a new virtual three dimensional computer-staged environment. The simulation, thus created, contained new and original spherical source point waves.

(Risan 11/10/09 Decl. ¶ 7.) Risan's obscure and undefined pseudo-scientific language appears to be a long-winded way of describing "sampling," i.e. copying, and fails to provide any concrete evidence of independent creation. The Court echoes Record Companies' declaration from Pietro Perona: "Mr. Risan's claims are vague and difficult to evaluate in other ways, as he provides no details regarding what he means by numerous other terms such as 'new sounds,' 'artistic operators,' 'virtual three dimensional computer-staged environment,' and 'adjusted by the human operator.'" (Perona Decl., Doc. 79, ¶ 4.) As a result, BlueBeat fails to provide any facts that support its assertion that its simulations are independent, original works.

BlueBeat additionally argues that its website is non-interactive, and therefore operates within a 17 U.S.C. §§ 114 license. A § 114 license permits "the performance of a sound recording publicly by means of a subscription digital audio transmission . . ., an eligible nonsubscription transmission, or a transmission . . . that is made by a preexisting satellite digital audio radio service . . . if the transmission is not part of an interactive service . . . ." 17 U.S.C. 114(d)(2)(A)(1) (emphasis added). "An 'interactive service' is one that enables a member of the public to receive a transmission of a program specially created for the recipient, or on request, a transmission of a particular sound recording, whether or not as part of a program, which is selected by or on behalf of the recipient." 17 U.S.C. § 117(j)(7).

As addressed above, BlueBeat provides no evidence of a valid § 114 license. Even if BlueBeat had operated a valid, non-interactive website subject to a § 114 license, this would shield BlueBeat from liability only for "publicly performing" the Copyrighted Recordings. However, BlueBeat's website is interactive and does not qualify under a § 114 license. BlueBeat has admitted that the "Be the DJ" feature allowed users "to create music playlists for the purpose of performance creation," and that the "Direct Play" feature allowed users to "access and listen to particular audio visual works and their accompanying sounds." (Risan 10/18/10 Decl. ¶ 11) (emphasis included). These features fit directly into 17 U.S.C. § 117(j)(7)'s definition of an interactive service.

As a result of the undisputed evidence described above, BlueBeat is liable for copyright infringement for reproducing, distributing, and publicly performing the Copyrighted Recordings.

B.  State Law Claims for Pre-1972 Recordings

The Court previously determined that Record Companies own the Pre-1972 Recordings, (Order PI at 3,) which is confirmed by the undisputed evidence presented for these Motions. (Robinson Decl., Exh. A. ¶ 9, Exh. B ¶ 11; Jones Decl. ¶ 3.) Record Companies contend that, based on BlueBeat's illicit activity described above, it is liable

for misappropriation in violation of California Civil Code 980(a)(2), unfair competition, and conversion.

For a successful misappropriation claim, a plaintiff must show that "(1) the plaintiff has invested substantial time and money in development of its . . . property; (2) the defendant has appropriated the [property] at little or no cost; and (3) the plaintiff has been injured by the defendant's conduct.'" *Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 467 (9th Cir. 1990) (quoting *Balboa Ins. Co. v. Trans Global Equities*, 218 Cal. App. 3d, 1327, 1342 (Cal. Ct. App. 1990)). Under California Civil Code § 980(a)(2), "the author of an original work of authorship consisting of a sound recording initially fixed prior to February 15, 1972, has an exclusive ownership therein . . . against all persons except one who independently makes or duplicates another sound recording that does not directly or indirectly recapture the actual sounds fixed in such prior sound recording . . . ." Cal. Civ. Code § 980(a)(2).

For an unfair competition claim under California Business and Professions Code § 17200, plaintiff must show "anything that can properly be called a business practice and that at the same time is forbidden by law." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (Cal. 2003) ("Section 17200 borrows violations from other laws by making them independently actionable as unfair competitive practices . . . [and] a practice may be deemed unfair even if not specifically proscribed by some other law." (quoting *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1999))). Under California Business and Professions Code § 17200, "unfair competition . . . include[s] any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." Cal. Bus. & Prof. Code § 17200.

Finally, for a conversion claim, a plaintiff has to show "ownership or right to possession of property, wrongful disposition of the property right and damages." *G.S. Rassmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992)

BlueBeat does not dispute that, like the Copyrighted Recordings, it reproduced, sold, and publicly performed the pre-1972 Recordings without proper authorization.

(Risan Not. Errata, 9/3/10 Decl. ¶ 5 ("During the same period of time, the BlueBeat website offered for sale audio-visual displays and simulations of sound recordings listed on Schedule B, attached to Plaintiffs' amended complaint, consisting of sound recordings made before February 15, 1972. 52,241 audio-visual displays and simulations of sound recordings listed on Schedule B, attached to Plaintiffs' amended complaint, were distributed by Defendants during the eleven days the BlueBeat website was in operation. Of that total, 52,173 were audio-visual displays and simulations of Beatles' sound recordings.")) For these actions, BlueBeat is liable for misappropriation, unfair competition, and conversion. *A&M Records, Inc. v. Heilman*, 75 Cal. App. 3d 554, 564, 570 (Cal. Ct. App. 1977) (holding that when a defendant duplicates, sells, and performs without authorization works owned by plaintiff, this is "a classic example" of misappropriation, unfair competition, and conversion.)

Beyond the already rejected argument that "simulations" are independent works, BlueBeat's sole argument as to why it has not misappropriated and converted the pre-1972 Recordings is that Record Companies lack standing to bring claims for the pre-1972 Recordings because such recordings have been "published," i.e. sold, and are now in the public domain. (*see generally* Def.'s Mem. in Supp. of Summ. J., Doc. 120.) This argument is completely devoid of merit because mere publication of a protected work does not strip protectable and actionable ownership rights. *See Goldstein v. California*, 412 U.S. 546, 570 n.28 (1973); *Lone Ranger Telev., Inc. v. Program Radio Corp.*, 740 F.2d 718, 725 (9th Cir. 1984); A&M Records, 75 Cal. App. 3d at 564; *Capitol Records, Inc. v. Erickson*, 2 Cal. App. 3d 526, 538 (Cal. Ct. App. 1969) ("It is reasonable to conclude that permitting such appropriation would discourage invention and free competition - and that those engaged in the recording industry would be inclined not to utilize their skill and efforts, and expend large amounts of money, in producing unique recordings, but would wait for a recording to be produced, and then duplicate it and sell it, at maximum profit and with minimum effort and expense.").

In light of the undisputed evidence, BlueBeat is liable for misappropriation, unfair competition, and conversion.

## V. CONCLUSION

For the reasons stated above, the Court GRANTS Record Companies' Motion for Partial Summary Judgment and DENIES BlueBeat's Motion for Partial Summary Judgment, finding that BlueBeat is liable for copyright infringement, misappropriation, unfair competition, and conversion.

DATED: December 8, 2010

                                      **JOSEPHINE STATON TUCKER**
                                      JOSEPHINE STATON TUCKER
                                    UNITED STATES DISTRICT JUDGE